Chad Pehrson (UT Bar No. 12622)
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
cpehrson@knh.law

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ROXBERRY LICENSING, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ROXBERRY NATURALS, INC., an Ohio corporation,<br><br>Defendant. | **DECLARATION OF BRAD DAVIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:24-cv-00126<br><br>Judge: |

I, Brad Davis, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**I. Personal Background and Qualifications**

1. I am the Founder and President of Roxberry Juice Co., which operates through Roxberry Licensing, LLC ("**Plaintiff**" or "**Roxberry Juice Co.**"), the Plaintiff in this action. I am over 18 years of age and competent to testify to the matters set forth herein. I make this declaration based on my personal knowledge, except where otherwise noted, and if called as a witness, I could and would testify competently to the facts stated herein.

2. I reside in the State of Utah. My primary professional focus for the past 18 years

has been building and operating the Roxberry Juice Co. franchise system.

3. Prior to founding Roxberry Juice Co., I had extensive experience in the juice and beverage industry. I owned and operated a juice business in California and served as a corporate executive at Zuka Juice, where I helped grow that company to 108 stores in eight Western states with over $50 million in annual sales before its acquisition by Jamba Juice in 1999. That experience gave me deep knowledge of the beverage franchise industry, including the critical importance of brand identity and trademark protection.

## II. Founding and Growth of Roxberry Juice Co.

4. I founded Roxberry Juice Co. in Utah in 2008. I created the name "Roxberry" specifically to serve as a brand and trademark for my new juice and smoothie business. The word "Roxberry" is a coined, fanciful term that does not appear in any dictionary. I invented it to be a unique, memorable, and distinctive brand name for our products.

5. The first Roxberry Juice Co. corporate store opened in March 2008 at Hunter's Crossing Center in American Fork, Utah. This opening established our first use of the ROXBERRY mark in commerce. We have used the mark continuously and without interruption since that date—a period of nearly 18 years.

6. Roxberry Juice Co. expanded rapidly through franchising. The first franchised location opened at 5291 S. State St. in Murray, Utah in Fall 2008. A second franchise location opened in Highland, Utah on November 12, 2008. Our founding and early expansion received contemporaneous media coverage, including a November 4, 2008 article in *The Salt Lake Tribune* documenting the opening of "his first Roxberry outlet last March." A true and correct copy of this article is attached hereto as **Exhibit A**.

7. Roxberry Juice Co. is and always has been a family-owned business. My son, Braden Davis, is actively involved in the company's day-to-day operations, and each franchise location is locally owned and operated by individual franchisees who have invested their own capital in the ROXBERRY brand.

8. As of the date of this declaration, the Roxberry Juice Co. franchise network operates locations across Utah and Idaho. Our Virginia location, which opened in December 2018 in Henrico, Virginia, was our first East Coast operation, though it subsequently closed during the COVID-19 pandemic. At various points, we have operated more than 20 franchise locations.

9. Our products include smoothies, fresh-pressed juices, açaí bowls, and related healthy food and beverage items. Each product is made fresh-to-order in our franchise locations using whole fruits and vegetables. The freshness and quality of our products are central to the ROXBERRY brand identity and to the goodwill we have built over nearly two decades.

10. Roxberry Juice Co. has received multiple "Best of State" awards in Utah, reflecting the significant consumer recognition and goodwill our brand has earned in our core market. These awards are a testament to the strong association consumers have between the ROXBERRY name and high-quality, healthy beverages.

11. Roxberry Licensing, LLC is headquartered at 10975 S. State, Sandy, UT 84070. We actively manage the franchise system, maintain quality standards, and oversee the consistent use and presentation of the ROXBERRY mark across all franchise locations.

### III. Plaintiff's Federal Trademark Registration

12. Roxberry Licensing, LLC is the owner of U.S. Trademark Registration No. 5,610,513, Serial No. 87/470,335, for the ROXBERRY JUICE CO. design mark, registered on the

KNH LLP | cpehrson@knh.law

Principal Register of the United States Patent and Trademark Office ("**USPTO**"). A true and correct copy of the registration certificate is attached hereto as **Exhibit B**.

13. This registration has been active and in good standing since 2018. We have timely filed all required maintenance documents to keep the registration active, including the required declarations of continued use. The mark covers smoothies, fresh-pressed juices, açaí bowls, and related healthy food and beverage products.

14. Our mark has now been registered and in continuous use for more than five consecutive years. We have filed the necessary declaration under Section 15 of the Lanham Act to establish that our registration is incontestable. This means that our exclusive right to use the ROXBERRY JUICE CO. mark in connection with our goods is no longer subject to challenge on most grounds. The Supreme Court confirmed in *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985), that an incontestable registration serves as conclusive evidence of the registrant's exclusive right to use the mark. Defendant cannot argue that our mark is invalid or that we lack rights in it.

15. Our incontestable status means that the defenses Defendant can raise are extremely limited. The Tenth Circuit has recognized that incontestability narrows the available defenses and directs the court's attention to whether consumers are likely to be confused by the competing marks. None of the narrow statutory exceptions to incontestability apply in this case.

16. Beyond our federal registration, we also have common law trademark rights in the ROXBERRY name going back to March 2008, when we opened our first store. These common law rights predate our federal registration by roughly a decade and predate Defendant's claimed first use date of September 2024 by more than sixteen years. These rights provide an additional,

independent basis for our claims.

### IV. Defendant's Adoption and Use of the ROXBERRY Mark

17. In or around January 2026, I first became aware that a company called Roxberry Naturals, Inc. ("**Defendant**") was selling carbonated canned beverages under the name "Roxberry Fizz for Kids" using the identical ROXBERRY mark.

18. On or about January 13, 2026, one of our franchise partners brought to my attention the scope of Defendant's activities. The franchise partner had observed Defendant's products on retail shelves and directed me to Defendant's website at www.getroxberry.com. I immediately recognized the potential for consumer confusion and the serious threat to our brand.

19. I conducted research and learned the following about Defendant. Roxberry Naturals, Inc. was incorporated in Columbus, Ohio in 2022 by co-founders Andy Sauer (President), Lauren Sauer, and Dan Haugen (Co-Founder and COO). The company raised $550,000 through a Form D 506(b) offering filed with the SEC on September 28, 2022. A true and correct copy of the SEC Form D filing is attached hereto as **Exhibit C**.

20. I further learned that Andy Sauer is the CEO of Garage Beer, a beverage company valued at approximately $200 million. This fact is significant because it demonstrates that Defendant's principals are sophisticated beverage-industry operators with access to substantial resources and experienced legal counsel—not naïve newcomers who might have chosen the ROXBERRY name without knowledge of our prior use.

21. Defendant sells "Roxberry Fizz for Kids"—carbonated canned beverages marketed as healthier alternatives to traditional sodas. The product line includes flavors called "Galaxy Gulp Citrus," "Ocean Potion Fruit Punch," and "Pink Lava Strawberry Lemonade," sold in 7.5 fl oz

KNH LLP | cpehrson@knh.law

cans at a retail price of approximately $4.89 for a four-pack. To examine them, I personally purchased Defendant's products at a Utah Walmart (Walmart Supercenter, 11328 S Jordan Gateway, South Jordan, UT 84095, near multiple Roxberry Juice locations). Photographs of Defendant's products that I took on January 29, 2026 are attached hereto as **Exhibit D**.

22. Defendant's products prominently feature the word "ROXBERRY" in large, stylized lettering as the dominant element of the packaging. The visual presentation uses colorful, playful graphics and fruit imagery that is consistent with the health-focused, family-friendly branding that Roxberry Juice Co. has cultivated over nearly two decades.

23. Based on USPTO records, Defendant's claimed date of first use of the ROXBERRY mark in commerce is September 23, 2024—more than sixteen years after our first use in March 2008.

**V. The USPTO Found Likelihood of Confusion**

24. On February 2, 2023, Defendant filed an intent-to-use trademark application for a Roxberry logo/design mark with the USPTO. That design mark application was approved and registered on March 25, 2025.

25. On November 20, 2024, Defendant separately filed U.S. Trademark Application Serial No. 98/863,067 seeking registration of the word mark "ROXBERRY" for dietary supplemental drinks.

26. On May 21, 2025, the USPTO examining attorney issued an Office Action refusing registration of Defendant's "ROXBERRY" word mark under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), based on a likelihood of confusion with our Registration No. 5,610,513. I am informed and believe, based on review of publicly available USPTO records, that the Office Action

KNH LLP | cpehrson@knh.law

specifically cited our mark as a bar to registration. A true and correct copy of the Office Action is attached hereto as **Exhibit E**.

27. Defendant failed to respond to the Office Action within the required six-month deadline. The application was declared abandoned on November 24, 2025. Defendant never contested the USPTO's finding that the marks are confusingly similar.

**VI. Defendant's Willful Nationwide Expansion Despite Notice**

28. Despite receiving the USPTO Office Action in May 2025 and allowing its word mark application to be abandoned in November 2025, Defendant accelerated its expansion in the marketplace.

29. Based on my research, including review of Defendant's public statements, press releases, and LinkedIn posts by Defendant's co-founder Dan Haugen, I learned that by January 2026, Defendant's "Roxberry Fizz for Kids" products were being distributed in more than 2,200 Walmart stores across all 50 states, 450 Kroger locations, 273 Meijer locations, and 262 Harris Teeter locations. These retail chains are among the largest grocery retailers in the United States.

30. Defendant's products are also available through Amazon.com and through Defendant's own website at www.getroxberry.com. I've reviewed the site. True and accurate screenshots of Defendant's website are attached hereto as **Exhibit F**.

31. When consumers search for "Roxberry" on Google, Bing, or other search engines—likely intending to find our business—the search results intermix our brand and Defendant's brand, with the search engines unable to distinguish between Roxberry Juice Co. and Roxberry Naturals. Defendant's products appear prominently in organic search results alongside our website, creating

consumer confusion at the very first point of contact. I have personally observed this. Screenshots demonstrating this search engine confusion are attached hereto as **Exhibit G**.

**VII. Plaintiff's Cease-and-Desist Letter and Defendant's Failure to Respond**

32. After discovering the scope of Defendant's activities, I immediately engaged legal counsel to address the situation. Through counsel, Plaintiff sent Defendant a cease-and-desist letter demanding that Defendant halt all use of the ROXBERRY mark. A true and correct copy of this letter is attached hereto as **Exhibit H**.

33. As of the date of this declaration, Defendant has not responded to the cease-and-desist letter. Defendant has not communicated any willingness to cease its infringing conduct, negotiate a resolution, or rebrand its products. Defendant continues to sell its "Roxberry Fizz for Kids" products in thousands of retail stores nationwide under the ROXBERRY mark.

**VIII. Evidence of Actual Consumer Confusion**

34. Confusion between the two brands has already begun. On or about January 21, 2026, Roxberry Juice Co. received a customer inquiry through the Contact Us form on our website at www.roxberryjuice.com. The message, from a consumer named Davina M. Morris, stated: "I like your soda for kids. Its a healthier alternative. Thank you. Do you have coupons please." A true and correct screenshot of this consumer inquiry is attached hereto as **Exhibit I**. My company does not sell sodas.

35. Additional evidence of confusion extends beyond the consumer level to the commercial marketplace. I spoke recently with the franchise partner who first alerted me to Defendant's products. He informed me that he initially learned about the "Roxberry" soda because a NASCAR representative contacted him and inquired whether Roxberry would be interested in

sponsoring a race team—based on the assumption that our franchise was the same company selling Roxberry-branded beverages nationwide through Walmart.

### IX. Irreparable Harm to Plaintiff's Brand and Business

36. Defendant's use of the ROXBERRY mark is causing serious and irreparable harm to Roxberry Juice Co. The harm takes several forms, none of which can be adequately compensated by money damages.

37. I spent nearly 18 years building the ROXBERRY brand from a single store in American Fork, Utah to a multi-state franchise network. The ROXBERRY name represents the quality, freshness, and health-consciousness that our customers associate with our products. Every day that Defendant sells products under our name, that investment is being eroded.

38. Roxberry Juice Co. is known for fresh, made-to-order smoothies and juices prepared from whole fruits and vegetables. Defendant sells mass-produced, carbonated, canned beverages. Both companies are in the business of selling fruit-based drinks to health-conscious families—which is precisely why the confusion is so damaging. When a consumer purchases Defendant's "Roxberry Fizz" expecting the quality associated with our brand and instead receives a carbonated canned drink, that consumer may conclude that Roxberry Juice Co. has lowered its quality standards or "sold out." I have no ability whatsoever to control the quality, safety, ingredients, or consumer experience of Defendant's products, yet those products trade on my company's name and nearly two decades of goodwill.

39. The ROXBERRY brand is the foundation of our franchise system. Existing and prospective franchisees invest significant capital in the brand. If the ROXBERRY name is associated with a different company's products—particularly mass-produced canned soda—

franchisees may no longer take the risk of investing in our system because they would lack confidence that they "own" the brand. I have already heard concerns from franchise partners about the impact of Defendant's use of our name.

40. Prior to discovering Defendant's infringement, Roxberry Juice Co. was actively exploring options to expand into grocery store retail with packaged Roxberry-branded smoothie and beverage products. Defendant's nationwide occupation of the "Roxberry" name in grocery stores directly blocks our ability to pursue this natural extension of our brand. If Defendant's products already sit on Walmart shelves under the ROXBERRY name, our ability to launch our own grocery products under that name is severely compromised.

41. The ROXBERRY mark is the single most valuable asset of Roxberry Licensing, LLC. If the mark becomes associated with another company's products, the value of our franchise system, our brand, and our company as a whole takes a direct hit. This loss in company value is inherently difficult to quantify, which is precisely why it constitutes irreparable harm.

**X. The Timing of This Action Reflects Diligence, Not Delay**

42. I want to address briefly the timing of the filing of this action. The simple answer is that I did not know about Defendant's products until January 2026. Defendant is an Ohio company. Its initial distribution in late 2024 appears to have been limited, and its products did not come to the attention of anyone in the Roxberry Juice Co. network until a franchise partner spotted them in a retail store and alerted me on or about January 13, 2026.

43. Even after I learned of Defendant's existence, the full scope of the problem was not immediately apparent. It was only through investigation—including reviewing Defendant's public statements, SEC filings, USPTO records, and retail distribution footprint—that I came to

KNH LLP | cpehrson@knh.law

understand that Defendant had expanded into more than 2,200 Walmart stores and thousands of other retail locations nationwide.

44. Critically, Defendant's massive nationwide expansion appears to have accelerated dramatically in January 2026—i.e., after the USPTO refused to register Defendant's word mark and after Defendant abandoned that application. This was the qualitative change that transformed Defendant from a minor, unknown entrant into an existential threat to our brand.

45. I acted as quickly as I could. Upon learning of the situation on or about January 13, 2026, I: (a) immediately contacted our counsel for initial guidance; (b) conducted my own research on Defendant's principals, funding, and distribution; (c) authorized and sent a cease-and-desist letter to Defendant; and (d) authorized the filing of this lawsuit and the present motion. All of this occurred within approximately four weeks of my initial discovery.

## XI. The Equities Overwhelmingly Favor Plaintiff

46. I have invested nearly 18 years of my life building the ROXBERRY brand. Defendant has been in the market for approximately 16 months. The disparity in our respective investments in the ROXBERRY name could not be starker.

47. Defendant had ample opportunity to avoid this situation. At a minimum, Defendant could have: (a) conducted a basic trademark search before adopting the ROXBERRY name and discovered our federal registration; (b) rebranded in May 2025 when the USPTO told Defendant that the marks were confusingly similar; (c) rebranded in January 2026 upon receipt of our correspondence demanding that the infringement stop. In particuar at the first two junctures, Defendant's products were in limited distribution, and rebranding would have been relatively inexpensive. Instead, Defendant chose to dramatically expand after each of these warning signs.

KNH LLP | cpehrson@knh.law

48. Any hardship Defendant now faces from an injunction is entirely of its own making. Defendant rolled the dice by expanding aggressively under a name that the United States government had already told it was confusingly similar to an existing registration. The consequence of losing that gamble should not be borne by the company that has used the mark for nearly two decades.

49. The consuming public has an interest in not being confused about the source of the beverages they purchase—particularly when those beverages are marketed to children and families. When a parent sees "Roxberry" on a can of soda at Walmart and believes it is connected to the Roxberry Juice Co. brand they have patronized at our store locations, that parent is deceived. Defendant's products are marketed specifically to children ("**Fizz for Kids**"), making this confusion particularly concerning.

50. I have reviewed the Complaint filed in this action. The factual allegations contained in the Complaint are true and correct based on my personal knowledge, and I verify them under penalty of perjury pursuant to 28 U.S.C. § 1746. To the extent any allegations are based on information and belief, I believe them to be true based on the investigation and research I describe in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 11th day of February, 2026, in Sandy, Utah.

/s/Brad Davis
Brad Davis
Founder and President
Roxberry Licensing, LLC

KNH LLP | cpehrson@knh.law