Chad Pehrson (12622) cpehrson@knh.law
Stephen Mouritsen (16523) smouritsen@knh.law
Thomas D. Briscoe (16788) tbriscoe@knh.law
**KNH LLP**
50 W. Broadway 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Roxberry Licensing, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC, a Utah limited liability company,<br><br>      Plaintiff and Counter-Defendant,<br><br>   v.<br><br>ROXBERRY NATURALS, INC., an Ohio corporation,<br><br>      Defendant and Counter-Claimant. | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT THEREOF**<br><br><br>Case No.   2:26-cv-00126-JNP-JCB<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

Plaintiff Roxberry Licensing, LLC, pursuant to Federal Rule of Civil Procedure 65 and

DUCivR 7-1, hereby moves the Court for a preliminary injunction enjoining Defendant

Roxberry Naturals, Inc. from using the mark "ROXBERRY" or any confusingly similar mark in

connection with the advertising, promotion, distribution, sale, or offering for sale of any goods or

services. In support of this Motion, Plaintiff states as follows:

### INTRODUCTION

This case presents a straightforward set of facts that compel preliminary injunctive relief.

1

Plaintiff coined the fanciful word "Roxberry" in 2008 and has used it continuously in commerce for nearly eighteen years. Plaintiff owns an incontestable federal trademark registration on the Principal Register. Defendant adopted the identical word sixteen years later and is now selling carbonated beverages under the ROXBERRY name in more than 3,000 retail stores nationwide. The United States Patent and Trademark Office independently concluded that the marks are confusingly similar and refused registration of Defendant's word mark on likelihood-of-confusion grounds. Rather than cease use, Defendant abandoned its application — and dramatically expanded its distribution.

The resulting confusion is neither hypothetical nor isolated. It is documented across every major digital platform. Google's own artificial intelligence attributes Defendant's product to Plaintiff's brand. A consumer wrote to Plaintiff requesting coupons for "your soda for kids." A NASCAR representative contacted a Roxberry franchise partner assuming the franchise was the same company selling beverages in Walmart. A supply-chain consultant with forty years of industry experience saw a Walmart advertisement for Defendant's product and believed Plaintiff had launched a retail product. Paid influencers hired by Defendant use Plaintiff's trade name as a hashtag because they cannot tell the two companies apart. Plaintiff seeks a preliminary injunction to halt the ongoing and accelerating erosion of its brand while this case proceeds to resolution

**STATEMENT OF FACTS**

**A. Roxberry Juice Co.'s Founding, Brand, and Trademark**

Brad Davis founded Roxberry Juice Co. in Utah in 2008 and coined the word "Roxberry" — a fanciful term that does not appear in any dictionary — as the brand name for his smoothie and juice franchise. (Davis Decl. ¶¶ 4-5.)

2

The first corporate store opened in March 2008 in American Fork, Utah, and two franchise locations followed that same year. (Davis Decl. ¶ 5.)

The company has operated more than twenty-five franchise locations across Utah and Idaho, with prior expansion to Richmond, Virginia. (Davis Decl. ¶ 9.)

Roxberry Juice Co. has received multiple "Best of State" awards in Utah. (Davis Decl. ¶ 9.)

Plaintiff owns U.S. Trademark Registration No. 5,495,492 for the ROXBERRY JUICE CO. design mark, registered on the Principal Register on June 19, 2018. (Davis Decl. ¶ 11; Davis Ex. A.)

The registration covers smoothies, fresh-pressed juices, açai bowls, and related products. (Davis Decl. ¶ 11.)

The registration is incontestable under Section 15 of the Lanham Act. (Davis Decl. ¶ 12.) Plaintiff also holds common law rights dating to March 2008. (Davis Decl. ¶ 13.)

**B. Roxberry Naturals' Adoption of the Identical Mark**

Roxberry Naturals, Inc. was incorporated in Ohio in 2022 and began selling carbonated canned beverages under the name "Roxberry Fizz for Kids" in September 2024 — more than sixteen years after Plaintiff's first use. (Davis Decl. ¶¶ 16-17; Complaint ¶ 22.)

The company raised $550,000 in equity funding. Its president, Andy Sauer, is also the CEO of Garage Beer, a beverage company valued at approximately $200 million. (Davis Decl. ¶ 16.)

By January 2026, Defendant's products were being distributed in more than 2,200 Walmart stores across all 50 states, 450 Kroger locations, 273 Meijer locations, and 262 Harris

KNH LLP | 50 West Broadway Ste. 900

Teeter locations. (Davis Decl. ¶ 19.)

Defendant admits these facts. (Answer ¶¶ 3, 32.)

### C. The USPTO Refused Defendant's Word Mark

On May 21, 2025, the USPTO examining attorney issued an Office Action refusing to register Defendant's "ROXBERRY" word mark because it was confusingly similar to Plaintiff's Registration No. 5,495,492. (Davis Decl. ¶ 22; Davis Ex. D.)

Defendant admits this. (Answer ¶ 27.)

Defendant failed to respond and the application was abandoned on November 24, 2025. (Davis Decl. ¶ 23; Answer ¶ 28.)

Defendant never contested the USPTO's finding.

Despite this explicit notice, Defendant accelerated its nationwide expansion. (Davis Decl. ¶ 24.)

### D. Plaintiff's Discovery and Prompt Action

Plaintiff first learned of Defendant's activities on or about January 13, 2026, when a franchise partner alerted Brad Davis. (Davis Decl. ¶ 15.)

Within approximately four weeks, Plaintiff:

- sent a cease-and-desist letter (Davis Decl. ¶ 25; Davis Ex. F);

- conducted research on Defendant's principals and distribution (Davis Decl. ¶ 42); and

- filed this lawsuit and the present motion. (Davis Decl. ¶ 42.)

Defendant admits receiving the cease-and-desist letter (Answer ¶ 35), but has not ceased its use of the ROXBERRY mark. (Davis Decl. ¶ 26.)

4

**E. Documented Confusion**

The record contains numerous documented instances of actual confusion across four distinct levels:

Consumer confusion: On January 21, 2026, a consumer named Davina M. Morris wrote to Plaintiff through its website: "I like your soda for kids. It's a healthier alternative. Thank you. Do you have coupons please."  Plaintiff does not sell sodas. (Davis Decl. ¶ 27; Davis Ex. G.)

Commercial confusion: A NASCAR representative contacted a Roxberry franchise partner to inquire about sponsoring a race team — assuming the franchise was the same company selling beverages in Walmart. (Davis Decl. ¶ 29.)

Professional confusion: Craig Romney, a supply chain consultant with over forty years of foodservice distribution experience, saw a Walmart advertisement for Defendant's product on the MSN news feed and immediately believed Plaintiff had launched a retail product. (Davis Decl. ¶ 28; Romney Decl. ¶¶ 8-12; Romney Ex. A.)

Digital and AI confusion: Phil Case, President of Max Connect Digital (Plaintiff's marketing agency), documented that Google's AI Mode attributes Defendant's "Roxberry Fizz for Kids" to Plaintiff's brand, presenting it as a menu item of Plaintiff's business. (Case Decl. ¶ 7.) Grok merges both companies into a single entity. (Case Decl. ¶ 8.) ChatGPT expressly provides a warning that the brands appear to be separate entities. (Case Decl. ¶ 9.) On Amazon, searches for "Roxberry" return exclusively Defendant's products. (Case Decl. ¶ 16.) Paid influencers promoting Defendant's product use the hashtag #roxberryjuice — Plaintiff's trade name — impairing the ability to distinguish between the two companies' brands. (Davis Decl. ¶ 30; Case Decl. ¶ 25.)

KNH LLP | 50 West Broadway Ste. 900

5

**LEGAL STANDARD**

A preliminary injunction requires the movant to establish four factors: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the injunction; and (4) the injunction would not be adverse to the public interest." *Harris Research, Inc. v. Lydon,* 505 F. Supp. 2d 1161, 1164 (D. Utah 2007); *see also Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.,* 434 F. Supp. 3d 1227, 1238 (D. Utah 2020) (citing *Diné Citizens Against Ruining Our Env't v. Jewell,* 839 F.3d 1276, 1281 (10th Cir. 2016)).

Under the 2020 Trademark Modernization Act, "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a).

**ARGUMENT**

**I. PLAINTIFF IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS**

**A. Plaintiff Holds a Valid, Incontestable Federal Registration**

Plaintiff's Registration No. 5,495,492 is registered on the Principal Register, has been in continuous use for more than five years, and is incontestable under Section 15 of the Lanham Act. (Davis Decl. ¶¶ 11-12.) Under 15 U.S.C. § 1115(b), an incontestable registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  This establishes Plaintiff's ownership and the validity of the mark as a

KNH LLP | 50 West Broadway Ste. 900

matter of law.

**B. The Likelihood of Confusion Factors Overwhelmingly Favor Plaintiff**

"In determining whether a likelihood of confusion exists between two marks, this court considers the following nonexhaustive factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.,* 185 F.3d 1084, 1089-90 (10th Cir. 1999)); *see also Harris Research*, 505 F. Supp. 2d at 1167.

*1. Similarity of the Marks:*

Identical. The marks are not merely similar — they are identical in their dominant element. Both parties use the word "ROXBERRY" as the primary brand identifier. In *Harris Research*, this Court granted a preliminary injunction where the marks were "virtually identical in design" with "only three letters that are different." 505 F. Supp. 2d at 1167.

Here, there is zero difference in the dominant word element. The word "ROXBERRY" is a fanciful, coined term invented by Brad Davis. (Davis Decl. ¶ 4.) It has no meaning apart from Plaintiff's brand. When consumers see "ROXBERRY" on any product, they associate it with Plaintiff — because Plaintiff is the only entity that has ever used that word until Defendant adopted it sixteen years later.

Defendant will argue that the design elements of the respective marks are distinguishable. But as this Court recognized in *Equitable*, 434 F. Supp. at 1246 (D. Utah 2020), when two

companies use the same core word in related industries, design differences do not prevent confusion.

The evidence proves this:

- Google's own artificial intelligence cannot distinguish between the brands based on design elements. (Case Decl. ¶ 7.)

- Craig Romney, a forty-year industry veteran, could not distinguish between them. (Romney Decl. ¶¶ 8-11.)

- Davina Morris could not distinguish between them. (Davis Decl. ¶ 27.)

The word "ROXBERRY" is what causes confusion — not the design elements surrounding it.

### 2. Defendant's Intent:

Willful. Defendant had three opportunities to avoid this situation:

(a) before adopting the mark, a basic trademark search would have revealed Plaintiff's registration;

(b) in May 2025, the USPTO told Defendant the marks were confusingly similar;

(c) in January 2026, Plaintiff's counsel demanded cessation. (Davis Decl. ¶ 44.)

After each warning, Defendant expanded. While Defendant may argue it did not intend to trade on Plaintiff's goodwill, the Tenth Circuit and this Court recognize that pushing forward with an infringing mark after explicit warnings constitutes bad faith. As this Court noted in *Equitable*, a defendant who persists in adopting a mark after being warned and proceeding despite knowledge of the senior user's rights demonstrates, "at a minimum . . . indifferen[ce] toward the harm that would likely result to [Plaintiff's] less prominent, but rapidly growing,

KNH LLP | 50 West Broadway Ste. 900

brand recognition." 434 F. Supp. 3d at 1248.

Here, Defendant's aggressive expansion into 2,200 Walmart stores immediately after the USPTO refusal—and its continued nationwide rollout even after receiving Plaintiff's cease-and-desist letter—goes beyond mere indifference. It suggests a deliberate strategy to lock up retail shelf space under Plaintiff's brand name before Plaintiff could enter those channels. (Davis Decl. ¶ 44; Romney Decl. ¶¶ 19-20.)

*3. Actual Confusion:*

Documented and Pervasive. "[A]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *King of the Mountain,* 185 F.3d at 1092 (internal quotation marks omitted). The record contains numerous different documented instances across four levels:  consumer (Morris email, NASCAR inquiry), professional (Romney MSN ad confusion), digital/AI (Google AI Mode, Grok, ChatGPT, Knowledge Panel, search results, Amazon), and influencer (#roxberryjuice hashtag co-option). (Davis Decl. ¶¶ 27-30; Romney Decl. ¶¶ 8-12; Case Decl. ¶¶ 6-27.)

Defendant may try to characterize this evidence as "de minimis" similar to reasoning applied in *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.,* 828 F.2d 1482, 1487 (10th Cir. 1987) and *Water Pik, Inc. v. Med-Sys., Inc.,* 726 F.3d 1136, 1146 (10th Cir. 2013). But those cases involved isolated anecdotal instances. Here, the confusion spans every digital platform, every level of consumer sophistication, and every geographic market.

When Google's own AI — the most sophisticated search technology on earth — cannot distinguish between the brands, the confusion is neither isolated nor anecdotal. These platforms actively present this conflated brand identity to human consumers making purchasing decisions.

This creates a reality where the confusion is systematic and pervasive.

*4. Similarity of Goods and Marketing Channels:*

Overlapping and Converging. Both parties sell fruit-based beverages marketed to health-conscious families with children. (Davis Decl. ¶ 33; Answer ¶ 23, admitting products marketed to "health-conscious consumers, including families with children.")

Defendant may argue that made-to-order smoothies and canned carbonated beverages are different products. But under Tenth Circuit law, products need not be identical; they need only be "related in the minds of consumers." *Equitable*, 434 F. Supp. 3d at 1250 n.140 (applying the related goods doctrine). Both products purport to be healthy, fruit-based beverages and compete for the same demographic.

Furthermore, the marketing channels are colliding. Defendant admits its products are available through Walmart, Kroger, Meijer, Harris Teeter, and Amazon (Answer ¶¶ 3, 32, 33), and that it uses sponsored search advertising. (Answer ¶ 34.) Meanwhile, Plaintiff is actively expanding into those exact grocery retail channels (Davis Decl. ¶ 35; Romney Decl. ¶¶ 16-18) and competes in the same digital search space. (Case Decl. ¶¶ 28-29). The channels are not merely overlapping—they are converging.

*5. Degree of Purchaser Care:*

The Tenth Circuit recognizes that "items purchased on impulse are more likely to be confused than expensive items . . . ." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 975 (10th Cir. 2002). Here, neither party is selling complex financial instruments like the annuities in *Equitable*. Both parties sell low-cost, consumable beverages. Defendant's products are inexpensive sodas marketed to parents shopping in grocery store aisles. Plaintiff sells casual,

KNH LLP | 50 West Broadway Ste. 900

made-to-order smoothies and juices. These are everyday, impulse purchases made quickly and with minimal deliberation. Because the degree of care is exceptionally low, the likelihood of confusion is proportionately high.

*6. Strength of Plaintiff's Mark:*

Strong. In assessing a mark's strength, courts evaluate both conceptual strength and commercial strength. *Equitable*, 434 F. Supp. at 1251. Plaintiff's mark is exceptionally strong in both categories. Conceptual Strength: "ROXBERRY" is a fanciful, coined term with no dictionary meaning. (Davis Decl. ¶ 4.) Fanciful marks are inherently distinctive and receive the highest level of trademark protection on the distinctiveness spectrum. Commercial Strength: Plaintiff has established deep marketplace recognition by using the mark continuously for nearly eighteen years, receiving multiple "Best of State" awards, and securing an incontestable federal registration. (Davis Decl. ¶¶ 9, 12.)

**C. The USPTO's Independent Finding Corroborates Likelihood of Confusion**

The USPTO examining attorney independently concluded that Defendant's "ROXBERRY" word mark was likely to cause confusion with Plaintiff's registration. (Davis Decl. ¶ 22; Davis Ex. D.) Defendant admits this. (Answer ¶ 27.) Furthermore, Defendant failed to respond to the Office Action and abandoned its application. (Davis Decl. ¶ 23; Answer ¶ 28.) While not binding on this Court, the USPTO's findings are persuasive. *See Harris Research, Inc.* 505 F. Supp. 2d at 1167-68.

**D. Defendant's "We Have a Registration" Defense Fails**

Defendant argues that its design mark registration (Reg. No. 7,739,892) constitutes "an independent governmental determination that Defendant's ROXBERRY design mark was not

11

likely to cause confusion." (Answer ¶ 22.)

This argument is unavailing. It is well-established in federal trademark law that a junior user's trademark registration does not immunize it from an infringement claim by a senior user. *See Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. at 1241 (*quoting Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999)) ("The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion."); *see also* 15 U.S.C. § 1065 (expressly preserving the superior rights of a senior user whose common law use predates a junior user's federal registration). Furthermore, the USPTO's preliminary, *ex parte* determination to register a mark does not bind this Court's likelihood of confusion analysis. The issuance of Defendant's design mark registration does not authorize its use of the word "ROXBERRY" where that use creates a likelihood of confusion with Plaintiff's prior, incontestable registration.

And of course, the exact same USPTO that approved Defendant's design mark also refused Defendant's word mark based on a direct finding of confusion with Plaintiff's registration. (Davis Decl. ¶ 22; Answer ¶ 27.)

### E. Defendant's Judicial Estoppel Defense Fails

Defendant's Ninth Affirmative Defense argues that Plaintiff is estopped from claiming the word "ROXBERRY" is the dominant element of its mark because Plaintiff previously told the USPTO that design elements were dominant. (Answer ¶ 76.)  This argument fails because Plaintiff's positions are not "clearly inconsistent," which is a mandatory prerequisite for judicial estoppel in the Tenth Circuit. *See Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 767 F.3d

987, 993 (10th Cir. 2014). Plaintiff's prior statements to the USPTO were made in the specific context of distinguishing its mark from "NIGHT AT THE ROXBERRY"—a completely different, multi-word mark for different goods (yogurt drinks). (Answer, CC ¶¶ 2-3.)

Arguing that a mark's design elements distinguish it from one particular competitor does not preclude arguing that the word element causes confusion with a different competitor using the identical word on similar goods in the same channels. Because context dictates the comparison, the two situations are not clearly inconsistent; they are simply fundamentally different.

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

### A. The Statutory Presumption Applies

Under the 2020 Trademark Modernization Act, Plaintiff is entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits. 15 U.S.C. § 1116(a). For the reasons set forth in Section I, Plaintiff has demonstrated a substantial likelihood of success. The presumption therefore applies.

### B. The Evidence Independently Establishes Irreparable Harm

Even without the presumption, the evidence establishes irreparable harm through multiple independent channels:

Loss of control over brand reputation. In *Equitable*, this Court identified "loss of control over a business's reputation" as a primary form of irreparable harm. 434 F. Supp. 3d at 1253. Plaintiff has no ability to control the quality, safety, ingredients, or consumer experience of Defendant's products, yet those products trade on Plaintiff's name and nearly two decades of goodwill. (Davis Decl. ¶ 33.)

Blocked retail expansion. Plaintiff was actively developing grocery retail products — including the "Roxberry Roxypop" freezer pop — when Defendant's infringement was discovered. (Davis Decl. ¶ 35; Romney Decl. ¶¶ 16-18.) Craig Romney attests that retail buyers will not stock products from two different companies using the same brand name and that once shelf space is allocated, it is extremely difficult to reclaim. (Romney Decl. ¶¶ 19-21.) Defendant's nationwide retail presence effectively blocks Plaintiff's planned expansion. This harm cannot be remedied by money damages.

Compounding digital confusion. Phil Case attests that confusion is compounding daily as algorithms increasingly associate the two brands. (Case Decl. ¶¶ 11, 16, 31.)

Franchise system erosion. The ROXBERRY brand is the foundation of Plaintiff's franchise system. Franchisees invest significant capital. Furthermore, Plaintiff is currently funding an active, multi-state franchise expansion campaign through a Franchise Growth Solution Agreement with Excelsior Franchise Solutions. (Davis Decl. ¶¶ 37-39.) If the brand becomes associated with Defendant's products, it undermines that value. (Davis Decl. ¶ 34.)

### C. Defendant Cannot Rebut the Presumption

Defendant may argue delay, asserting Plaintiff should have acted sooner. Yet this misapprehends the standard for emergency injunctive relief. A trademark owner is not required to seek a preliminary injunction against an unknown nascent startup with limited distribution. The need for emergency equitable relief crystallized in January 2026, when Defendant aggressively expanded into 2,200 Walmart stores nationwide. Plaintiff acted promptly upon discovering this massive market escalation. Within approximately four weeks, Plaintiff investigated the threat, issued a cease-and-desist demand, and filed this action. (Davis Decl. ¶¶

40, 42.) Four weeks to respond to a sudden, nationwide retail rollout is prompt, reasonable, and negates any claim of undue delay.

## III. THE BALANCE OF EQUITIES FAVORS PLAINTIFF

Plaintiff has invested nearly eighteen years building the ROXBERRY brand. Defendant has been in the market for approximately sixteen months, with the retail expansion occurring in January 2026. (Davis Decl. ¶ 43.)

Defendant will likely argue that unwinding its nationwide retail presence will cause significant financial hardship. However, any such hardship is entirely self-inflicted. "Courts afford little weight to self-inflicted harms when conducting the balancing inquiry." *Equitable,* 434 F. Supp. 3d at 1255.

Defendant had multiple opportunities to avoid this situation. It could have heeded standard trademark search risks before adopting the mark; it could have rebranded in May 2025 when the USPTO explicitly refused its word mark application; and it could have halted its rollout when Plaintiff sent a cease-and-desist demand. Instead, Defendant elected to place a calculated bet, aggressively expanding into 2,200 Walmart stores despite full knowledge of Plaintiff's senior rights. Because Defendant assumed this risk, the balance of equities weighs heavily in favor of protecting Plaintiff's established brand.

## IV. THE PUBLIC INTEREST FAVORS AN INJUNCTION

It is well-established in this District that trademark infringement is "inherently contrary to the public interest." *Equitable*, 434 F. Supp. 3d at 1255 (quoting *Harris Research, Inc.* 505 F. Supp. 2d at 1169). Preventing consumer confusion is especially critical here because the products are consumable beverages marketed to children. Parents making purchasing decisions

15

for their families rely heavily on brand recognition and trust. (Davis Decl. ¶ 45.) When a parent sees Defendant's "Roxberry Fizz for Kids" in a grocery store and believes it is connected to Plaintiff's established brand of healthy, fresh-pressed juices and smoothies, that parent is deceived. (Davis Decl. ¶ 45.) Protecting the public from this exact type of marketplace deception is the fundamental purpose of the Lanham Act.

## V. SECURITY

Under Federal Rule of Civil Procedure 65(c), a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongly enjoined or restrained." District courts possess "wide discretion" in determining the appropriate level of security. *Equitable*, 434 F. Supp. 3d at 1255 (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1214 (10th Cir. 2009)).

As established above, Defendant's exposure is entirely self-inflicted. A defendant cannot deliberately expand an infringing footprint after receiving explicit notice of a senior user's rights, and then use the cost of that calculated risk to demand a prohibitive bond. Because Plaintiff has demonstrated a high likelihood of success on the merits, and because Defendant's potential damages are the result of its own willful escalation, Plaintiff respectfully submits that a bond of $10,000 is proper and sufficient under Rule 65(c).

## CONCLUSION

Plaintiff has demonstrated a substantial likelihood of success on the merits, irreparable harm, a favorable balance of equities, and that the public interest supports injunctive relief. Plaintiff respectfully requests that the Court enter a preliminary injunction:

(a) Enjoining Defendant, its officers, directors, agents, employees, attorneys, successors,

KNH LLP | 50 West Broadway Ste. 900

16

assigns, affiliates, and all persons acting in concert or participation with Defendant, from using the mark "ROXBERRY" or any confusingly similar mark in connection with the advertising, promotion, distribution, sale, or offering for sale of any goods or services;

(b) Enjoining Defendant from using any trade name, trademark, service mark, domain name, social media identifier, or other designation that is identical or confusingly similar to Plaintiff's ROXBERRY mark;

(c) Requiring Defendant to affirmatively notify all of its retail distributors, including Walmart, Kroger, Meijer, and Harris Teeter, within seven (7) days of the entry of the injunction, that it is no longer authorized to distribute or sell products bearing the "ROXBERRY" mark;

(d) Requiring Defendant to disable, or transfer to Plaintiff, the domain name "getroxberry.com" and any affiliated social media accounts within seven (7) days of the entry of the injunction;

(e) Requiring Defendant to file with this Court and serve on Plaintiff, within thirty (30) days of entry of the injunction, a report in writing and under oath setting forth the manner in which Defendant has complied with the injunction; and

(f) Granting such other and further relief as this Court deems just and proper.

DATED this 20th day of March 2026.

**KNH LLP**

*/s/Chad Pehrson*
Chad Pehrson
Stephen Mouritsen
Thomas D. Briscoe
*Attorneys for Plaintiff and Counter-Defendant*
*Roxberry Licensing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I caused to be filed a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT THEREOF** via the Court's CM/ECF system, which also effectuated service on all counsel of record. The following have been served via electronic mail as follows:

Aaron T. Brogdon abrogdon@fbtgibbons.com

Samantha M. Quimby squimby@fbtgibbons.com

Vance V. VanDrake vvandrake@fbtgibbons.com


*/s/Chad Pehrson*

KNH LLP | 50 West Broadway Ste. 900