Chad Pehrson (12622)
Thomas D. Briscoe (16788)
Stephen Mouritsen (16523)
**KNH LLP**
50 W. Broadway 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
cpehrson@knh.law
tbriscoe@knh.law
smouritsen@knh.law

*Attorneys for Plaintiff and*
*Counter-Defendant*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC, a Utah limited liability company, <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> ROXBERRY NATURALS, INC., a Delaware corporation, <br><br> Defendant and Counter-Claimant. | **DECLARATION OF BRAD DAVIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Case No.   2:26-cv-00126-JNP-JCB <br><br> Judge Jill N. Parrish <br><br> Magistrate Judge Jared C. Bennett |

I, Brad Davis, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**Background**

1. I am the Founder and President of Roxberry Juice Co., which operates through Roxberry Licensing, LLC ("**Roxberry Juice Co.**"), the Plaintiff in this action. I am over 18 years of age and competent to testify to the matters set forth herein. I make this declaration based

1

on my personal knowledge, except where otherwise noted, and if called as a witness, I would testify truthfully based on my personal knowledge.

2. I reside in the State of Utah. My primary professional focus for the past 18 years has been building and operating the Roxberry Juice Co. franchise system.

3. Prior to founding Roxberry Juice Co., I had extensive experience in the juice and beverage industry. I owned and operated a juice business in California and served as a corporate executive at Zuka Juice, where I helped grow that company to 108 stores in eight Western states with over $50 million in annual sales before its acquisition by Jamba Juice in 1999. That experience gave me deep knowledge of the beverage franchise industry, including the critical importance of brand identity and trademark protection.

**Founding and Growth**

4. I founded Roxberry Juice Co. in Utah in 2008. I created the name "Roxberry" specifically to serve as a brand and trademark for my new juice and smoothie business. The word "Roxberry" is a made-up name that I created and was not taken from any existing word or dictionary definition. I invented it to be a unique, memorable, and distinctive brand name for our products.

5. The first Roxberry Juice Co. corporate store opened in March 2008 at Hunter's Crossing Center in American Fork, Utah, marking the beginning of our use of the ROXBERRY name. We have used the mark continuously since that date—a period of nearly 18 years. Roxberry was franchise-ready from the start: two of the three stores that opened in 2008 were franchised locations, in Murray and Highland, Utah.

6. Roxberry Juice Co. is and always has been a family-owned business. My son,

Braden Davis, is actively involved in the company's day-to-day operations, and each franchise location is locally owned and operated by individual franchisees who have invested their own capital in the ROXBERRY brand.

7.      In January 2009, the nationwide recession hit hard. Rather than risk Roxberry during an uncertain economy, I diversified into other franchise brands while keeping Roxberry's operations running. Over the next decade, I served as President of Abundant Brands, growing Costa Vida to 20 locations and overseeing more than 300 Subway franchise locations in Utah. Throughout this period, Roxberry remained part of our portfolio and franchisees continued to open new locations. In mid-2019, I stepped down from Abundant Brands to focus exclusively on Roxberry. A few months later, COVID-19 hit, followed by severe supply chain disruptions in fruits and vegetables. My wife Sandi was also dealing with a serious health issue. These challenges delayed our growth plans but did not diminish our commitment to the brand.

8.      Notwithstanding these challenges, by September 2025 I had engaged Excelsior Franchise Solutions to assist with multi-state franchise expansion, and I had engaged Craig Romney, a supply chain consultant with over 40 years of experience in foodservice distribution, to evaluate supply chain strategies for our expanding number of franchises and to help develop our plans for placing Roxberry-branded products in grocery retail channels. These engagements demonstrate my current commitment to aggressive growth of the Roxberry brand beyond our traditional Utah and Idaho markets.

9.      As of the date of this declaration, the Roxberry Juice Co. franchise network operates locations across Utah and Idaho, with prior expansion to Richmond, Virginia (opened December 2018). We have operated more than 25 franchise locations. Our products include

smoothies, fresh-pressed juices, açai bowls, and related healthy food and beverage items. Each product is made fresh-to-order in our franchise locations using whole fruits and vegetables. The freshness and quality of our products are central to the ROXBERRY brand identity and to the goodwill we have built over nearly two decades. Roxberry Juice Co. has received multiple "Best of State" awards in Utah, reflecting the significant consumer recognition and goodwill our brand has earned in our core market.

10.     Roxberry Licensing, LLC is headquartered at 10975 S. State, Sandy, UT 84070. We actively manage the franchise system, maintain quality standards, and oversee the consistent use and presentation of the ROXBERRY mark across all franchise locations.

**Trademark Protection**

11.     Roxberry Licensing, LLC is the owner of U.S. Trademark Registration No. 5,495,492, Serial No. 87/470,335, for the ROXBERRY JUICE CO. design mark, registered on the Principal Register of the United States Patent and Trademark Office ("**USPTO**"). (*See* **Exhibit A**.) This registration has been active and in good standing since June 19, 2018. We have timely filed all required maintenance documents to keep the registration active, including the required declarations of continued use. The mark covers smoothies, fresh-pressed juices, açai bowls, and related healthy food and beverage products.

12.     This registration has now been active and in continuous use for more than five consecutive years. We have filed the necessary declaration to assert incontestable status under Section 15 of the Lanham Act. This means that our exclusive right to use the ROXBERRY JUICE CO. mark in connection with our goods is no longer subject to challenge on most grounds.

13.    Beyond our federal registration, we have common law trademark rights in the ROXBERRY name dating to March 2008. Our current federal registration (No. 5,495,492) was obtained on June 19, 2018, and has been continuously maintained since that date.

**Awareness of Roxberry Naturals Using Our Name**

14.    In or around January 2026, I first became aware that a company called Roxberry Naturals, Inc. was selling carbonated canned beverages under the name "Roxberry Fizz for Kids" using the identical ROXBERRY mark.

15.    On or about January 13, 2026, one of our franchise partners brought to my attention the scope of Roxberry Naturals' activities. The franchise partner had observed Roxberry Naturals' products on retail shelves and directed me to their website at www.getroxberry.com. I immediately recognized the potential for consumer confusion and the serious threat to our brand.

16.    I conducted research and learned that Roxberry Naturals, Inc. was incorporated in Columbus, Ohio in 2022 by co-founders Andy Sauer (President), Lauren Sauer, and Dan Haugen (Co-Founder and COO). The company raised $550,000 in equity funding. Andy Sauer is also the CEO of Garage Beer, a beverage company valued at approximately $200 million. These are experienced industry players with deep pockets and access to top-tier legal counsel.

17.    Roxberry Naturals sells "Roxberry Fizz for Kids"—carbonated canned beverages marketed as healthier alternatives to traditional sodas, sold in 7.5 fl. oz. cans in flavors including "Galaxy Gulp Citrus," "Ocean Potion Fruit Punch," and "Pink Lava Strawberry Lemonade." I personally purchased these products at a Utah Walmart near multiple Roxberry Juice locations on January 29, 2026. (*See* **Exhibit B**.)

18.    Roxberry Naturals' website prominently features the ROXBERRY mark in large letters at the top of the page. (*See* **Exhibit C**.) The website uses the identical word "Roxberry" that we have used for nearly 18 years. Roxberry Naturals is using the ROXBERRY mark as a brand identifier across its entire product line and across multiple retail channels, including online sales through its website, Amazon.com, and retail distribution through brick-and-mortar stores.

19.    Based on my research, including review of Roxberry Naturals' public statements, press releases, and LinkedIn posts by Roxberry Naturals' co-founder Dan Haugen, I learned that by January 2026, Roxberry Naturals' "Roxberry Fizz for Kids" products were being distributed in more than 2,200 Walmart stores across all 50 states, 450 Kroger locations, 273 Meijer locations, and 262 Harris Teeter locations.

**USPTO Refusal**

20.    Concerned by the impact Roxberry Naturals' use of the ROXBERRY name was already having on our brand, I reviewed Roxberry Naturals' trademark filings on the USPTO website and discovered the following.

21.    On February 2, 2023, Roxberry Naturals filed an intent-to-use application for a Roxberry design mark, which was registered on March 25, 2025. On November 20, 2024, Roxberry Naturals separately filed Application Serial No. 98/863,067 seeking registration of the word mark "ROXBERRY" for dietary supplemental drinks.

22.    On May 21, 2025, the USPTO examining attorney issued an Office Action refusing to register Roxberry Naturals' "ROXBERRY" word mark because the examining attorney concluded the mark was confusingly similar to our trademark with Registration No. 5,495,492. (*See* **Exhibit D**.) The Office Action specifically cited our mark as a reason to refuse

registration of the ROXBERRY word mark.

23.    Roxberry Naturals failed to respond to the Office Action within the required six-month deadline. The application was declared abandoned on November 24, 2025. Roxberry Naturals never contested the USPTO's finding that the marks are confusingly similar.

**Expansion Despite Notice**

24.    Despite receiving the USPTO Office Action in May 2025 and allowing its word mark application to be abandoned in November 2025, Roxberry Naturals accelerated its expansion. When consumers now search for "Roxberry" on Google, Bing, or other search engines, the search results display both companies' products together, with the search engines unable to distinguish between Roxberry Juice Co. and Roxberry Naturals. (*See* **Exhibit E**.) I have personally observed this phenomenon. Roxberry Naturals' products appear prominently in organic search results alongside our website, creating consumer confusion.

**Cease-and-Desist**

25.    After discovering the scope of Roxberry Naturals' activities, I immediately engaged legal counsel to address the situation. Through counsel, Roxberry Juice Co. sent Roxberry Naturals a cease-and-desist letter demanding that Roxberry Naturals halt all use of the ROXBERRY mark. (*See* **Exhibit F**.)

26.    As of the date of this declaration, Roxberry Naturals has not communicated a genuine willingness to cease its use of the ROXBERRY mark, negotiate a resolution, or rebrand its products. Roxberry Naturals continues to sell its "Roxberry Fizz for Kids" products in thousands of retail stores nationwide under the ROXBERRY mark.

**Consumer Confusion**

27.     Confusion between the two brands has already begun. On or about January 21, 2026, Roxberry Juice Co. received a customer inquiry through our website contact form. A consumer named Davina M. Morris wrote: "I like your soda for kids. It's a healthier alternative. Thank you. Do you have coupons please." (*See* **Exhibit G**.) My company does not sell sodas. This message is direct evidence that a consumer confused our brand with Roxberry Naturals.

28.     This confusion is not limited to casual consumers. Craig Romney, a supply chain consultant with over 40 years of professional experience in the foodservice distribution industry, encountered a Roxberry Naturals advertisement on the MSN news feed on or about February 25, 2026. Despite his extensive professional expertise in the beverage industry and his familiarity with our brand, Mr. Romney's immediate reaction was that Roxberry Juice Co. had successfully launched a product in Walmart. Mr. Romney subsequently informed me that this confusion caused immediate concern about Roxberry Juice Co.'s ability to successfully enter the grocery retail market, as retailers and consumers would now perceive "Roxberry" products as already being available through grocery channels. If a sophisticated professional with deep industry knowledge can be confused, the average consumer certainly will be.

29.     Additional evidence of confusion extends beyond the consumer level to the commercial marketplace. I spoke recently with the franchise partner who first alerted me to Roxberry Naturals' products. He informed me that he initially learned about the "Roxberry" soda because a NASCAR representative contacted him and inquired whether Roxberry would be interested in sponsoring a race team—based on the assumption that our franchise was the same company selling Roxberry-branded beverages nationwide through Walmart.

30.     I have also observed that paid influencers engaged by Roxberry Naturals are using the hashtags #roxberry and #roxberryjuice in their Instagram posts. These hashtags have historically been used exclusively by Roxberry Juice Co. and our customers and franchisees. The fact that even paid influencers engaged by Roxberry Naturals are using #roxberryjuice—which is our trade name—demonstrates that these individuals cannot distinguish between the two companies.

**Harm to Our Business**

31.     Roxberry Naturals' use of the ROXBERRY mark is causing serious and irreparable harm to Roxberry Juice Co. The harm takes several forms, and money damages alone cannot fix the damage that's already been done to our brand identity and market position.

32.     I have invested nearly 18 years building the ROXBERRY brand from a single store in American Fork, Utah to a multi-state franchise network. The ROXBERRY name represents the quality, freshness, and health-consciousness that our customers associate with our products. Every day that Roxberry Naturals sells products under our name, that investment is being eroded.

33.     Roxberry Juice Co. is known for fresh, made-to-order smoothies and juices prepared from whole fruits and vegetables. Roxberry Naturals sells mass-produced, carbonated, canned beverages. Both companies are in the business of selling fruit-based drinks to health-conscious families. When a consumer purchases Roxberry Naturals' "Roxberry Fizz" expecting the quality associated with our brand and instead receives a carbonated canned drink, that consumer may conclude that Roxberry Juice Co. has lowered its quality standards. I have no ability whatsoever to control the quality, safety, ingredients, or consumer experience of Roxberry

Naturals' products, yet those products trade on my company's name and nearly two decades of goodwill.

34.     The ROXBERRY brand is the foundation of our franchise system. Existing and prospective franchisees invest significant capital in licensing the brand. If the ROXBERRY name is associated with a different company's products—particularly mass-produced canned soda—it undermines the exclusivity and value of their license. I have already heard concerns from franchise partners about the impact of Roxberry Naturals' use of our name.

35.     Prior to discovering Roxberry Naturals' infringement, Roxberry Juice Co. was actively exploring expansion into grocery store retail with packaged Roxberry-branded products. For approximately six to eight months before learning of Roxberry Naturals' nationwide expansion, I engaged Craig Romney to evaluate opportunities for placing Roxberry-branded products in grocery retail channels. We were developing prototype products, including a Roxberry-branded freezer pop referred to as the "Roxberry Roxypop," and exploring partnerships with retailers. Mr. Romney has advised me that retail buyers manage limited shelf space and typically will not stock products from two different companies using the same brand name. Roxberry Naturals' occupation of grocery shelf space under the ROXBERRY name effectively blocks Roxberry Juice Co. from launching its own retail products under that name. In Mr. Romney's professional experience, once a retailer allocates shelf space to a particular brand name, that brand identity can remain associated with that product in the retailer's assortment for extended periods of time, and reclaiming that shelf space is extremely difficult.

36.     The ROXBERRY mark is our single most valuable asset. If the mark becomes associated with another company's products, the value of our franchise system, our brand, and

our company as a whole is directly harmed. This loss in company value cannot be adequately measured by money damages.

**Expansion Plans**

37.     On September 15–16, 2025, I executed a Franchise Growth Solution Agreement with Excelsior Franchise Solutions ("**Excelsior**"), a professional franchise development company, to assist Roxberry Juice Co. with franchise marketing and expansion. (*See* **Exhibit H**.) Under this agreement, Excelsior is marketing Roxberry Juice Co. franchise opportunities in Arizona, Florida, Idaho, Nevada, and Utah. For these services, Roxberry Juice Co. is paying Excelsior a monthly recurring investment, plus an onboarding investment, plus a commission on closed franchise deals. This represents a serious, funded commitment to multi-state franchise expansion.

38.     As a direct result of the Excelsior engagement, Roxberry Juice Co. is currently listed on Franchise Direct, a nationally recognized franchise marketplace, with available franchise opportunities in Arizona, Florida, Idaho, Nevada, and Utah. The Franchise Direct listing explicitly states: "Single-Unit, Multi-Unit, Area Developer opportunities available in AZ, FL, ID, NV, UT."

39.     The Excelsior Agreement was executed approximately four months before Roxberry Naturals' January 13, 2026 Walmart expansion announcement and approximately five months before Roxberry Naturals filed its Answer asserting that Roxberry Juice Co. "has not demonstrated any concrete or imminent plans to expand beyond its current limited region." Roxberry Juice Co.'s expansion plans are concrete, documented, and actively funded.

11

**Timeliness**

40.     I did not know about Roxberry Naturals' products until January 2026. Roxberry Naturals is an Ohio company whose initial distribution in late 2024 appears to have been limited. Its products did not come to the attention of anyone in the Roxberry Juice Co. network until a franchise partner spotted them in a retail store and alerted me on or about January 13, 2026. Even then, the full scope of the problem was not immediately apparent—it was only through investigation that I came to understand the magnitude of the infringement.

41.     What's critical is that Roxberry Naturals' massive nationwide expansion happened in January 2026—right after the USPTO refused to register their word mark and they abandoned that application. This was the qualitative change that transformed Roxberry Naturals from a minor, unknown entrant into an existential threat to our brand.

42.     I acted as quickly as I could. Upon learning of the situation on or about January 13, 2026, I: (a) immediately contacted our counsel for initial guidance; (b) conducted my own research on Roxberry Naturals' principals, funding, and distribution; (c) authorized and sent a cease-and-desist letter to Roxberry Naturals; and (d) authorized the filing of this lawsuit and the present motion. All of this occurred within approximately four weeks of my initial discovery.

**Strength of Our Claim**

43.     I have invested nearly 18 years of my life building the ROXBERRY brand. Roxberry Naturals has been in the market for approximately 16 months. The disparity in our respective investments in the ROXBERRY name could not be starker.

44.     Roxberry Naturals had ample opportunity to avoid this situation. Before adopting the ROXBERRY name, Roxberry Naturals could have conducted a basic trademark search and

12

discovered our federal registration. When the USPTO refused registration of Roxberry Naturals' word mark in May 2025—providing explicit notice of confusion—Roxberry Naturals could have rebranded. When we sent our cease-and-desist letter in January 2026, Roxberry Naturals could have rebranded. Instead, Roxberry Naturals dramatically expanded its distribution after each warning sign. In my discussions with Craig Romney, he explained that retail shelf space is allocated on a first-come, first-served basis and is difficult to reclaim once lost. The fact that Roxberry Naturals aggressively expanded into more than 2,200 Walmart stores and thousands of other retail locations after receiving the USPTO Office Action and our cease-and-desist letter suggests a deliberate strategy to lock up retail shelf space under the ROXBERRY name before we could enter those channels. This escalation despite explicit notice is strong evidence of willful infringement.

45.     Any hardship Roxberry Naturals now faces from an injunction is entirely of its own making. Roxberry Naturals rolled the dice by expanding aggressively under a name that the United States government had already told it was confusingly similar to an existing registration. The consequence of losing that gamble should not be borne by the company that has used the mark for nearly two decades. The consuming public also has a strong interest in not being confused about the source of beverages they purchase—especially when those beverages are marketed to children. When a parent sees "Roxberry" on a can at Walmart and believes it is connected to the Roxberry Juice Co. brand they have patronized, that parent is deceived. Parents making purchasing decisions for their children rely on brand recognition and trust. Roxberry Naturals' "Fizz for Kids" products exploit this reliance by using our brand name, creating a serious risk of consumer deception.

**Verification**

46.     I have reviewed the Complaint filed in this action. The factual allegations contained in the Complaint are true and correct based on my personal knowledge. To the extent any allegations are based on information and belief, I believe them to be true based on the investigation and research I describe in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19 day of March, 2026.

_____
Brad Davis
Founder and President
Roxberry Licensing, LLC

14

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I caused to be filed a true and correct copy of the foregoing **DECLARATION OF BRAD DAVIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** via the Court's CM/ECF system, which also effectuated service on all counsel of record. The following have been served via electronic mail as follows:

Aaron T. Brogdon abrogdon@fbtgibbons.com

Samantha M. Quimby squimby@fbtgibbons.com

Vance V. VanDrake vvandrake@fbtgibbons.com

*/s/Chad Person*