# EXHIBIT D
# TO
# DECLARATION OF BRAD DAVIS
# IN SUPPORT OF MOTION FOR
# PRELIMINARY INJUNCTION

---

## Notice of Filing Excerpted Exhibits
## USPTO Office Action Excerpts

NOTICE OF FILING EXCERPTED EXHIBITS

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff, pursuant to DUCivR 7-1 and the Federal Rules of Evidence, herewith submits the following excerpted portions of Exhibit D in support of its Motion for Preliminary Injunction and this Declaration of Brad Davis.

Summary of Supporting Evidence in Excerpted Record

The following 13 pages of the USPTO Office Action have been specifically selected to support the testimony provided in the Declaration of Brad Davis while omitting voluminous third-party research and administrative attachments not central to the current Motion:

Page numbers have been added in brackets below for the convenience of the Court, parties, and counsel.

Page 3: Establishes the filing of Application Serial No. 98863067 by Roxberry Naturals Inc. for the word mark "ROXBERRY". It confirms the May 21, 2025 issue date.

Page 4: Documents the formal Section 2(d) Refusal by the USPTO, citing a Likelihood of Confusion with the Plaintiff's U.S. Registration No. 5495492. This page also details the six-month total deadline (initial 3 months plus 3-month extension) to respond to avoid abandonment.

Page 6: Contains the Examining Attorney's substantive finding that the Defendant's mark is "identical in sound, connotation, meaning and commercial impression to the dominant element" of the Plaintiff's mark.

Page 13: Provides the official USPTO status report for Registration No. 5495492, identifying the mark "ROXBERRY JUICE CO." and confirming ownership by Roxberry Licensing, LLC.

[IMPORTANT] Consistent with Rule 106 of the Federal Rules of Evidence, the full 73-page original document remains available should the Court or any party require additional context for these excerpts.

| | |
|---|---|
| **To:** | Samantha M. Quimby(trademarks@fbtlaw.com) |
| **Subject:** | U.S. Trademark Application Serial No. 98863067 - ROXBERRY - - 0773407 |
| **Sent:** | May 21, 2025 07:29:16 PM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

5495492
4105171
5386808
7560778
4735745
4367713
6037084
7626804
6616018
6654481
5615344
7122890
5980990
screencapture-www-merriam-webster-com-dictionary-roxberry-17478522881221
screencapture-www-whitepages-com-name-Roxbury-17478525976311
screencapture-www-whitepages-com-name-Roxbury-17478526555871
LEXIS Surname_ROXBERRY_98863067_Page_1.jpg
LEXIS Surname_ROXBERRY_98863067_Page_2.jpg
LEXIS Surname_ROXBERRY_98863067_Page_3.jpg
LEXIS Surname_ROXBERRY_98863067_Page_4.jpg
LEXIS Surname_ROXBERRY_98863067_Page_5.jpg
LEXIS Surname_ROXBERRY_98863067_Page_6.jpg

### United States Patent and Trademark Office (USPTO)
#### Office Action (Official Letter) About Applicant's Trademark Application

**U.S. Application Serial No.** 98863067

**Mark:** ROXBERRY

**Correspondence Address:**
Samantha M. Quimby
Frost Brown Todd LLP
10 West Broad Street
Suite 2300
Columbus OH 43215
United States

**Applicant:** Roxberry Naturals Inc.

**Reference/Docket No.** 0773407

**Correspondence Email Address:** trademarks@fbtlaw.com

[3]

# NONFINAL OFFICE ACTION

**Response deadline.** File a response to this nonfinal Office action within three months of the "Issue date" below to avoid abandonment of the application. Review the Office action and respond using one of the links to the appropriate electronic forms in the "How to respond" section below.

**Request an extension.** For a fee, applicant may request one three-month extension of the response deadline prior to filing a response. The request must be filed within three months of the "Issue date" below. If the extension request is granted, the USPTO must receive applicant's response to this letter within six months of the "Issue date" to avoid abandonment of the application.

**Issue date:**  May 21, 2025

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

## SUMMARY OF ISSUES:

- Section 2(d) refusal - Likelihood of confusion
- Section 2(e)(4) refusal - Primarily merely a surname

## SECTION 2(d) REFUSAL - LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 5495492. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the attached registration.

In this case, applicant seeks to register ROXBERRY for "Dietary supplemental drinks; Dietary and nutritional supplements" in International Class 5.  The registered mark is ROXBERRY JUICE CO. and design for "Fruit and vegetable juice drinks, namely, fruit, vegetable and grass drinks and smoothies; non-alcoholic beverages containing fruit juices; organic smoothies; smoothies containing grains and oats" in International Class 32.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

[4]

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

## *Comparison of the Marks*

In this case, applicant's mark is ROXBERRY (in standard characters). The registered mark is ROXBERRY JUICE CO. and design.

Applicant's mark creates a similar commercial impression to the registrant's mark because both marks include the term "ROXBERRY." Marks may be confusingly similar in appearance where similar terms or similar parts of terms appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Com.*, 228 USPQ 689, 690-91 (TTAB 1986) (holding COMMCASH and COMMUNICASH confusingly similar), *aff'd sub nom. Canadian Imperial Bank of Com. v. Wells Fargo Bank, N.A.*, 811 F.2d 1490, 1492, 1495, 1 USPQ2d 1813, 1814-15, 1817 (Fed. Cir. 1987); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (holding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (holding MILTRON and MILLTRONICS confusingly similar); *Sun Elec. Corp. v. Sun Oil Co.*, 196 USPQ 450, 452 (TTAB 1977) (holding SUNELECT and SUN ELECTRIC confusingly similar); *In re BASF Aktiengesellschaft*, 189 USPQ 424, 424 (TTAB 1976) (holding LUTEX and LUTEXAL confusingly similar); TMEP §1207.01(b)(ii)-(iii).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Greater weight is often given to this dominant feature when determining whether marks are confusingly similar. *See In re Detroit Athletic Co.*, 903 F.3d at 1305, 128 USPQ2d at 1050 (citing *In re Dixie Rests.*, 105 F.3d at 1407, 41 USPQ2d at 1533-34).

In this case, the term "ROXBERRY" is the dominant part of the registrant's mark for the following reasons.

First, the additional wording in the registrant's mark, "JUICE CO.," is highly descriptive (if not generic) as applied to the registrant's goods and has, therefore, been disclaimed. Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *41 (TTAB 2022); TMEP §1207.01(b)(viii), (c)(ii).

Second, "ROXBERRY" is the first wording in the registrant's mark. Consumers are generally more inclined to focus on and remember the first word, prefix, or syllable in a mark. *See Palm Bay Imps.,*

*Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word"); *Sage Therapeutics, Inc. v. SageForth Psych. Servs., LLC*, Opp. No. 91270181, 2024 TTAB LEXIS 139, at *14-15 (2024) (finding similarity between SAGEFORTH and SAGE CENTRAL, in part because the "common 'sage' element" was dominant in both marks" as "the first elements"); TMEP §1207.01(b)(viii).

Third, while the registrant's mark includes a design element, when evaluating a composite mark consisting of words and a design, the word portion is normally accorded greater weight because it is likely to make a greater impression upon purchasers, be remembered by them, and be used by them to refer to or request the goods and/or services. *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *CBS Inc. v. Morrow*, 708 F.2d 1579, 1581-82, 218 USPQ 198, 200 (Fed. Cir. 1983)); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *41 (TTAB 2022) (quoting *Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241, at *31 (TTAB 2021)); TMEP §1207.01(c)(ii). Thus, although marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar, even where the word portion has been disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366-67, 101 USPQ2d at 1911 (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983)).

Thus, applicant's mark ROXBERRY is identical in sound, connotation, meaning and commercial impression to the dominant element in the registrant's mark, "ROXBERRY." Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *In re Charger Ventures LLC*, 64 F.4th 1375, 1380, 2023 USPQ2d 451, at *3 (Fed. Cir. 2023) (citing *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1720 (Fed. Cir. 2012); *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371-72, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

That applicant's mark merely deletes or omits wording from the registrant's mark does not obviate the confusing similarity between the marks. Although applicant's mark does not contain the entirety of the registered mark, applicant's mark is likely to appear to prospective purchasers as a shortened form of registrant's mark. *See In re Mighty Leaf Tea*, 601 F.3d 1342, 1348, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010) (quoting *United States Shoe Corp.*, 229 USPQ 707, 709 (TTAB 1985)). Thus, merely omitting some of the wording from a registered mark may not overcome a likelihood of confusion. *See In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257; *In re Optica Int'l*, 196 USPQ 775, 778 (TTAB 1977); TMEP §1207.01(b)(ii)-(iii). In this case, applicant's mark does not create a distinct commercial impression from the registered mark because it contains some of the wording in the registered mark and does not add any wording that would distinguish it from that mark.

Finally, applicant should note that where the goods and/or services of an applicant and registrant are "similar in kind and/or closely related," as is the case here, the degree of similarity between the marks required to support a finding of likelihood of confusion is not as great as in the case of diverse goods

[6]

and/or services. *In re J.M. Originals Inc.*, 6 USPQ2d 1393, 1394 (TTAB 1987); *see Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 USPQ2d 1350, 1354 (Fed. Cir. 2004); TMEP §1207.01(b).

For all of the foregoing reasons, applicant's mark creates a similar overall commercial impression to the registrant's mark, and confusion is likely.

*Comparison of the Goods*

The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i); *see Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *44 (TTAB 2022) (quoting *In re Jump Designs LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006)).

Moreover, relatedness need not be established for each and every good or service listed in applicant's identification. It is sufficient for a finding of likelihood of confusion if relatedness is established for any item encompassed by the identification of goods or services in a particular class in the application. *See SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 938-39 (Fed. Cir. 1983) (holding that a single good from among several may sustain a finding of likelihood of confusion); *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981) (likelihood of confusion must be found if there is likely to be confusion with respect to any item that comes within the identification of goods in the application); *Double Coin Holdings Ltd. v. Tru Dev.*, 2019 USPQ2d 377409, *6 (TTAB 2019); *In re Aquamar, Inc.*, 115 USPQ2d 1122, 1126, n.5 (TTAB 2015).

In this case, applicant seeks to register its mark for "Dietary supplemental drinks; Dietary and nutritional supplements" in International Class 5. The registrant uses its mark for "Fruit and vegetable juice drinks, namely, fruit, vegetable and grass drinks and smoothies; non-alcoholic beverages containing fruit juices; organic smoothies; smoothies containing grains and oats" in International Class 32.

Applicant's and registrant's goods are substantially related in that they are the types of goods commonly produced and sold by a single entity under the same mark and would be found in the same channels of trade. As such, the goods would be sold to the same class of purchasers and encountered under circumstances leading one to mistakenly believe the goods originate from a common source.

The trademark examining attorney has attached evidence from the USPTO's XSearch database consisting of a number of third-party marks registered for use in connection with the same or similar goods as those of both applicant and registrant in this case. This evidence shows that the goods listed therein, namely dietary supplement drinks, dietary and nutritional supplements, fruit and vegetable drinks and smoothies and/or non-alcoholic beverages containing fruit juices, are of a kind that may emanate from a single source under a single mark. *See In re I-Coat Co.*, 126 USPQ2d 1730, 1737 (TTAB 2018) (citing *In re Infinity Broad. Corp.*, 60 USPQ2d 1214, 1217-18 (TTAB 2001); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988)); TMEP §1207.01(d)(iii).

*See* U.S. Registration Nos. 4105171, 4367713, 4735745, 5386808, 5615344, 5980990, 6037084, 6616018, 6654481, 7122890, 7560778, and 7626804.

Since the marks are similar and the goods are substantially related, there is a likelihood of confusion as to the source of applicant's goods. Accordingly, applicant's mark is refused registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d); TMEP §1207.01 *et seq*. because applicant's mark so resembles the mark in U.S. Registration No. 5495492 as to be likely to cause confusion when used on or in connection with the goods identified in the application.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

Applicant should note the following additional ground for refusal.

<u>**SECTION 2(e)(4) REFUSAL - PRIMARILY MERELY A SURNAME**</u>

Registration is refused because the applied-for mark is primarily merely a surname. Trademark Act Section 2(e)(4), 15 U.S.C. §1052(e)(4); *see* TMEP §1211.

An applicant's mark is primarily merely a surname if the surname, when viewed in connection with the applicant's recited goods and/or services, "'is the primary significance of the mark as a whole to the purchasing public.'" *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 1377, 123 USPQ2d 1411, 1413 (Fed. Cir. 2017) (quoting *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 554, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988)); TMEP §1211.01.

The following five inquiries are often used to determine the public's perception of a term's primary significance:

    (1)    Whether the surname is rare;

    (2)    Whether anyone connected with applicant uses the term as a surname;

    (3)    Whether the term has any recognized meaning other than as a surname;

    (4)    Whether the term has the structure and pronunciation of a surname; and

    (5)    Whether the term is sufficiently stylized to remove its primary significance from that of a surname.

*In re Colors in Optics, Ltd.*, 2020 USPQ2d 53784, at *1-2 (TTAB 2020) (citing *In re Benthin Mgmt. GmbH*, 37 USPQ2d 1332, 1333-34 (TTAB 1995) for the *Benthin* inquiries); TMEP §1211.01; *see also In re Etablissements Darty et Fils*, 759 F.2d 15, 16-18, 225 USPQ 652, 653 (Fed. Cir. 1985).

These inquiries are not exclusive, and any of these circumstances – singly or in combination – and any other relevant circumstances may be considered when making this determination. *In re Six Continents Ltd.*, 2022 USPQ2d 135, at *5 (TTAB 2022) (citing *In re tapio GmbH*, 2020 USPQ2d 11387, at *9 (TTAB 2020); *In re Olin Corp.*, 124 USPQ2d 1327, 1330 (TTAB 2017); *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1480 (TTAB 2017); *In re Integrated Embedded*, 120 USPQ2d 1504, 1506 n.4

(TTAB 2016)); TMEP §1211.01. For example, when the applied-for mark is not stylized, it is unnecessary to consider the fifth inquiry. *In re Yeley*, 85 USPQ2d 1150, 1151 (TTAB 2007); TMEP §1211.01.

Here, the following factors are most relevant and will be discussed in turn: whether the surname is rare, whether anyone connected with the applicant uses the term as a surname, whether the term has any recognized meaning other than as a surname, whether the term has the structure and pronunciation of a surname, and whether the term is sufficiently stylized.

Applicant has applied to register the mark ROXBERRY for use in connection with "Dietary supplemental drinks; Dietary and nutritional supplements" in Class 5.

### Surname Significance

The evidence attached from the *Lexis+®* surname database establishes that the term ROXBERRY is a surname. *See* attached evidence. In particular, this evidence shows the surname in the applied-for mark appearing over 300 times as a surname in the Lexis+® surname database, which is a weekly updated directory of cell phone and other phone numbers (such as voice over IP) from various data providers. Based on this evidence, the surname ROXBERRY appears to be rare. however, the statute makes no distinction between rare and commonplace surnames and even a rare surname may be unregistrable under Trademark Act Section 2(e)(4) if its primary significance to purchasers is that of a surname. *See In re Etablissements Darty et Fils*, 759 F.2d 15, 16-18, 225 USPQ 652, 653 (Fed. Cir. 1985); *In re Beds & Bars Ltd.*, 122 USPQ2d 1546, 1551 (TTAB 2017); *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1281 (TTAB 2016) (citing *In re E. Martinoni Co.*, 189 USPQ 589, 590-91 (TTAB 1975)); TMEP §1211.01(a)(v). There is no minimum amount of evidence needed to establish that a mark is primarily merely a surname. *See In re Etablissements Darty et Fils*, 759 F.2d at 17, 225 USPQ at 653; *In re Beds & Bars Ltd.*, 122 USPQ2d at 1548; TMEP §1211.02(b)(i).

**This factor weighs in favor of finding "ROXBERRY" to be primarily merely a surname.**

### Surname Association with Applicant

A term that is the surname of an individual applicant or that of an officer, founder, owner, or principal of applicant's business is probative evidence of the term's surname significance. TMEP §1211.02(b)(iv); *see, e.g.*, *In re Etablissements Darty et Fils*, 759 F.2d 15, 16, 225 USPQ 652, 653 (Fed. Cir. 1985) (holding DARTY primarily merely a surname where "Darty" was the surname of applicant's corporate president); *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1278-80 (TTAB 2016) (holding ALDECOA primarily merely a surname where ALDECOA was the surname of the founder and individuals continuously involved in the business); *In re Integrated Embedded*, 120 USPQ2d 1504, 1507 (TTAB 2016) (holding BARR GROUP primarily merely a surname where BARR was the surname of the co-founder and applicant's corporate officer and GROUP was found "incapable of lending source-identifying significance to the mark"); *Miller v. Miller*, 105 USPQ2d 1615, 1620, 1622-23 (TTAB 2013) (holding MILLER LAW GROUP primarily merely a surname where "Miller" was the surname of the applicant and the term "law group" was found generic).

Here, there is no evidence of record that anyone connected with the Applicant has the ROXBERRY surname. However, the absence of a person connected with the applicant that has this surname is a neutral factor. *See In re Thermo LabSystems Inc.,* 85 USPQ2d 1285, 1287 (TTAB 2007).

**This factor is neutral.**

### Non-Surname Significance

Evidence that a term has no recognized meaning or significance other than as a surname is relevant to determining whether the term would be perceived as primarily merely a surname. *See In re Six Continents Ltd.*, 2022 USPQ2d 135, at \*10-11 (TTAB 2022); *In re tapio GmbH*, 2020 USPQ2d 11387, at \*11 (TTAB 2020); *In re Weiss Watch Co.*, 123 USPQ2d 1200, 1203 (TTAB 2017); TMEP §1211.02(b)(vi). The attached evidence from *Merriam-Webster* online dictionary shows that "ROXBERRY" does not appear in the dictionary. Thus, this term appears to have no recognized meaning or significance other than as a surname.

**This factor weighs in favor of finding "ROXBERRY" to be primarily merely a surname.**

### Structure and Pronunciation

The structure and pronunciation factor "is decidedly subjective in nature." *In re Benthin Mgmt. GmbH*, 37 USPQ2d 1332, 1333 (TTAB 1995); *see also In re Eximius Coffee*, 120 USPQ2d at 1280 (whether a term has the structure and pronunciation of a surname is a "decidedly subjective" inquiry). In this case, the term ROXBERRY has the structure and pronunciation of a surname. Indeed, it is highly similar to the surname Roxbury, which is not an uncommon surname. *See* attached evidence from WhitePages.com. Evidence that a term has the structure and pronunciation of a surname may contribute to a finding that the primary significance of the term is that of a surname. *In re tapio GmbH*, 2020 USPQ2d 11387, at \*12 (TTAB 2020) (citing *In re Giger*, 78 USPQ2d 1405, 1409 (TTAB 2006)); *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1280 (TTAB 2016); *see*; TMEP §1211.01(a)(vi).

**This factor weighs in favor of finding "ROXBERRY" to be primarily merely a surname.**

### Stylization of the Mark

Here, the mark is in standard character form, lacking any stylization which would remove its primary significance from that of a surname. Thus, the absence of stylization is a neutral factor in this analysis.

**This factor is neutral.**

Ultimately, based on the inquiries relevant herein, when purchasers encounter applicant's goods using the mark "ROXBERRY," they will immediately understand the primary significance of the mark as that of a surname. Therefore, registration is refused pursuant to Section 2(e)(4) of the Trademark Act.

AMENDMENT TO SUPPLEMENTAL REGISTER SUGGESTED

Although he applied-for mark has been refused registration on the Principal Register, applicant may respond to the refusal by submitting evidence and arguments in support of registration and/or by amending the application to seek registration on the Supplemental Register. *See* 15 U.S.C. §1091(c); 37 C.F.R. §§2.47, 2.75(a); TMEP §§801.02(b), 816. Amending to the Supplemental Register does not preclude applicant from submitting evidence and arguments against the refusal(s). TMEP §816.04.

*Benefits of Supplemental Registration*
Although registration on the Supplemental Register does not afford all the benefits of registration on

the Principal Register, it does provide the following advantages to the registrant:

(1)    Use of the registration symbol ® with the registered mark in connection with the designated goods and/or services, which provides public notice of the registration and potentially deters third parties from using confusingly similar marks.

(2)    Inclusion of the registered mark in the USPTO's database of registered and pending marks, which will (a) make it easier for third parties to find it in trademark search reports, (b) provide public notice of the registration, and thus (c) potentially deter third parties from using confusingly similar marks.

(3)    Use of the registration by a USPTO trademark examining attorney as a bar to registering confusingly similar marks in applications filed by third parties.

(4)    Use of the registration as a basis to bring suit for trademark infringement in federal court, which, although more costly than state court, means judges with more trademark experience, often faster adjudications, and the opportunity to seek an injunction, actual damages, and attorneys' fees and costs.

(5)    Use of the registration as a filing basis for a trademark application for registration in certain foreign countries, in accordance with international treaties.

*See* 15 U.S.C. §§1052(d), 1091(c), 1094; J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* §§19:33, 19:37 (rev. 4th ed. Supp. 2017).

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

If applicant responds to the above refusal(s), applicant must also respond to the requirement(s) set forth below.

## RESPONSE GUIDELINES

Please call or email the assigned trademark examining attorney with questions about this Office action. Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action. *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**How to respond.** File a **response form to this nonfinal Office action** or file a **request form for an extension of time to file a response**.

/Amy Kertgate/
Amy Kertgate
Examining Attorney
LO113--LAW OFFICE 113
(571) 272-1943
amy.kertgate@USPTO.GOV


## RESPONSE GUIDANCE

- **Missing the deadline for responding to this letter will cause the application to abandon.** A response or extension request must be received by the USPTO before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Trademark Electronic Application System (TEAS) system availability could affect an applicant's ability to timely respond. For help resolving technical issues with TEAS, email TEAS@uspto.gov.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**5495492**



| | |
|---|---|
| **Word Mark** | ROXBERRY JUICE CO. |
| **Goods/Services** | IC 032 US 045 048 046<br>Fruit and vegetable juice drinks, namely, fruit, vegetable and grass drinks and smoothies; non-alcoholic beverages containing fruit juices; organic smoothies; smoothies containing grains and oats<br>FIRST USE: 2006-01-01. FIRST USE IN COMMERCE: 2006-07-01. |
| **Register** | PRINCIPAL |
| **Serial Number** | 87470335 |
| **Filing Date** | 2017-05-31T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2018-04-03 |
| **Registration Number** | 5495492 |
| **Date Registered** | 2018-06-19 |
| **Owner** | (REGISTRANT) Roxberry Licensing, LLC (LIMITED LIABILITY COMPANY; UTAH, USA); 10975 South State Street, Sandy, Utah 84070, UNITED STATES |
| **Type of Mark** | TRADEMARK |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Code** | 050503 |
| **Description of Mark** | • Color is not claimed as a feature of the mark.<br>• The mark consists of The stylized word "Roxberry" with a partial fleur de lis |

[13]

next to the "y" and the words "Juice Co." under "Roxberry".

**Disclaimer**          "JUICE CO."

**Live Dead Indicator**          LIVE

**Status**          SECTION 8 & 15-ACCEPTED AND ACKNOWLEDGED

**Attorney of Record**          Kara K Martin

**Print:** May 21, 2025 1:55 PM