# EXHIBIT H
# TO
# DECLARATION OF BRAD DAVIS
# IN SUPPORT OF MOTION FOR
# PRELIMINARY INJUNCTION

_____

## Excelsior Agreement
## (Redacted)

AGREEMENT

This Agreement is dated as of the last date set forth below on the signature page between Excelsior Franchise Solutions, a d/b/a of Excelsior Solutions USA, LLC, a New York limited liability company ("Excelsior") and Roxberry Licensing, LLC d/b/a Roxberry Juice Co., a limited liability company formed under the laws of Utah ("Franchisor").

WHEREAS, Franchisor enters into franchise agreements with its franchisees (the "Franchisees") for the business identified on Attachment A attached hereto; and

WHEREAS, Excelsior is in the business of assisting franchisors in growth solutions by locating, attracting and engaging individuals and entities who may be interested in potentially entering into a franchise agreement with a franchisor, using advanced automation and optimization designed to achieve rapid and sustainable growth by streamlining lead generation, qualification, prospect follow-up and conversion; and

WHEREAS, Franchisor wishes to increase efficiency, to improve operational consistency and to drive franchise expansion with high-quality prospects; and

WHEREAS, Franchisor engages Excelsior to perform the Services (defined herein) on the terms and conditions herein, and Excelsior agrees to be engaged by Franchisor to perform the Services on the terms and conditions herein.

NOW THEREFORE, the parties agree as follows:

1.Services. During the Term of this Agreement (as defined in Attachment A), Excelsior shall provide the following services to Franchisor in a system ("System") which is custom-built and refined in collaboration with Franchisor's team; certain components can be emphasized or adjusted from time to time during the Term by Excelsior in an effort to align with Franchisor's priorities and resources (the "Services"):

(a) Growth Engine: Franchise Marketing Ecosystem: Develop a strategic lead generation System for use for Franchisor's objectives during the Term, designed to position Franchisor's brand effectively and to attract aligned franchise candidates across multiple digital channels and platforms; this will involve and require collaboration around Franchisor's current media assets and may involve creation of new brand aligned materials such as landing pages, funnel flows and educational content. Excelsior will strive to focus messaging and positioning by highlighting Franchisor's brand key differentiators in an effort to engage the proper audiences.

(b) Lead Engagement System: Qualification and Automation: Implement a custom branded AI-driven assistant to engage, to qualify and to nurture inbound prospects during the Term, in real time. Excelsior will develop workflows to guide leads through the discovery process, with the goal of scheduling qualified candidates onto Franchisor's team's calendar. Such System will include long-term email and SMS nurture sequences to engage with leads, during the Term, and to support conversion.

1

(c) Infrastructure and Optimization: A central dashboard will integrate the System where Franchisor's team can view during the Term, lead activity, campaign performance and CRM workflows. During the Term, Excelsior shall monitor performance across key KPIs and provide, during the Term, strategic recommendations on System improvements, messaging refinements and focus areas as priorities evolve.

(d) Perform the additional services and services related to the above-described services, as set forth on Schedule A attached hereto ("Attachment A"); and

2. Engagement. Franchisor engages Excelsior to perform the Services for Franchisor for the Term as set forth above and as set forth or as refined on Attachment A.

3. Compensation. For the Services, Franchisor shall compensate Excelsior as set forth in Attachment A according to the payment schedule and method as set forth in Attachment A. Franchisor is responsible for reimbursements, if any, as set forth in Attachment A.

4. Franchisor. In order for Excelsior to perform the Services in accordance herewith, Franchisor shall perform those obligations of support as set forth in Attachment A.

5. Standard Service and Conditions. This Agreement and the provision of the Services shall be subject to Excelsior's Standard Service Terms and Conditions (as set forth in Attachment B attached hereto), which are incorporated herein as if fully set forth herein.

6. Attachments, etc. Attachment A, Attachment B and any other exhibits, schedules or other attachments to this Agreement as may be designated herein and annexed hereto shall each be deemed to form an integral part of this Agreement and are incorporated herein by this reference as if set forth in full.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date below.

EXCELSIOR FRANCHISE SOLUTIONS

By:_____

Name: Nicholas Ingles
_____

Title: Member
_____

Date: 2025 09 15
_____

Roxberry Licensing, LLC  (Franchisor)

By: *Brad Davis*
_____

Name: Brad Davis
_____

Title: Brad Davis
_____

Date: 2025-09-16
_____

2

ATTACHMENT A

to Agreement between Excelsior Franchise Solutions, a d/b/a of Excelsior Solutions USA, LLC, a New York limited liability company ("Excelsior") and Roxberry Licensing, LLC, a limited liability company formed under the laws of Utah ("Franchisor")

A. Business: Retail stores which offer a wide variety of made-to-order juices, fruit and veggie smoothies, healthy bowls, juice cleanses and bites, with a mission to provide its customers with the best quality smoothies and fresh-pressed juices available, making "nutritious delicious."

B. Services of Excelsior to include:

CRM System Implementation: Build and deploy AI-driven lead generation and sales system; Email and SMS campaigns aimed to educate, to build trust and to drive conversations

Advertising Campaign Management: Design and execute advertising campaigns on Meta platforms (Facebook and Instagram), Google Ads and BizBuySell, with other portals added upon mutual agreement.

Pipeline and Sales Optimization: Automate lead qualification, nurturing workflows, and calendar bookings aimed to improve conversion rates for franchise recruitment

Content and Profile Development: Develop customized landing pages and profiles on BizBuySell and other relevant franchise platforms aimed to capture entrepreneurial leads, targeting improvement in lead conversion through strategic messaging and trust-building elements

Reporting and Analytics: Provide monthly reports detailing insights from advertising campaigns, lead generation, lead nurturing processes, and applicable KPIs, tracking key metrics such as total leads, response rates, cost per lead, conversion rates and

demographic insights.

Ongoing Support: Provide ongoing support during the Term, CRM maintenance and campaign adjustments striving to optimize performance

C. In order for Excelsior to be able to provide its Services to Franchisor, the Franchisor shall provide the following support to Excelsior:
-Participation in a series of onboarding sessions typically spanning ███████ depending on team availability and internal bandwidth
- Timely access to relevant brand materials, brand assets and marketing collateral: high quality images, videos and brand messaging for ad campaigns and landing pages and any previously developed marketing and sales collateral
- Access to Franchisor's website(s) backend and calendars (if applicable) for integration and routing

3

-Support in providing information needed for ad campaigns, lead capture, or content workflows
- Prompt ongoing feedback and approvals by Franchisor on key content, automations and regular insights into System buildout
-Sales Team Coordination: availability of sales representatives to take qualified calls with potential franchisees and guide them through the process of becoming a franchisee
-Collaboration on refining qualification criteria and brand messaging as needed
-Communication throughout the engagement will take place via ████████████ ███████ All relevant members of Franchisor's team who need to be involved in the implementation should be added to that channel to maximize efficient coordination -Clear Franchise Criteria: defining the ideal franchisee profile and key qualification standards
-Ongoing Feedback: Regular insights into system performance and areas for refinement -Ad Budget Allocation: commitment to ██████████████████ for optimal results.
-Notify Excelsior if Franchisor is not registered as a franchisor eligible to sell franchises in any state in the United States, or is not compliant with rules, regulations, orders, filings include FDD filings in any such state; Excelsior does not independently verify the current status of filings or registrations of franchisors prior to conducting Services, which responsibility lies exclusively with Franchisor.

D. Term of Agreement.

The initial term of the Agreement shall be for six months from System launch, which initial term may be renewed, extended or amended upon mutual agreement of the parties at the expiration of the initial term (collectively, the "Term"). Upon expiration or termination of the Term (whether by expiration of the initial term or any renewal or extended term), Franchisor shall no longer have access to the lead data and the System used to provide Services, but upon expiration of this Agreement, Excelsior shall provide to Franchisor a list of the leads developed during the Term provided that Franchisor is current with payments to Excelsior and not in default of this Agreement.

E. Compensation and Payment Schedule and Method of Payment

Pricing and Investment:
Onboarding Investment: $███████████ which was due prior to the first onboarding call with Excelsior

Monthly Recurring Investment: $███████████

Franchisor shall pay and be responsible for cost of marketing ad spend, ████████████ ████████████████████████████████████████████████████████ █████

Invoices of Excelsior shall be generated through QuickBooks. Franchisor shall be set up with an invoice in QuickBooks, where Franchisor is responsible for keeping current

4

payment information for automatic charges by Excelsior at the start of each billing cycle of Franchisor (every 30 days). Franchisor shall maintain a valid ACH authorization or credit card in QuickBooks for payment to Excelsior for Services during the Term.

Commissions: In addition to the onboarding investment fee and monthly recurring cost set forth above, the following commission shall be due:
██████████████ due on all deals closed from leads that are contacted and booked through the Excelsior System or through Excelsior Services from any source signed during the Term or within 120 days after expiration or termination of the Term of this Agreement.

Franchisor is required to promptly and accurately report all signed franchise agreements that originate from Excelsior's Services.

Prices extended to Franchisor by Excelsior shall remain confidential and shall not be disclosed to third parties.

Such commissions shall be calculated on the franchise fee to be paid by the franchisee, shall be due within five (5) days of franchisee acceptance.

F. Notice: Notice shall be given at the following addresses and directed to the following individuals until notice is given by a party to change such notice:

Excelsior:
Name of individual to receive notice: Nicholas Ingles

Address: 455 sodeman road middle grove NY 12850

Email address: n.ingles@excelsiorsolutions.net

Franchisor: Roxberry Licensing, LLC

Name of individual to receive notice: Bradley Davis

Address: 10975 S. State Street, Sandy, Utah 84070

Email address: brad@roxberryjuice.com

ATTACHMENT B
## STANDARD SERVICE TERMS & CONDITIONS

1. CONFIDENTIALITY. During the Term, either party herein may be given access to sensitive and/or confidential proprietary information relating to the operation of the other party's business and its systems or the business or systems of its affiliated companies, or relating to proposed branding, promotional or marketing plans, concepts or ideas relating to this Agreement, or a party's proprietary formulations, techniques, systems, developments, methodology, procedures, computer software (including without limitation object code and source code), including disclosures made by prior to the date hereof (collectively, "Confidential Information"). Each party hereto agrees not to use or disseminate any such Confidential Information obtained from the other party except during the Term as provided in and for the purposes set forth in the Agreement. These restrictions shall not apply to information approved by a party for public dissemination, information which is already in the public domain, information made available to the public by the other party, or information known to a party prior to disclosure by the other party. Franchisor shall not reverse engineer, disassemble or decompile or



These obligations shall extend beyond the termination of this Agreement.

2. DATA ABOUT PROSPECTS AND FRANCHISEES Franchisor may provide to Excelsior certain data about its prospects, its franchise and franchisees such as email addresses, phone numbers, growth targets, which data may include non-public data provided by Franchisor to Excelsior to enable Excelsior to provide the Services herein. Franchisor represents that Franchisor has the legal right to share such data with Excelsior, directly or indirectly, and to permit Excelsior to use such data for the purposes herein. Franchisor also represents that Franchisor has the legal right (i) to use such data for the purposes specified herein, and (ii) to permit Excelsior to use such data for the purposes specified herein, including without limitation, sending emails and text messages. Excelsior also takes no responsibility if Franchisor does not have the right to permit Excelsior to use such data for the purposes specified herein, which responsibility rests solely with Franchisor. Franchisor agrees to indemnify, defend and hold harmless Excelsior and its owners, managers,

members, officers, directors, employees, attorneys and agents and their respective successors and assigns, against, and reimburse for, any claim, liability, damage, loss, obligation, demand, judgment, fine, penalty, cost or expense (including reasonable attorneys' fees) (each a "Claim") imposed on or reasonably incurred as a result of the inaccuracy of such data (or misuse of such data by Franchisor), failure of Franchisor to get permission to use such data (for the purposes specified herein) in violation of this Agreement or breach of any representation, warranty or covenant of Franchisor contained in this Agreement or terms hereof. 3. TERM & TERMINATION.

3.1. Unless stated otherwise in this Agreement, or otherwise terminated in accordance with this Section, the term ("Term") of this Agreement will begin on the date set forth on the first page of this Agreement and expire per Attachment A of this Agreement. 3.2. Without prejudice to any other rights or remedies available to either party, Excelsior may terminate this Agreement if Franchisor fails to pay invoices when due under this Agreement or by a party if the other party shall make any assignment for the benefit of creditors, or file a petition in bankruptcy, or be adjudged bankrupt or become insolvent, or be placed in the hands of a receiver, or otherwise be involuntarily placed into bankruptcy, or otherwise have its charter of incorporation relinquished or canceled.

3.3. Neither the obligations imposed in Section 1, nor the warranties and indemnities granted in Section 4, nor the rights referenced in Section 6 shall be extinguished by the expiration or earlier termination of this Agreement.

4 WARRANTIES & INDEMNITIES.

4.1. Notwithstanding anything herein to the contrary, in no instance shall Excelsior be liable for, or have any obligation of indemnification with respect to, any Claims based on or arising out of (a) the authorized use of the Franchisor Materials (as defined in Section 6.2 herein); (b) the authorized use of other materials or information which Franchisor provides to Excelsior; (iii) any noncompliance by Franchisor with respect to laws, rules, regulations, registrations, filings, notifications and the like applicable to Franchisor's franchising in any jurisdiction; (iv) securing of data; or (v) Franchisor's refusal to follow Excelsior's recommendations. 4.2. Franchisor represents that it is compliant with all registrations, rules, regulations, filings including FDD filings, notifications and the like in each state in the United States or jurisdiction in which Excelsior shall provide Services hereunder; Franchisor shall indemnify and hold Excelsior, together with its owners, managers, members, officers, directors, employees, attorneys and agents and their respective successors and assigns, harmless from and against any and all Claims that such entities may incur arising out of any negligent act, omission or intentional misconduct on the part of Franchisor, or its owners, managers, members, officers, directors, employees, attorneys and agents and their respective successors and assigns, or a breach of a covenant or representation of Franchisor. 4.3. Upon the commencement of any Claim to which an indemnification provision applies, the party to be indemnified shall promptly notify the other party, and such other party shall assume and diligently conduct

i

the entire defense thereof, including any appeals, at its own sole cost and expense, and shall pay and discharge any and all settlement amounts, judgments or decrees which may be rendered; provided, however, that neither party shall enter into any settlement or compromise of a Claim without the other party's prior written consent, which consent shall not be unreasonably withheld and if a indemnifying party does not timely defend a Claim, the indemnified party may assume such defense as the cost of the indemnifying party.

5. Notwithstanding anything herein to the contrary, Franchisor acknowledges that the System is without warranty of any kind, express or implied, and Excelsior specifically disclaims any warranty of merchantability, fitness for a particular purpose even if that purpose is known or should have been known as to any matter including but not limited to the software used but not provided by Excelsior, data, services or other matters produced or provided hereunder; any application is gratuitous and shall in no way be deemed a warranty of the intended results; there is no warranty that the functions of the System will meet the objectives of the Franchisor; Franchisor assumes the risk of the selection of the System and Services to achieve the results intended by it; under no instance shall Excelsior be responsible for any special, indirect,

consequential or punitive damages including loss of goodwill, damages or loss of profits.

6. INTELLECTUAL PROPERTY RIGHTS. 6.1. Title, ownership, rights, and intellectual property rights in and to the System, its architecture, all improvements, enhancements, derivatives, applications or modifications thereto, Excelsior's materials, reports, analyses, processes, works of authorship, ideas, inventions, discoveries, database rights, design rights (both registered and unregistered), concepts, any software, inventions or technology developed in connection with Services or support of the System, lead data and all intellectual property rights related to any of the foregoing, shall remain in Excelsior's ownership and title, including without limitation all patent, copyright, trade secret, trademark and other intellectual property rights therein ("Excelsior's IP"). Excelsior agrees that lead data developed in connection with its Services provided hereunder to Franchisor shall be used exclusively for Franchisor during the Term. To the extent that Franchisor uses the System or Excelsior's IP in connection with this Agreement during the Term, such use shall be no more than a limited, non exclusive, non-transferrable, non-sublicensable license in the territory of the United States exclusively to enable Excelsior to provide the Services hereunder and not an assignment to Franchisor or any party of any

Document Ref: D4E607EF-C37B-4B17-B822-D090C5C82BAC

rights of Excelsior to the Excelsior's IP, all of which rights remain with Excelsior. Franchisor acknowledges and agrees that rights, if any, granted to Franchisor as a result of or in connection with this Agreement are license rights only, and nothing contained in this Agreement constitutes or shall be construed to be an assignment of any or all of Excelsior's rights in the System or Excelsior's IP. Franchisor shall not, at any time,

whether during or after the Term of this Agreement, do or cause to be done, any act or thing challenging, contesting, impairing, invalidating or tending to impair or invalidate any of Excelsior's rights in and to the System or Excelsior's IP. Franchisor shall not: (i) permit other individuals or third parties to use the System or Excelsior's IP except under the terms listed above; (ii) modify, translate, reverse engineer, decompile, disassemble (except to the extent that this restriction is expressly prohibited by law) or otherwise attempt to discover the source code, object code or underlying structure, ideas, know how or algorithms relevant to the Services or the System or Excelsior's IP, or modify, translate, or create derivative works based upon the System or Excelsior's IP; (iii) copy the System or Excelsior's IP; (iv) rent, lease, transfer, or otherwise transfer rights to the System or Excelsior's IP; or (v) export or re-export, or allow the export or re-export of the System, or Excelsior's IP, or any copy, portion or direct product of the foregoing, in violation of any export laws, restrictions, national security controls or regulations of the United States or any other applicable foreign agency or authority. During the Term, Excelsior may utilize Franchisor's logo and name to provide the Services hereunder. In Excelsior's marketing materials, Excelsior may reference Franchisor as a client with its brand/logo, unless Franchisor specifically requests otherwise in writing and notice to Excelsior. 6.2. All

materials provided by Franchisor hereunder, including, without limitation, their logos, trademarks, service marks, trade names, corporate names and other marks, names, titles and terms, and their copyrights, patents, merchandise, product and symbols, shall hereinafter be referred to as the "Franchisor Materials". Franchisor represents and warrants that such Franchisor Materials, and their use in the manner detailed in this Agreement, do not and will not violate the rights of any third party. 6.3. Notwithstanding anything herein to the contrary, Excelsior makes no warranties or representations as to legality of Franchisor's logos,trademarks, service marks, trade names, corporate names or other marks, names, titles or symbols.

7. FORCE MAJEURE. If due to any act of God, including without limitation, fire, flood,climatic conditions (including severe weather), accident, civil disorder, acts of war or terrorism, mechanical malfunction, construction, disease, strikes or other labor difficulties, embargoes, or any law, regulation or other action adopted or taken by any governmental authority, or any other cause not reasonably within Excelsior's control, whether or not specifically mentioned herein (an act of 'Force Majeure'), Excelsior fails to perform any of its obligations under this Agreement, Excelsior shall not be held responsible for any loss or damage which may be incurred as a result of such failure.

8. OTHER PROVISIONS.

8 . 1. Assignment. Franchisor shall not, either by operation of law or otherwise, assign, sublicense, transfer, encumber or otherwise dispose of all or any part of its interest in this Agreement without the prior written consent of Excelsior. This Agreement is not for

ii

the benefit of any third party and shall not be deemed to give any right or remedy to any such third party. 8.2 . Independent Contractor . Nothing contained in this Agreement shall be construed so as to constitute Excelsior and Franchisor as partners, joint venturers, agent and principal, or employee and employer. 8 .3. Severability. If any of the provisions of this Agreement contravene or are invalid under the law, then it is agreed that such contravention or invalidity will not invalidate the whole Agreement , but the Agreement will be construed as if not containing the particular provisions or provisions held to be invalid.

8.4. Attachments. Any exhibits, schedules or other attachments to this Agreement as may be designated herein and annexed hereto shall each be deemed to form an integral part of this Agreement and are incorporated herein by this reference as if set forth in full.

8.5 . Governing Law. It is agreed that the substantive and procedural laws of the State of New York shall apply in all respects to the interpretation and enforcement of this Agreement.

8.6. Forum and Venue. Any litigation which ultimately arises out of or relates to this Agreement shall be

brought in the courts of the State of New York, with venue in Saratoga County or, in the alternative and to the extent that a basis for federal jurisdiction exists, in the United States District Court for the Northern District of New York. The parties hereby waive their objection to such forums, whether on the basis of inconvenience, lack of personal jurisdiction or otherwise and hereby irrevocably consent to personal jurisdiction in each such forum and venue.

8.7. Entire Agreement. This Agreement represents the entire understanding of the Parties with respect to the subject matter hereof, supersedes and cancels all prior agreements, understandings, arrangements or representations between the Parties with respect to such subject matter, and may only be amended by written agreement of the Parties. The parties recognize that, for administrative purposes, documents such as invoices and similar documents may be used during the time this Agreement is in force. In no event shall any term or condition contained in any such administrative documents be interpreted as amending or modifying the terms of this Agreement, whether such administrative documents are signed or not.

8.8 No failure or delay by a Party in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise of any right, power or privilege. No action taken pursuant to this Agreement, including any investigation by or on behalf of any Party, will be deemed to constitute a waiver by the Party taking any action of compliance with any representation, warranty or agreement contained herein. The waiver by any Party of any condition or of a breach of any other provision of this Agreement will not operate or be construed as a waiver of any other condition or subsequent breach.

8.9 ████████████████████████████████
████████████████████████ Franchisor shall pay all costs and expenses of collection including reasonable attorneys' fees incurred or paid by Excelsior in collecting unpaid billings. This Agreement may be executed in counterparts, each of which shall for all purposes be deemed to be an original and all of which shall constitute the same instrument. A facsimile or electronic copy of this Agreement showing signatures of all parties or when taken together, multiple facsimile or electronic copies of this Agreement showing signatures of the parties, where such signatures do not appear on the same copy, shall constitute an original copy of this Agreement requiring no further execution.

8.10 Franchisor will exercise all reasonable efforts to assist Excelsior in in performing on a timely basis by making available to it required information pertaining to the Services and cooperating with Excelsior in expediting its review of material submitted by Excelsior to it for approval.

8.11 All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by personal service, by Federal Express courier or by registered or certified mail, return receipt requested with postage prepaid, or emailed with delivery receipt to the parties at their respective addresses first above written, or at such other addresses as they may designate by notice given hereunder. Notice shall be deemed to have been given upon personal service, if delivered personally, ten days after deposited with the United States postal service, if delivered by mail, or upon delivery of read receipt if delivered electronically.

8.12 Successors and Assigns. The terms and conditions of this Agreement shall be binding on the parties and their respective successors and assigns.

8.13 Headings. The headings of the sections and paragraphs of this Attachment B or the Agreement and Attachment A are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction hereof.

iii

# Signature Certificate

Reference number: D4E607EF-C37B-4B17-B822-D090C5C82BAC

Sent on September 15, 2025 1:42 PM UTC

| Signed By | Signature |
|---|---|
| **Nicholas Ingles**<br>n.ingles@excelsiorsolutions.net<br><br>Viewed: September 15, 2025 1:43 PM UTC<br>Signed: September 15, 2025 1:43 PM UTC | *Nicholas Ingles*<br><br>IP address: 24.194.225.148<br>Location: Saratoga Springs, US |
| **Brad Davis**<br>brad@roxberryjuice.com<br><br>Viewed: September 16, 2025 8:18 PM UTC<br>Signed: September 16, 2025 8:18 PM UTC | *Brad Davis*<br><br>IP address: 2603:3026:568:e300:a820:d9b0:d571:18c<br>Location: Salt Lake City, US |

Document completed by all parties on
September 16, 2025 8:18 PM UTC