Chad Pehrson (12622)
Thomas D. Briscoe (16788)
Stephen Mouritsen (16523)
**KNH LLP**
50 W. Broadway 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
cpehrson@knh.law
tbriscoe@knh.law
smouritsen@knh.law

*Attorneys for Plaintiff and
Counter-Defendant*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC, a Utah limited liability company, <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> ROXBERRY NATURALS, INC., a Delaware corporation, <br><br> Defendant and Counter-Claimant. | **DECLARATION OF CRAIG ROMNEY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Case No.  2:26-cv-00126-JNP-JCB <br><br> Judge Jill N. Parrish <br><br> Magistrate Judge Jared C. Bennett |

I, Craig Romney, declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

**Background and Experience**

1.     My name is James Craig Romney, though I am commonly known as Craig Romney. I am over the age of eighteen and reside in South Jordan, Utah.

1

2.      I have spent more than forty years working in the foodservice distribution industry, primarily in corporate sales roles serving restaurants, hospitality businesses, and other foodservice operators.

3.      From approximately 2001 through 2019, I served as a Corporate Sales Executive at Nicholas & Company, a foodservice distributor headquartered in Salt Lake City, Utah. In that role, I worked closely with restaurant brands, distributors, and hospitality businesses on product sourcing, brand development, and distribution relationships. Through this work, I became familiar with how food and beverage brands are built, marketed, and expanded across both restaurant settings and retail channels.

**Relationship with Roxberry**

4.      Approximately two and a half years ago, Brad Davis, the Founder and President of Roxberry Juice Co. (which operates under the ROXBERRY brand owned by Plaintiff Roxberry Licensing, LLC and is hereinafter referred to as "**Roxberry**"), asked me to assist as a consultant.

5.      In that role, I have provided advice on supply chain strategy, product sourcing, and distribution opportunities. As part of that work, I have also been involved in discussions about how Roxberry might expand its brand beyond its stores into retail products.

6.      Based on my familiarity with the company, before the events described below, I understood the name "Roxberry" to refer to Roxberry Juice Co.

7.      In my experience, when the same brand name appears on similar beverage products in retail stores, people generally assume those products come from the same company or from companies that are connected.

2

**Confusion Based on Walmart Advertisement**

8.      On or about February 25, 2026, I came across a Walmart advertisement for a beverage called "Roxberry Fruit & Veggie Fizz for Kids." (*See* **Exhibit A**.) I saw the advertisement while browsing an MSN news feed on my phone. The ad appeared alongside regular news content and showed the product being offered through Walmart, including local store pickup.

9.      When I saw the ROXBERRY name used in that advertisement, my immediate reaction was that Roxberry had introduced a product in Walmart. That reaction was based on the name, the type of beverage, and the fact that it was being offered in a retail setting like Walmart, which is where I would expect to see a brand like Roxberry expand.

10.      Because I had been working with Roxberry on possible retail expansion, seeing a Roxberry-branded beverage in Walmart seemed like a natural extension of the plans we had been discussing.

11.      At that time, I was not aware of any dispute involving the ROXBERRY name, and my reaction reflected what I honestly believed based on what I saw.

12.      I reached out to Brad Davis to ask whether Roxberry had launched a product in Walmart. I was surprised when he indicated that the ad was not from his company. In a contemporaneous email, I wrote: "I saw the ad on MSN.com and yes, I thought it was a Roxberry Juice ad." I followed up with another email to explain the concerns the Walmart retail ad raised in view of the brand expansion projects that we had been working on for many months. (*See* **Exhibit B**.)

3

**Similarity of Marketing and Product Positioning**

13.    Since Brad indicated that the ad was actually from a different company, Roxberry Naturals in Ohio, I reviewed a side-by-side comparison of Roxberry's marketing and the marketing for the other "Roxberry" product. (*See* **Exhibit C**.) Both use the ROXBERRY name for fruit-based beverages. Both present the products as healthy options aimed at families and children.

14.    Based on my experience, when people see the same name used this way on similar products, they generally assume the products are related or come from the same source, just as I did when seeing the Walmart ad.

**Restaurant Brands Expanding into Retail**

15.    Over the course of my career, I have observed that many restaurant and franchise brands expand into retail products sold in grocery stores and online. (*See* **Exhibit D**.) Exhibit D shows examples of two successful franchise restaurant brands — Chick-fil-A and Jamba Juice — that expanded to offer products in retail channels such as Walmart and Amazon. In those situations, customers see the same branding on both the restaurant and the packaged products. In my experience, when people see those products in stores like Walmart, they typically assume they are connected to the restaurant brand they recognize, because that kind of expansion is common.

**Roxberry's Retail Expansion Plans**

16.    Roxberry engaged me in part to help expand the Roxberry franchise brand into retail channels. From my experience in the beverage and foodservice industry, moving from storefront sales into grocery and online retail is a familiar and well-established path for brands in

this space. It was during this same time, while we were discussing those possibilities, that I saw the Walmart advertisement described above.

17.    Based on my experience, seeing another product already using the ROXBERRY name in places like Walmart or Amazon raised a concern for me that it could make it harder — or in some cases not workable — for Roxberry to place its own products under its own name.

18.    As part of these discussions, Roxberry asked me to consult regarding several packaged product ideas, including a retail packaged frozen smoothie mix, healthy fruit-flavored gummy snacks for kids and families, and a Roxberry-branded freezer pop referred to as a "Roxypop." (*See* **Exhibit E**.) Each of these types of products reflects the kind of kid-friendly product that Roxberry has been building for years and is now working toward for retail channels. We also discussed using the Roxberry freezer pop as a promotional item at parades and similar outings for families and kids, to highlight the Roxberry brand as a wholesome and fun alternative to treats full of sugar and artificial ingredients.

**Retail Buyer Dynamics and First-to-Shelf Advantage**

19.    During my career, I worked extensively with distributors and buyers who decide what brands of food products they want to sell. Shelf space is limited, and buyers are selective about what they carry. In my experience, both brick-and-mortar retailers as well as e-commerce retailers generally avoid carrying products from different companies that use the same or very similar brand names. If a product using a particular name is already on the shelf or on the website, retailers are generally reluctant to add another product under the same name from a different company. When a product is placed on shelves under a particular brand name, that placement can remain in place for a long time.

**Impact on Roxberry**

20.     Based on my experience, if another company is already selling beverages under the ROXBERRY name in retail channels, it can interfere with Roxberry's ability to move into those same channels. That can lead to confusion among customers and make retailers more hesitant to carry Roxberry products. It can also mean missed opportunities for shelf placement. Those kinds of missed opportunities are often difficult to make up later because shelf space and brand positions tend to stay in place once they are established.

21.     Roxberry has spent years building its brand around healthy fruit-based beverages for families and children, as shown in its marketing materials in Exhibit C. When another company uses the same name for similar products aimed at the same audience in stores like Walmart, it can make it much harder for Roxberry to expand into those same channels. In my experience, both customers and retail buyers may begin to associate the name with the products already on the shelf, which can get in the way of Roxberry's plans.

**Conclusion**

22.     Based on my more than forty years of experience in the foodservice and brand distribution industry, it is very common for successful restaurant and franchise brands like Roxberry to expand from their storefront operations into retail packaged products sold through grocery stores, mass retailers like Walmart, and online platforms. Roxberry has been actively planning and preparing for exactly this type of expansion. The use of the ROXBERRY name by another company on similar fruit-based beverages in retail channels has already caused actual confusion in my own experience when I encountered the Walmart advertisement. As someone who has worked extensively with buyers and distributors, I know that shelf space and online

placement are extremely limited and that retailers strongly prefer to avoid carrying products with identical brand names from different sources. The company that first establishes its brand in a retail channel gains a significant and long-lasting competitive advantage. In my opinion, the longer Roxberry Naturals is permitted to sell its products under the ROXBERRY name in retail settings, the greater the interference with and potential preclusion of Roxberry Licensing, LLC's carefully planned retail expansion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of March, 2026.

*J. Craig Romney*

J. Craig Romney (Mar 19, 2026 18:31:09 MDT)

Craig Romney
Foodservice Industry Consultant
(Former Corporate Sales Executive, Nicholas & Company)

7

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I caused to be filed a true and correct copy of the foregoing **DECLARATION OF CRAIG ROMNEY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** via the Court's CM/ECF system, which also effectuated service on all counsel of record. The following have been served via electronic mail as follows:

Aaron T. Brogdon abrogdon@fbtgibbons.com

Samantha M. Quimby squimby@fbtgibbons.com

Vance V. VanDrake vvandrake@fbtgibbons.com


*/s/Chad Pehrson*