Thomas D. Briscoe (16788)
Stephen Mouritsen (16523)
Chad Pehrson (12622)
**KNH LLP**
50 W. Broadway 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
tbriscoe@knh.law
smouritsen@knh.law
cpehrson@knh.law

*Attorneys for Plaintiff and*
*Counter-Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC, a Utah limited liability company, <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> ROXBERRY NATURALS, INC., a Delaware corporation, <br><br> Defendant and Counter-Claimant. | **FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DECEPTIVE TRADE PRACTICES, AND CANCELLATION OF TRADEMARK REGISTRATION** <br><br> Case No.   2:26-cv-00126-JNP-JCB <br><br> Judge Jill N. Parrish <br><br> Magistrate Judge Jared C. Bennett |

Plaintiff Roxberry Licensing, LLC **("Plaintiff"** or **"Roxberry Juice Co."),** by and through its undersigned counsel, brings this Complaint against Defendant Roxberry Naturals, Inc. **("Defendant"** or **"Roxberry Naturals"),** and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for federal trademark infringement, including reverse confusion,

1

under Section 32 of the Lanham Act, 15 U.S.C. § 1114; federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement; unfair competition under the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-101 *et seq.;* deceptive trade practices under the Utah Truth in Advertising Act, Utah Code Ann. § 13-11a-1 *et seq.;* and cancellation of Defendant's federal trademark registration. Plaintiff also seeks injunctive relief, damages, and all other relief to which it may be entitled.

2.     Plaintiff Roxberry Licensing, LLC is the owner and licensor of the ROXBERRY mark, which has been used continuously in United States commerce since at least March 2008 in connection with smoothies, fresh-pressed juices, açai bowls, and related healthy food and beverage products. Plaintiff owns a federal trademark registration for its ROXBERRY JUICE CO. design mark, U.S. Trademark Registration No. 5,495,492 registered on the Principal Register of the United States Patent and Trademark Office ("**USPTO**").

3.     Defendant Roxberry Naturals, Inc. is a Delaware corporation that began marketing and selling carbonated beverages under the virtually identical mark "ROXBERRY" in or about September 2024-more than sixteen (16) years after Plaintiffs first use in commerce. Defendant's infringement is not merely accidental; it is willful and deliberate. Despite actual knowledge of Plaintiffs prior rights, including a USPTO Office Action refusing registration of Defendant's "ROXBERRY" word mark based on a likelihood of confusion with Plaintiffs registration, Defendant has aggressively expanded its use of the infringing mark into more than 2,200 Walmart stores across all 50 states, 450 Kroger locations, 273 Meijer locations, and 262 Harris Teeter locations as of January 2026.

2

4. Defendant's unauthorized and infringing use of the ROXBERRY mark is causing and will continue to cause irreparable harm to Plaintiff through likelihood of confusion, loss of goodwill, and damage to Plaintiffs business and reputation, warranting immediate injunctive and monetary relief. Defendant's overwhelming nationwide market presence — spanning more than 3,000 retail locations across all 50 states, backed by the resources of a $200 million beverage enterprise — has created a classic reverse confusion dynamic in which consumers, commercial actors, and digital platforms now mistakenly believe that Plaintiff, the senior user of the ROXBERRY mark since 2008, is affiliated with, subordinate to, or derived from Defendant, the junior user. Rather than diverting Plaintiff's customers, Defendant's saturation of the market is erasing Plaintiff's brand identity: the goodwill Plaintiff built over nearly two decades now flows backward, and Plaintiff is losing the ability to control, license, or expand its own name. This reverse confusion is the hallmark injury recognized by the Tenth Circuit in *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372 (10th Cir. 1977), where the court held that it "would be anomalous to foreclose a remedy to a senior user against a junior user who has overwhelmed the senior user's mark through massive advertising."

## PARTIES

5. Plaintiff Roxberry Licensing, LLC is a Utah limited liability company with its principal place of business at 10975 S. State Street, Sandy, Utah 84070. Plaintiff is the owner and licensor of the ROXBERRY brand and related trademarks, and operates and franchises Roxberry Juice Co. retail locations offering smoothies, fresh-pressed juices, açai bowls, and related healthy food and beverage products.

6. Defendant Roxberry Naturals, Inc. is a corporation organized and existing under

the laws of the State of Delaware, with its principal place of business at 1753 Upper Chelsea Road, Columbus, Ohio 43212. Defendant was incorporated in 2022 and is engaged in the manufacture, marketing, distribution, and sale of carbonated beverages under the "ROXBERRY" name, including products branded as "Roxberry Fizz for Kids."

7.      Upon information and belief, Defendant's co-founders and principals include Andy Sauer (President), Lauren Sauer, and Dan Haugen (Co-Founder and COO). Upon information and belief, Andy Sauer is also the CEO of Garage Beer, a beverage company valued at approximately $200 million.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Plaintiffs federal trademark claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. § 1051 *et seq.*

9.      This Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims as to form part of the same case or controversy.

10.     This Court has personal jurisdiction over Defendant because Defendant has purposefully directed its activities toward the State of Utah by selling its products bearing the infringing ROXBERRY mark in Walmart, Kroger, and other retail stores located in Utah; by causing confusion with Plaintiffs ROXBERRY mark among Utah consumers; by advertising and promoting its ROXBERRY-branded products through nationwide internet advertising accessible to and targeting Utah consumers, including sponsored search advertising for the term "ROXBERRY" that appears to consumers in Utah; and by deriving revenue from the sale of

4

infringing products within the State of Utah. Defendant's nationwide distribution and advertising campaign constitutes the transaction of business within this state, and Plaintiffs claims arise from these contacts. Specifically, Utah consumers' actual confusion (described below) arises directly from these contacts.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiffs claims occurred in this District, Plaintiff maintains its principal place of business in this District, Plaintiffs goodwill in the ROXBERRY mark is concentrated in this District, and Defendant's infringing products are sold in retail stores located in this District.

## FACTUAL ALLEGATIONS

12. Plaintiffs founder, Brad Davis, is an attorney, entrepreneur, and veteran of the juice and restaurant industry with more than two decades of experience building successful food and beverage brands. Davis holds a Doctor of Law degree from Western State College of Law and a degree in International Relations and Affairs from Brigham Young University. Before founding Roxberry, Davis served as a partner and executive at Zuka Juice, a Utah-based smoothie chain he helped grow to 108 stores in eight Western states with more than $50 million in annual sales before Zuka Juice was acquired by Jamba Juice in 1999. Davis subsequently served as General Counsel and Vice President of Development at Rumbi Island Grill, General Counsel at Blendtec, and President of Abundant Brands, a Utah-based restaurant development company that served as a Development Agent for Subway Sandwiches and the largest franchise partner of Costa Vida Mexican Grill.

13. Drawing on this extensive industry experience and driven by a commitment to

5

providing consumers with healthier beverage options made from real fruits and vegetables-without reliance on artificial syrups, purees, powders, or preservatives-Davis founded Roxberry Juice Co. in Utah in 2008. In March 2008, Davis opened the first Roxberry Juice Co. corporate store at Hunter's Crossing Center in American Fork, Utah, establishing the "first use in commerce" date for the ROXBERRY mark. This founding was documented contemporaneously in a November 4, 2008 article in The Salt Lake Tribune, which reported on Davis's new venture and his prior success in growing the Zuka Juice brand.

14.     Roxberry Juice Co. is a family-owned and family-operated business. Davis's son, Braden Davis, is actively involved in the company's leadership and operations. Each Roxberry franchise location is locally owned and operated, reflecting the company's deep roots in the communities it serves and its commitment to local entrepreneurship.

15.     The Roxberry franchise rapidly expanded from its inception. The first franchised location-the Murray, Utah store at 5291 S. State Street-opened in Fall 2008, followed by the Highland, Utah franchise on November 12, 2008. Since March 2008, Plaintiff and its franchise network have continuously and extensively used the ROXBERRY mark in commerce in connection with smoothies, fresh-pressed juices, açai bowls, and related healthy food and beverage products. Plaintiff has operated over twenty franchise locations across Utah, Idaho, and Virginia. The Virginia location opened in December 2018 as the brand's first East Coast operation, though it subsequently closed during the COVID-19 pandemic. As of the date of this Complaint, Plaintiffs franchise network continues to operate locations across Utah and Idaho.

16.     Through nearly two decades of continuous use, substantial advertising and promotion, sales of millions of units, and the delivery of high-quality products and services,

Plaintiff has developed strong secondary meaning, significant goodwill, and widespread consumer recognition in the ROXBERRY mark, particularly in the States of Utah and Idaho. Roxberry Juice Co. has received multiple "Best of State" awards in Utah for its smoothies, healthy food, and fruit bowls, further attesting to the brand's strong consumer recognition and reputation for quality.

17.     In or about 2017, Plaintiff applied to register its ROXBERRY JUICE CO. design mark with the USPTO. The mark was subsequently registered on the Principal Register as Registration No. 5,495,492.

18.     Plaintiffs federal registration covers goods and services including smoothies, fresh-pressed juices, açai bowls, and related healthy food and beverage products. The registration is valid and subsisting. A true and correct copy of the registration certificate is attached hereto as **Exhibit A.**

19.     The dominant and distinctive portion of Plaintiffs Registered Mark is the term ROXBERRY, which consumers use to identify and distinguish Plaintiffs products. By virtue of its federal registration, Plaintiff has nationwide constructive notice of its claim of ownership of the ROXBERRY mark under 15 U.S.C. § 1072, and its registration constitutes prima facie evidence of the validity of the mark and of Plaintiffs exclusive right to use the mark in commerce under 15 U.S.C. § 1115(a).

20.     Roxberry Naturals, Inc. was incorporated in the State of Delaware in 2022. On September 28, 2022, Defendant filed an SEC Form D under Rule 506(b), disclosing that it had raised $550,000 in equity funding. Defendant's SEC filing (CIK No. 0001947383) lists its corporate address as 1753 Upper Chelsea Road, Columbus, Ohio 43212.

21.    Defendant markets and sells carbonated canned beverages under the brand names "ROXBERRY" and "Roxberry Fizz for Kids." Defendant's products include flavors branded as "Galaxy Gulp Citrus," "Ocean Potion Fruit Punch," and "Pink Lava Strawberry Lemonade," sold in 7.5 fl. oz. cans and positioned as healthier alternatives to traditional sodas with purported lower sugar content.

22.    Defendant's claimed first use in commerce of the "ROXBERRY" mark is September 23, 2024-more than sixteen (16) years after Plaintiffs first use in March 2008.

23.    Like Plaintiffs products, Defendant's products are beverages marketed to health-conscious consumers, including families with children. Both parties' products are sold in overlapping and closely related trade channels, including retail stores, online marketplaces, and channels serving health-conscious family consumers. Plaintiff has actively explored expansion into grocery retail channels under the ROXBERRY brand, placing Defendant's products squarely within Plaintiffs zone of natural expansion. Defendant's use of "ROXBERRY" is identical in sight, sound, and commercial impression to Plaintiffs mark. The goods are directly related within the meaning of trademark law-both are consumable fruit-based beverages positioned for health-conscious consumers. The following side-by-side comparison illustrates the similarities:

8

| Plaintiff | Defendant |
|---|---|
|  | |
|  |  |

24.     On February 2, 2023, Defendant filed an Intent-to-Use application with the USPTO for a design/logo mark featuring the "ROXBERRY" name in connection with dietary supplemental drinks. The application was published for opposition on December 12, 2023. The one-month opposition period closed on or about January 12, 2024.

25.     On February 6, 2024, the USPTO issued a Notice of Allowance for Defendant's logo mark application, and Defendant filed a Statement of Use on November 20, 2024. The logo/design mark was registered on March 25, 2025.

26.     On November 20, 2024, Defendant separately filed U.S. Trademark Application Serial No. 98/863,067, seeking to register the standard character word mark "ROXBERRY" with the USPTO for dietary supplemental drinks.

27.     On May 21, 2025, the USPTO examining attorney issued an Office Action refusing registration of Defendant's "ROXBERRY" word mark application under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), based on a finding of likelihood of confusion with Plaintiffs existing federal registration (Serial No. 87/470,335). A copy of the USPTO Office Action is attached hereto as **Exhibit B.**

28.     Defendant failed to respond to the Office Action within the required six-month deadline. As a result, Defendant's "ROXBERRY" word mark application was abandoned on November 24, 2025.

29.     The issuance of the Office Action provided Defendant with actual notice and knowledge of Plaintiffs prior trademark rights. Defendant's failure to respond, combined with its continued and expanded use of the ROXBERRY mark thereafter, constitutes evidence of willful infringement and bad faith.

30.     Rather than respecting Plaintiffs established rights and the USPTO's formal determination, Defendant did not cease or curtail its use of the ROXBERRY mark. To the contrary, Defendant aggressively and dramatically expanded its distribution and use of the infringing mark in distinct disregard of Plaintiffs rights.

31.     On or about January 13, 2026-less than two months after its "ROXBERRY" word mark application was abandoned following the USPTO's likelihood-of-confusion refusal-Defendant publicly announced a nationwide expansion into 2,200 Walmart stores across all 50 states, positioning its ROXBERRY-branded products in Walmart's "Modem Soda" aisle. This announcement was disseminated through PR Newswire and reported by multiple national trade publications including Fast Company, BevNET, and Prepared Foods. Defendant's decision to dramatically expand its use of the infringing mark immediately after the USPTO told it "no" reflects a deliberate strategy of doubling down on infringement in bad faith.

32.     Upon information and belief, in addition to 2,200 Walmart stores, Defendant's products are also distributed in approximately 450 Kroger locations, 273 Meijer locations, and 262 Harris Teeter locations nationwide.

33.     Defendant's products are also available for purchase online through Amazon.com, Walmart.com, and Defendant's own website at www.getroxberry.com, making them accessible to consumers nationwide, including consumers in Plaintiffs core Utah and Idaho markets.

34.     Defendant operates sponsored search advertising for the term "Roxberry," which causes Defendant's products to appear prominently-and in some cases ahead of Plaintiff-in internet search results for the ROXBERRY name. This practice further exacerbates consumer confusion and diverts Plaintiffs prospective customers.

35. Plaintiff, through its counsel, sent Defendant a cease and desist letter demanding that Defendant cease all use of the ROXBERRY mark. That correspondence is attached hereto as **Exhibit C.** Defendant has failed to respond to or comply with the cease and desist demand, further demonstrating its willful disregard for Plaintiffs trademark rights.

36. Defendant's infringing activities have caused and continue to cause irreparable harm to Plaintiff, including but not limited to: (a) likelihood of confusion among consumers as to the source, sponsorship, or affiliation of Defendant's products with Plaintiff; (b) actual confusion, as evidenced by consumer inquiries directed to Plaintiff regarding Defendant's products; (c) damage to Plaintiffs goodwill and reputation; (d) impairment of Plaintiffs ability to expand its franchise network, as existing and potential franchisees may question Plaintiffs exclusive rights in the ROXBERRY name; and (e) impairment of Plaintiffs ability to pursue grocery retail products under the ROXBERRY brand, a market that Plaintiff was actively exploring at the time Defendant's infringement was discovered.

37. Plaintiff has received consumer communications, including through its website contact form at www.roxberryjuice.com, from consumers who have confused Defendant's "Roxberry Fizz for Kids" products with Plaintiffs Roxberry Juice Co. brand, demonstrating actual marketplace confusion.

38. The harm to Plaintiff is ongoing, substantial, and accelerating with each day that Defendant continues to expand its use of the ROXBERRY mark in nationwide commerce.

**Reverse Confusion**

39. In addition to traditional forward confusion — where consumers mistakenly believe the junior user's products originate from the senior user — Defendant's conduct has

12

caused and continues to cause reverse confusion, where the junior user's overwhelming market presence causes consumers to mistakenly believe that the senior user's products originate from, are affiliated with, or are subordinate to the junior user. The Tenth Circuit has recognized reverse confusion as a distinct and actionable theory of trademark infringement since *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, 1372 (10th Cir. 1977), and has reaffirmed the doctrine in *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229 (10th Cir. 2013), and *Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1238* (10th Cir. 2006).

40.     The reverse confusion in this case is driven by a stark and growing disparity in market presence. Plaintiff operates approximately 25 franchise locations in Utah and Idaho. Defendant, backed by the resources of its president Andy Sauer's approximately $200 million Garage Beer enterprise, has expanded into more than 3,000 retail locations nationwide — including more than 2,200 Walmart stores across all 50 states, approximately 450 Kroger locations, 273 Meijer locations, and 262 Harris Teeter locations — as well as Amazon.com, Walmart.com, and its own website at www.getroxberry.com. The ratio of Defendant's retail presence to Plaintiff's is approximately 120 to 1. Defendant admits these facts. (Answer ¶¶ 3, 7, 32, 33.)

41.     As a direct result of Defendant's reverse confusion, consumers who encounter Plaintiff's ROXBERRY brand now mistakenly believe that Plaintiff is affiliated with, licensed by, or subordinate to Defendant's national "ROXBERRY" brand. This dynamic has been documented across multiple levels:

a.  **Consumer reverse confusion**. On or about January 21, 2026, a consumer named Davina M. Morris wrote to Plaintiff through its website: "I like your soda for kids.

13

It's a healthier alternative. Thank you. Do you have coupons please." Plaintiff does not sell sodas. This consumer encountered Defendant's mass-market product and attributed it to Plaintiff — believing that the senior user was the source of the junior user's product.

b. **Commercial reverse confusion.** A NASCAR representative contacted a Roxberry franchise partner to inquire about sponsoring a race team — based on the assumption that Plaintiff's franchise was the same company selling Roxberry-branded beverages nationwide through Walmart. This sophisticated commercial actor assumed Plaintiff's local franchise was part of Defendant's national operation — not the other way around.

c. **Professional reverse confusion**. Craig Romney, a supply chain consultant with over forty years of foodservice distribution experience, saw a Walmart advertisement for Defendant's product on the MSN news feed and immediately believed Plaintiff had launched a retail product. Mr. Romney subsequently wrote: "I saw the ad on MSN.com and yes, I thought it was a Roxberry Juice ad." If a sophisticated professional with deep industry knowledge and a direct consulting relationship with Plaintiff can be confused in this manner, the average consumer certainly will be.

d. **Digital and AI reverse confusion.** Major artificial intelligence platforms and search engines now conflate Plaintiff's brand with Defendant's products. Google's AI Mode attributes Defendant's "Roxberry Fizz for Kids" to Plaintiff's brand, presenting it as a menu item of Plaintiff's business and citing Defendant's website (www.getroxberry.com) as the source. Grok merges both companies into a single entity, presenting them as the "same brand family." ChatGPT provides an express warning that

14

the brands "appear to be separate entities" — an acknowledgment that the confusion is so pervasive that the AI itself must flag it. On Amazon, searches for "roxberry" and "roxberry juice" — Plaintiff's exact trade name since 2008 — return exclusively Defendant's products. Paid influencers engaged by Defendant use the hashtag #roxberryjuice — Plaintiff's trade name — in their Instagram posts promoting Defendant's products. This systematic digital conflation is compounding daily as algorithms increasingly associate the ROXBERRY name with Defendant's national retail presence rather than Plaintiff's eighteen-year-old franchise brand.

42.    Defendant's reverse confusion has blocked Plaintiff's planned expansion into grocery retail channels. Plaintiff had been actively developing expansion plans Roxberry-branded retail products — including a freezer pop referred to as the "Roxberry Roxypop," frozen smoothie mixes, and healthy fruit-flavored gummy snacks for kids and families — when Defendant's infringement was discovered. Plaintiff's supply chain consultant, Craig Romney, has advised that retail buyers manage limited shelf space and typically will not stock products from two different companies using the same brand name. Mr. Romney has further advised that "shelf space and brand positions tend to stay in place once they are established" and that "once a retailer allocates shelf space to a particular brand name, that brand identity can remain associated with that product in the retailer's assortment for extended periods of time." Defendant's first-mover occupation of grocery retail shelf space under the ROXBERRY name has effectively blocked Plaintiff from entering those channels under its own name.

43.    The harm from reverse confusion is distinct from the harm caused by traditional forward confusion. In forward confusion, the junior user diverts the senior user's customers. In

reverse confusion, the junior user erases the senior user's identity. Plaintiff's nearly two decades of brand building are being inverted: consumers now associate the ROXBERRY name primarily with Defendant's national retail presence, not with Plaintiff's franchise brand. The goodwill flows backward. And Plaintiff loses the ability to control, license, or expand its own name.

44.     Defendant's conduct satisfies the "swamping" prerequisite for reverse confusion recognized in the Tenth Circuit. A "reverse confusion case is proven only if the evidence shows that the junior user was able to swamp the reputation of the senior user with a relatively much larger advertising campaign." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:10 (5th ed.). Defendant's 3,000+ retail locations, $200 million financial backing, nationwide e-commerce presence, sponsored search advertising, and influencer marketing campaigns have created a market presence that overwhelms Plaintiff's 25-store franchise footprint. Unlike cases where the senior user has no presence in the junior user's market, here Defendant's products are sold in Walmart stores located within miles of Plaintiff's franchise locations, in the same geographic markets, to the same health-conscious family consumers, under the identical fanciful mark.

45.     Defendant's reverse confusion is willful. Defendant received the USPTO Office Action refusing its word mark on likelihood-of-confusion grounds in May 2025. (Answer ¶ 27 — admitted.) Defendant abandoned the application in November 2025. (Answer ¶ 28 — admitted.) Defendant received Plaintiff's cease-and-desist letter in January 2026. (Answer ¶ 35 — admitted.) After each of these warnings, Defendant accelerated its nationwide expansion. This pattern of expansion despite explicit notice constitutes, at a minimum, careless and culpable conduct in selecting and continuing to use the allegedly infringing name — the standard for

16

intent in reverse confusion cases. *See Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1248 n.133 (D. Utah 2020) (Shelby, C.J.) (recognizing that in reverse confusion cases, "the appropriate intent inquiry is whether defendant acted carelessly or otherwise culpably in selecting the allegedly infringing name").

46. The reverse confusion caused by Defendant's conduct is ongoing, compounding, and irreparable. Every day that Defendant's products remain in the market under the ROXBERRY name, the algorithms, consumer perceptions, and retail shelf-space allocations increasingly associate ROXBERRY with Defendant's national brand rather than Plaintiff's senior mark. This harm cannot be adequately remedied by money damages alone.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT
*(Violation of 15 U.S.C. § 1114)*

1. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

2. Plaintiff is the owner of valid and subsisting U.S. Trademark Registration No. 5,495,492 for the ROXBERRY JUICE CO. design mark, covering fruit and vegetable juice drinks.

3. Without Plaintiffs consent or authorization, Defendant has used and continues to use in interstate commerce the mark ROXBERRY and variations thereof-which are identical or confusingly similar to Plaintiffs registered ROXBERRY mark-in connection with the advertising, promotion, distribution, and sale of beverages.

4. Defendant's use of the ROXBERRY mark in connection with beverages is likely to cause confusion, mistake, or deception among consumers as to the source, origin, sponsorship,

or affiliation of Defendant's products with Plaintiff, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. This confusion includes reverse confusion, in which Defendant's overwhelming nationwide market presence causes consumers to mistakenly believe that Plaintiff's products originate from, are affiliated with, or are subordinate to Defendant, the junior user.

5.      Defendant's infringement has been willful and deliberate, as evidenced by: (a) the USPTO's Office Action citing likelihood of confusion with Plaintiffs registration; (b) Defendant's subsequent abandonment of its word mark application; (c) Defendant's continued and expanded use of the ROXBERRY mark despite actual notice of Plaintiffs prior rights; (d) Defendant's aggressive nationwide expansion into 2,200 Walmart stores less than two months after its word mark was abandoned; and (e) Defendant's failure to respond to Plaintiffs cease and desist demand.

6.      As a direct and proximate result of Defendant's infringement, Plaintiff has suffered and will continue to suffer irreparable injury to its goodwill and reputation, for which there is no adequate remedy at law.

## COUNT II

**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
*(Violation of 15 U.S.C. § 1125(a))*

7.      Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

8.      Defendant's use of the ROXBERRY mark in connection with the advertising, promotion, distribution, and sale of beverages constitutes a false designation of origin and a false or misleading representation of fact that is likely to cause confusion, mistake, or deception as to

18

the origin, sponsorship, or approval of Defendant's products, or as to the affiliation, connection, or association of Defendant with Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This includes reverse confusion, in which Defendant's massive retail footprint and nationwide marketing presence have drowned out Plaintiff's senior mark, causing the public to believe that Plaintiff is the junior user or is affiliated with or subordinate to Defendant.

9.      Defendant's conduct is willful and undertaken in bad faith, with full knowledge of Plaintiffs superior rights in the ROXBERRY mark.

10.     As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer irreparable injury to its goodwill and reputation, for which there is no adequate remedy at law.

## COUNT III

### COMMON LAW TRADEMARK INFRINGEMENT

11.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

12.     Since at least March 2008, Plaintiff has acquired common law trademark rights in the ROXBERRY mark through continuous, extensive, and exclusive use in commerce in connection with smoothies, fresh-pressed juices, açai bowls, and related healthy food and beverage products.

13.     Defendant's unauthorized use of the identical ROXBERRY mark in connection with beverages constitutes infringement of Plaintiffs common law trademark rights.

14.     Defendant's infringement has been willful and deliberate, and is likely to cause

19

confusion, mistake, or deception among consumers as to the source, origin, sponsorship, or affiliation of Defendant's products with Plaintiff.

15. As a direct and proximate result of Defendant's common law trademark infringement, Plaintiff has suffered and will continue to suffer irreparable injury, for which there is no adequate remedy at law.

## COUNT IV

### UNFAIR COMPETITION UNDER STATE LAW
*(Utah Unfair Competition Act, Utah Code Ann.§ 13-5a-101 et seq.)*

16. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

17. Defendant's adoption and use of the ROXBERRY mark constitutes intentional business acts or practices that harm the value of Plaintiffs intellectual property, specifically Plaintiffs trademark and trade name rights in the ROXBERRY mark, in violation of the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-101 *et seq.*

18. Defendant's unfair competition has caused material diminution in the value of Plaintiffs ROXBERRY mark and related intellectual property.

19. As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer damages.

## COUNT V

### DECEPTIVE TRADE PRACTICES
*(Utah Truth in Advertising Act, Utah Code Ann.§ 13-lla-1 et seq.)*

20. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

21.     Defendant's use of the ROXBERRY mark in the advertising, promotion, and sale of its beverage products constitutes deceptive trade practices under the Utah Truth in Advertising Act, Utah Code Ann. § 13-1 la-3, including but not limited to: (a) passing off goods as those of another; (b) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; and (c) causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with Plaintiff.

22.     Plaintiff provided Defendant with notice of its alleged violations as required under Utah Code Ann. § 13-1 la-4(5) through its cease and desist letter. Defendant failed to promulgate any correction within ten days of receipt or at any time thereafter.

23.     As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff has suffered and will continue to suffer damages, and is entitled to injunctive relief, actual damages or the statutory amounts (whichever is greater), attorneys' fees, and corrective advertising as provided by statute.

## COUNT VI

### CANCELLATION OF DEFENDANT'S TRADEMARK REGISTRATION
(15 U.S.C. § 1119)

24.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

25.     Defendant obtained registration of its Roxberry logo/design mark on March 25, 2025. This registration was obtained despite Plaintiffs prior and superior rights in the ROXBERRY mark, which have existed since at least March 2008.

26.     Plaintiffs prior rights in the ROXBERRY mark and the likelihood of confusion between the parties' marks establish that Defendant's registration was improperly granted and

21

should be cancelled.

27.     Under 15 U.S.C. § 1119, this Court has the power to order cancellation of Defendant's trademark registration. Cancellation is warranted because: (a) Plaintiff has priority of use dating to March 2008; (b) the marks are virtually identical in their dominant word element; (c) the goods are directly related (beverages in the health/wellness category); (d) the USPTO itself found likelihood of confusion when it refused Defendant's word mark application; and (e) Defendant's continued use of the mark after the Office Action constitutes bad faith.

28.     Plaintiff requests that the Court order the Director of the USPTO to cancel Defendant's Roxberry logo/design mark registration issued March 25, 2025.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roxberry Licensing, LLC respectfully requests that this Court enter judgment against Defendant Roxberry Naturals, Inc. as follows:

A.      A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, employees, attorneys, successors, assigns, affiliates, and all persons acting in concert or participation with Defendant, from: (a) using the mark ROXBERRY or any other mark confusingly similar to Plaintiff's ROXBERRY mark in connection with the advertising, promotion, distribution, sale, or offering for sale of any goods or services; (b) using any trade name, trademark, service mark, domain name, social media identifier, or other designation that is identical or confusingly similar to Plaintiff's ROXBERRY mark; and (c) otherwise unfairly competing with Plaintiff;

B.      An order directing the cancellation of Defendant's Roxberry logo/design mark registration issued by the USPTO on March 25, 2025, pursuant to 15 U.S.C. § 1119;

C.      An order requiring Defendant to file with this Court and serve on Plaintiff, within thirty (30) days of entry of judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

D.      An accounting and disgorgement of all profits earned by Defendant attributable to the use of the ROXBERRY mark, pursuant to 15 U.S.C. § 1117(a);

E.      An award of actual damages sustained by Plaintiff as a result of Defendant's infringing and unfair conduct, or the statutory amounts, whichever is greater, as provided under the Utah Truth in Advertising Act;

F.      An order trebling Defendant's profits and/or Plaintiffs damages pursuant to 15 U.S.C. § 1117(a) and (b) based on Defendant's willful infringement;

G.      An award of Plaintiffs reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), this being an exceptional case;

H.      An award of prejudgment and post-judgment interest;

I.      An order requiring Defendant to destroy all products, packaging, labels, signs, prints, advertisements, and other materials in Defendant's possession or control bearing the ROXBERRY mark or any confusingly similar mark, pursuant to 15 U.S.C. § 1118;

J.      An order requiring Defendant to transfer to Plaintiff any domain names incorporating the ROXBERRY mark, including but not limited to getroxberry.com;

K.      An award of corrective advertising and digital remediation costs necessary to restore Plaintiff's brand identity, repair algorithmic and AI-platform conflation, and remedy the reverse confusion caused by Defendant's nationwide saturation of the ROXBERRY mark;

L.      Such other and further relief as this Court deems just and proper.

23

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

DATED this 31st day of March 2026.

Respectfully submitted,

**KNH LLP**

*/s/Thomas D Briscoe*
Thomas D. Briscoe
Stephen Mouritsen
Chad Pehrson

*Attorneys for Plaintiff and
Counter-Defendant
Roxberry Licensing, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 13, 2026, I caused to be filed a true and correct copy of the

foregoing **FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT,**

**UNFAIR COMPETITION, DECEPTIVE TRADE PRACTICES, AND CANCELLATION**

**OF TRADEMARK REGISTRATION** via the Court's CM/ECF system, which also

effectuated service on all counsel of record. The following have been served via electronic mail

as follows:

Aaron T. Brogdon abrogdon@fbtgibbons.com

Samantha M. Quimby squimby@fbtgibbons.com

Vance V. VanDrake vvandrake@fbtgibbons.com

*/s/Thomas D. Briscoe*

8