# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **ROXBERRY LICENSING, LLC, a Utah limited liability company,**<br><br>    **Plaintiff/Counterclaim Defendant,**<br><br>**v.**<br><br>**ROXBERRY NATURALS, INC., a Delaware corporation,**<br><br>    **Defendant/Counterclaim Plaintiff.** | **SCHEDULING ORDER**<br><br>**Case No. 2:26-cv-00126-JNP-JCB**<br><br>**Chief District Judge Jill N. Parrish**<br><br>**Magistrate Judge Jared C. Bennett** |

Chief District Judge Jill N. Parrish referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court are the parties' stipulated motion for scheduling order[2] and Attorney Planning Meeting Report.[3] Based upon the parties' stipulation, the court GRANTS the motion. Accordingly, the following matters are scheduled. The deadlines set forth below may be modified only with a court order consistent with Fed. R. Civ. P. 16(b)(4) and DUCivR 83-4.

**DEADLINES ARE 11:59 P.M. ON THE DATE INDICATED UNLESS EXPRESSLY STATED OTHERWISE**

## 1. PRELIMINARY MATTERS

| | | |
|---|---|---|
| a. | Fed. R. Civ. P. 26(f)(1) Conference: | 04/07/2026 |

---

[1] ECF No. 12.

[2] ECF No. 25.

[3] ECF No. 25-1.

| b. | Participants in Fed. R. Civ. P. 26(f)(1) Conference:<br>Thomas D. Briscoe for Plaintiff and Counterclaim Defendant Roxberry Licensing, LLC<br>Aaron T. Brogdon for Defendant and Counterclaim Plaintiff Roxberry Naturals, Inc. | | |
|---|---|---|---|
| c. | Fed. R. Civ. P. 26(a)(1) Initial Disclosures (the parties have exchanged initial disclosures or will exchange no later than the date provided): | 04/17/2026 | |
| d. | Under Fed. R. Civ. P. 5(b)(2)(E), the parties agree to receive all items required to be served under Fed. R. Civ. P. 5(a) by the court's electronic filing system or email transmission.<br>Electronic service constitutes notice and service as required by those rules. The right to service by USPS mail is waived. | Yes ☒ | No ☐ |

## 2. PROTECTIVE ORDER

| a. | The parties anticipate that this case will involve the disclosure of information, documents, or other materials that will be designated as CONFIDENTIAL. | Yes ☒ | No ☐ |
|---|---|---|---|
| b. | If this case will involve the disclosure of information, documents, or other materials that will be designated as CONFIDENTIAL, then good cause exists for the court to enter the court's Standard Protective Order ("SPO") under DUCivR 26-2:<br><br>This case will involve the disclosure of confidential and commercially sensitive information from both parties, including but not limited to:<br><br>Defendant<br>• Gross and net revenue data, unit sales by SKU, and profit margins for Roxberry Naturals products<br>• Distribution agreements with Walmart, Kroger, Meijer, Harris Teeter, and Amazon<br>• Marketing budgets, advertising expenditures, and sponsored search advertising data<br>• Internal communications regarding the adoption of the "ROXBERRY" name, the decision not to respond to the USPTO Office Action, and the decision to expand distribution after the Office Action and cease-and-desist letter<br>• Financial projections and business plans<br>• Investor communications and SEC-related documents<br><br>Plaintiff<br>• Franchise agreements (template and executed) between Roxberry Licensing, LLC and individual franchisees<br>• Franchise Disclosure Document (FDD) and related regulatory filings | | |

2

<table>
<tr>
<td></td>
<td>
<ul>
<li>Gross and net revenue data, royalty payments, and franchise fee structures</li>
<li>The Excelsior Franchise Growth Solution Agreement and related franchise development data</li>
<li>Marketing budgets and advertising expenditures</li>
<li>Business plans and expansion projections</li>
</ul>

The parties shall file a Stipulated Motion for Entry of the Standard Protective Order no later than April 28, 2026. The Standard Protective Order will include an "Attorneys' Eyes Only" tier for the most sensitive financial and business strategy information, including but not limited to revenue data, profit margins, distribution agreement terms, and franchise fee structures.

The Standard Protective Order will include a clawback provision for inadvertently produced privileged documents consistent with Fed. R. Evid. 502(b), and that inadvertent production of privileged materials during discovery will not constitute waiver of the attorney-client privilege or work-product protection in any federal or state proceeding.
</td>
</tr>
<tr>
<td>c.</td>
<td>If a protective order is needed, and the parties are not using the court's SPO, then the court's SPO, in effect under DUCivR 26-2, will govern until a different protective order—proposed by the parties via motion under DUCivR 7-1(a)(4)(D)—is adopted by the court.

The parties' proposed protective order should identify a process to resolve all claims of waiver of attorney-client privilege or work-product protection, regardless of whether the information, documents, or other materials will be designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY, and this process must be included in the proposed protective order under Fed. R. Evid. 502(d): N/A</td>
</tr>
<tr>
<td>d.</td>
<td>If the parties do not anticipate that this case will involve the disclosure of information, documents, or other materials that will be designated as CONFIDENTIAL, the parties still should identify, in the space below, a process to resolve all claims of waiver of attorney-client privilege or work-product protection: N/A</td>
</tr>
</table>

3. **DISCOVERY PLAN**

<table>
<tr>
<td>a.</td>
<td>Discovery Plan: The parties agree to the following discovery plan.
<ul><li>If the parties disagree, clearly indicate the disagreement in the space below:</li></ul></td>
<td>Yes ☒</td>
<td>No ☐</td>
</tr>
<tr>
<td>b.</td>
<td colspan="3">Discovery Subjects:

The parties agree that discovery will be needed on the following subject areas:

**1. Likelihood of Confusion.** All discovery related to the likelihood of confusion between the parties' respective marks, including the degree of similarity between the marks; the intent of the parties in adopting their respective marks; evidence of actual</td>
</tr>
</table>

confusion; the similarity of the parties' products and manner of marketing; the degree of care likely to be exercised by purchasers; the strength or weakness of the marks; the parties' respective market presence, advertising expenditures, and distribution footprints; and any consumer surveys, market research, or expert analyses conducted or commissioned by either party relating to consumer perception of the parties' marks.

**2. The Parties' Respective Adoption, Use, and Efforts to Register the Parties' marks.** Discovery regarding the adoption, historical use, efforts to register, and efforts to protect the parties' respective marks.

**3. Defendant's Intent in Adopting the Mark.** Discovery regarding Defendant's knowledge of Plaintiff's prior rights at the time Defendant adopted the ROXBERRY mark, Defendant's trademark clearance search (if any) prior to adoption, Defendant's internal communications regarding the selection of the ROXBERRY name, Defendant's response to the USPTO Office Action refusing registration of its word mark, and Defendant's decision to expand distribution after the Office Action and after receipt of Plaintiff's cease-and-desist letter.

**4. Corporate Structure, Ownership, Capitalization.** Discovery regarding the parties' corporate formation documents, equity ownership records, capitalization tables, investor agreements, and any agreements granting equity or other consideration to branding, marketing, or strategic partners.

**5. The Parties' Respective Sales, Revenue, and Distribution.** Discovery regarding parties' gross and net revenues, units sold by SKU, profit margins, distribution agreements – including but not limited to Defendant's distribution agreement with Walmart, Kroger, Meijer, Harris Teeter, and Amazon and franchise agreements, and the parties' projected revenues. This information is relevant to both damages and the balance of equities analysis for injunctive relief.

**6. The Parties' Marketing and Advertising Efforts.** Discovery regarding the parties' respective marketing budgets, advertising expenditures, sponsored search advertising data (including bids on the term "Roxberry"), influencer engagement agreements, social media strategy, and public relations activities.

**7. Geographic Scope and Expansion Plans.** Discovery regarding both parties' geographic presence, expansion plans, and franchise development activities. This subject area is directly relevant to Defendant's Eighth Affirmative Defense (limited geographic scope) and Plaintiff's evidence of concrete expansion plans.

**8. Plaintiff's Alleged Damages.** Discovery regarding Plaintiff's alleged lost profits, diminution in brand value, cost of corrective advertising, and impact on franchise

development that Plaintiff alleges is attributable to Defendant's use of the ROXBERRY mark.

**9. Laches and Timeliness.** Discovery regarding the timeline of Plaintiff's knowledge of Defendant's activities, Plaintiff's diligence in investigating and responding, and Defendant's reliance (if any) on Plaintiff's alleged delay. This subject area is directly relevant to Defendant's Second Affirmative Defense (laches).

**10. Counterclaim — Fraud on the USPTO.** Discovery regarding Plaintiff's prior statements to the USPTO during prosecution of Registration No. 5,495,492, the context in which those statements were made, the identity and role of Plaintiff's prior trademark counsel, and whether Plaintiff's statements were material to the issuance of the registration. This subject area is relevant to Defendant's Counterclaim for cancellation.

**11. Counterclaim — Declaratory Judgment.** Discovery regarding the overall commercial impression of the parties' respective design marks, the context in which each mark is used in commerce, and whether Defendant's use of its registered design mark creates a likelihood of confusion with Plaintiff's mark.

**12. Digital and Algorithmic Brand Presence.** Discovery regarding the parties' respective presence on search engines, AI platforms, e-commerce marketplaces, and social media platforms, including search engine optimization strategies, algorithmic advertising data, platform-specific product listings, and any communications with or submissions to Google, Amazon, Walmart.com, or other digital platforms regarding the use of the ROXBERRY name.

c.   Discovery Phases:

Discovery will be conducted in two phases to promote efficiency and focus the parties' resources on the issues most likely to be determinative of this dispute.

**Phase 1: Liability and Injunctive Relief (April 28, 2026 – August 15, 2026)**

Phase 1 discovery will focus on the following issues, which are directly relevant to the pending Motion for Preliminary Injunction, the likelihood of confusion analysis, and the injunctive relief claims:

- Defendant's adoption of the ROXBERRY mark, including any trademark clearance search conducted prior to adoption, internal communications regarding the selection of the name, and Defendant's knowledge of Plaintiff's prior rights at the time of adoption
- Defendant's response to the USPTO Office Action refusing registration of its word mark, including internal communications regarding the decision not to respond and the decision to expand distribution after the Office Action

- Defendant's response to Plaintiff's cease-and-desist letter, including internal communications regarding the decision to continue using the ROXBERRY mark
- Defendant's sales and distribution data, including gross and net revenue by SKU, units sold, distribution agreements, and retail placement data
- Defendant's marketing and advertising activities, including sponsored search advertising data, influencer engagement agreements, and social media strategy
- Instances of actual confusion, including consumer inquiries, misdirected communications, and retailer or distributor inquiries received by either party
- Both parties' geographic presence and expansion plans
- Plaintiff's USPTO prosecution history and prior statements relevant to Defendant's Counterclaim

**Phase 2: Damages, Experts, and Remaining Issues (August 18, 2026 – October 15, 2026)**

Phase 2 discovery will focus on:

- Detailed damages and disgorgement calculations
- Expert-related discovery (consumer surveys, damages modeling, corrective advertising cost estimates)
- Any remaining issues not fully addressed in Phase 1

**Accelerated Discovery**

The following discovery is accelerated and will be completed by June 13, 2026:

- Written discovery regarding the parties' adoption, use, and efforts to register their respective marks
- Written discovery relating to the potential likelihood of confusion
- Rule 30(b)(6) depositions of the parties, with topics for deposition of Defendant to include: (a) adoption of the ROXBERRY mark; (b) knowledge of Plaintiff's prior rights; (c) response to the USPTO Office Action; and (d) response to Plaintiff's cease-and-desist letter
- Defendant's production of internal communications regarding the adoption of the ROXBERRY mark and the decision to expand distribution after the USPTO Office Action and cease-and-desist letter
- The parties' production of gross and net revenue data, units sold by SKU, and distribution agreements

The parties agree that this accelerated discovery is warranted because: (a) the Motion for Preliminary Injunction is pending and the Court may benefit from a more complete evidentiary record; (b) the information sought goes to such issues as

| | likelihood of confusion, willfulness, and intent; and (c) the Order to Propose Schedule specifically encourages the parties to narrow and target discovery at the outset. |
|---|---|
| d. | <u>Electronically Stored Information</u>:<br><br>The parties shall handle discovery of electronically stored information as follows:<br><br>**1. Preservation.** All potentially relevant ESI will be preserved within the Parties possession, custody, and/or control, including but not limited to:<br><br><ul><li>Email communications (including attachments) of custodians likely to have discoverable information</li><li>Text messages, instant messages, and communications through messaging platforms (including but not limited to Slack, Microsoft Teams, and similar platforms)</li><li>Social media content, including posts, comments, direct messages, influencer communications, and advertising data from Instagram, Facebook, TikTok, LinkedIn, and X (formerly Twitter)</li><li>Documents stored on cloud platforms (including but not limited to Google Drive, Dropbox, SharePoint, and similar platforms)</li><li>Digital advertising data, including sponsored search advertising campaigns, keyword bids, click-through data, and geographic targeting parameters</li><li>Website content and analytics data</li><li>E-commerce marketplace data, including Amazon Seller Central and Walmart Marketplace data</li><li>All agreements, communications, deliverables, creative briefs, brand strategy documents, brand guidelines and preparation research, trademark clearance materials involving any branding agency, marketing consultant, or creative firm retained by Defendant in connection with the development, naming, visual identity, or market positioning of the ROXBERRY brand or any Roxberry-branded product, including but not limited to any equity, revenue-sharing, or other compensation arrangements with such firms.</li><li>Financial records maintained in electronic format</li></ul>**2. Custodians.** The parties will work together to identify custodians whose ESI will be searched and collected for the purpose of production, subject to the terms of an agreed protective order. The following custodians will be relevant for Defendant:<br><br><ul><li>Andy Sauer (President)</li><li>Lauren Sauer (Co-Founder)</li><li>Dan Haugen (Co-Founder and COO)</li><li>Any marketing or advertising personnel responsible for social media, influencer engagement, or sponsored search advertising</li></ul> |

- Any personnel responsible for the trademark application and prosecution process+

The following custodians will be relevant for Plaintiff:

- Brad Davis (Founder and President)
- Braden Davis (Operations)

The parties will confer regarding additional custodians as needed.

**3. Search Terms.** The parties will confer regarding appropriate search terms for ESI collection. The parties will exchange proposed search term lists no later than May 5, 2026, and will meet and confer regarding any disputes within 7 days thereafter.

**4. Form of Production.** ESI should be produced in the following formats:

- Documents: Native format where practicable, or single-page TIFF images with extracted text and metadata in a load file (Concordance or Relativity compatible)
- Email: Native format (.msg or .eml) with metadata preserved, or single-page TIFF images with extracted text, metadata, and parent-child relationship information maintained in a load file
- Spreadsheets and databases: Native format to preserve formulas, sorting, and filtering capabilities
- Social media content: Native screenshots with URL, date, and platform metadata preserved; or PDF printouts with the same information
- Digital advertising data: Native format exports from advertising platforms (e.g., Google Ads, Meta Business Suite) where available

**5. De-Duplication.** ESI may be de-duplicated across custodians using standard hash-value de-duplication methods, provided that the producing party maintains a record of file sources/paths and/or which custodians possessed each de-duplicated document.

**6. Reasonably Accessible ESI.** ESI discovery will initially be limited to sources that are reasonably accessible. If a party believes that ESI from sources that are not reasonably accessible is necessary and/or there is any disagreement regarding reasonable accessibility, the parties will meet and confer before seeking court intervention. The requesting party bears the burden of demonstrating good cause under Fed. R. Civ. P. 26(b)(2)(B).

**7. Privilege Review.** As the parties anticipate using technology-assisted review (TAR) or similar tools for privilege review of large ESI collections, the parties will

8

| | |
|---|---|
| | seek entry of a Fed. R. Evid. 502(d) order as part of the Stipulated Protective Order to protect against waiver from inadvertent production of privileged ESI.<br><br>**8. Social Media Preservation.** Both parties shall take reasonable steps to preserve all social media posts, advertisements, influencer agreements, and related content in existence as of the date of the Complaint (February 11, 2026), including any content that has been removed from public view but remains in the party's possession, custody, or control. |
| e. | Privilege or Protection – Trial Preparation Material:<br><br>To protect against inadvertent waiver of privilege or work-product protection, the parties shall follow the framework as follows:<br><br>**1. Clawback Provision.** If a party inadvertently produces documents or information subject to a claim of attorney-client privilege or work-product protection, the producing party may assert the privilege or protection by providing written notice to the receiving party identifying the document(s) and the basis for the claim, consistent with Fed. R. Civ. P. 26(b)(5)(B). Upon receipt of such notice, the receiving party shall promptly return, sequester, or destroy the specified documents, shall not use or disclose the documents for any purpose, and shall take reasonable steps to retrieve any copies that have been distributed. The receiving party may promptly present the documents to the Court under seal for a determination of the privilege claim, but may not otherwise use the documents pending resolution. Production of any document subject to a timely clawback notice shall not constitute a waiver of any applicable privilege or protection.<br><br>**2. Fed. R. Evid. 502(d) Order.** The following will be incorporated into the Stipulated Protective Order referenced above.<br><br>**3. Privilege Logs.** Each party shall provide a privilege log identifying any documents withheld from production on the basis of attorney-client privilege and/or work-product protection. Privilege logs shall be produced within 30 days after the completion of each document production, or at such other time as the parties may agree. Privilege logs shall contain sufficient information to enable the receiving party to assess the applicability of the privilege claim, including the date, author, recipient(s), general subject matter, and basis for the privilege claim. |
| f. | Generative Artificial Intelligence:<br><br>The following provisions, shall be incorporated into the Stipulated Protective Order:<br><br>**1. No Publicly Available or Accessible AI Tools for Confidential Materials.** Neither party shall upload, input, or otherwise submit any document, information, or data designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY under the Protective Order into any publicly available or accessible (i.e., non- |

<table>
<tr><td colspan="4">licensed/enterprise based) generative artificial intelligence tool, platform, or service (including but not limited to ChatGPT, Google Gemini, Claude, Grok, Copilot, or similar publicly accessible platforms) unless the party has first confirmed in writing that: (a) the platform's terms of service prohibit the use of user inputs for model training purposes; (b) the platform provides zero data retention or equivalent data handling protections; and (c) all public sharing features have been disabled.

**2. Enterprise or Secured AI Tools.** The parties may use licensed, enterprise-grade or secured AI tools (such as contract review platforms, e-discovery platforms with integrated AI features, or AI tools deployed within a law firm's secured environment) to analyze discovery materials, provided that such tools meet the confidentiality requirements of the Protective Order and do not transmit confidential information to third parties for model training or other purposes unrelated to the litigation.

**3. Data Destruction.** Upon conclusion of this litigation (including all appeals), each party shall take reasonable steps to ensure that any confidential discovery materials uploaded to or processed through AI tools are deleted or destroyed in accordance with the data destruction provisions of the Protective Order. Each party shall certify compliance with this provision within 30 days of the conclusion of the litigation.

**4. No Waiver.** The use of AI tools to analyze discovery materials in compliance with the foregoing provisions shall not constitute a waiver of any privilege, work-product protection, or confidentiality designation.</td></tr>
</table>

**4. FACT DISCOVERY**

| | | | |
|---|---|---|---|
| a. | Fact Discovery Limitations— | | |
| | 1. | Maximum number of depositions by Plaintiff(s): | 10 |
| | 2. | Maximum number of depositions by Defendant(s): | 10 |
| | 3. | Maximum number of hours for each deposition (unless extended by agreement of parties): | 7 |
| | 4. | Maximum interrogatories by any party to any party: | 25 |
| | 5. | Maximum requests for admission by any party to any party: | 30 |
| | 6. | Maximum requests for production by any party to any party: | 30 |
| b. | Other Fact Discovery Deadlines— | | |
| | 1. | Deadline to serve written discovery: | 05/20/2026 (Phase 1) 09/01/2026 (Phase 2) |
| | 2. | Deadline for fact discovery to close: | 10/15/2026 |
| | 3. | Deadline for supplementation of disclosures and responses under Fed. R. Civ. P. 26(e) (optional): | 10/01/2026 |

5. **AMENDING OF PLEADINGS AND JOINING OF PARTIES**[4]

| a. | Deadline to file a motion to amend pleadings— | | |
|---|---|---|---|
| | 1. | Plaintiff(s): | 07/13/2026 |
| | 2. | Defendant(s): | 07/13/2026 |
| b. | Deadline to file a motion to join additional parties— | | |
| | 1. | Plaintiff(s): | 07/13/2026 |
| | 2. | Defendant(s): | 07/13/2026 |

6. **EXPERT DISCOVERY**

| a. | Filing of Notice of Designation required by DUCivR 26-1(a)(2)— | | |
|---|---|---|---|
| | 1. | Parties bearing the burden of proof: | 09/18/2026 |
| | 2. | Parties not bearing the burden of proof: | 10/16/2026 |
| b. | Service of Fed. R. Civ. P. 26(a)(2) Disclosures and Reports— | | |
| | 1. | Parties bearing the burden of proof: | 10/09/2026 |
| | 2. | Parties not bearing the burden of proof: | 10/30/2026 |
| | 3. | Rebuttal reports, if any: | |
| c. | Deadline for expert discovery to close: | | 11/30/2026 |

7. **OTHER DEADLINES AND TRIAL-RELATED INFORMATION**

| a. | Deadline for filing dispositive or potentially dispositive motions (including a motion to exclude experts when expert testimony is required to resolve the motion): | 12/18/2026 |
|---|---|---|
| b. | If the parties do not intend to file dispositive or potentially dispositive motions, a scheduling conference will be held for purposes of setting a trial date: | 12/28/2026 2:00 p.m. |
| c. | After the court issues an order on the summary judgment motion(s), if there is anything left to litigate, the court will set a scheduling hearing to set a trial date and to ask the parties if they want to mediate. If the schedule set forth herein is not extended, the parties can generally expect that trial will be set sometime during the third quarter of 2027. | |

SO ORDERED this 15th day of April 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[4] Counsel must still comply with the requirements of Fed. R. Civ. P. 15(a).