Thomas D. Briscoe (16788)
Stephen Mouritsen (16523)
Chad Pehrson (12622)
**KNH LLP**
50 W. Broadway Ste. 900
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
tbriscoe@knh.law
smouritsen@knh.law
cpehrson@knh.law

*Attorneys for Roxberry Licensing, LLC*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC, a Utah limited liability company,<br><br>   Plaintiff and Counter-Defendant,<br><br>v.<br><br>ROXBERRY NATURALS, INC., a Delaware corporation,<br><br>   Defendant and Counter-Claimant. | **ROXBERRY'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:26-cv-00126-JNP-JCB<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

Roxberry Licensing, LLC ("Roxberry") replies in Support of its Motion for Preliminary Injunction [Dkt. 16.]

## INTRODUCTION

Roxberry Naturals' Opposition [Dkt. 26] does not dispute the dispositive facts:

- **Seniority:**  Roxberry coined the word "Roxberry" in 2008;

- **Notice:** the USPTO refused to register Roxberry Naturals' word mark because it was

1

confusingly similar to Roxberry's registration. (Answer ¶ 27.);

- **Defiance:** ROXBERRY NATURALS abandoned that application but doubled down on its brand expansion anyway. (Answer ¶ 28.);

- **Scale:** Roxberry Naturals' 3,000-store footprint initiated in January 2026 is 120 times larger than Roxberry's. (Answer ¶¶ 3, 32.)

In opposition to the injunction request, Roxberry Naturals asks this Court to reward a "wait and see" strategy, arguing that Roxberry forfeited its rights by failing to move even faster than the eight days it took to issue a cease-and-desist letter following the January 13, 2026, announcement of the national expansion. This argument fails because a party seeking an injunction need only demonstrate reasonable diligence. While an "unnecessary and unexplained delay" can undermine a claim of irreparable injury, this Court has held that even a three-month window is "not unduly slow." In short, Roxberry Naturals' position gets the equities backwards: having brushed aside a prompt cease-and-desist to secure a market advantage, it cannot now claim prejudice for a hardship it knowingly invited.

**ARGUMENT**

**I. Judicial Estoppel Is Inapplicable Because Distinguishing a Movie Reference Is Not Inconsistent with Protecting a Fanciful Mark Against an Identical Standalone Word.**

Defendant's lead argument is that Plaintiff is judicially estopped from asserting that the word "ROXBERRY" is the dominant element of its mark because Plaintiff previously told the USPTO that design elements were dominant when distinguishing its mark from "NIGHT AT THE ROXBERRY." (Answer ¶ 76.) This argument fails for three independent reasons.

First, the positions are not "clearly inconsistent." Judicial estoppel requires that the party's current position be "clearly inconsistent" with a prior position. *Vehicle Mkt. Research,*

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

*Inc. v. Mitchell Int'l, Inc.*, 767 F.3d 987, 993 (10th Cir. 2014).[1] Plaintiff's prior statements were made in the specific context of distinguishing its stylized design mark from "NIGHT AT THE ROXBERRY" —a four-word mark containing a famous pop-culture reference to a film.[2] (Answer, CC ¶¶ 2–3.) In that context, the phrase "Night at the" creates a commercial impression that dilutes "ROXBERRY" as a source identifier. It was entirely consistent to argue then that design elements helped bridge that gap. Here, however, Roxberry Naturals adopted the identical word "ROXBERRY" to sell beverages. Distinguishing a brand from a movie reference is legally and linguistically distinct from distinguishing it from a direct competitor using the exact same name. The situations are not inconsistent; they are unrelated.

Second, a junior user's registration does not insulate it. Roxberry Naturals argues the USPTO's approval of its design mark (Reg. No. 7,739,892) constitutes a "governmental determination" that no confusion exists. (Answer ¶ 22.) But black-letter law holds that a junior user's registration does not immunize it from a senior user's infringement claim. *Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.,* 434 F. Supp. 3d 1227, 1241 (D. Utah 2020). Moreover, the same USPTO that approved the design mark refused Roxberry Naturals' word mark because it was confusingly similar to Plaintiff's registration. (Davis Decl. ¶ 22; Answer ¶ 27.) Roxberry Naturals cannot cherry-pick favorable USPTO actions while ignoring those that

---

[1] *See, e.g., Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (emphasizing that judicial estoppel is an "extraordinary remedy" to be invoked only when a party's "inconsistent behavior will result in a miscarriage of justice"). Judicial estoppel is intended to prevent fraud upon the court, not to penalize a trademark owner for distinguishing its mark from a third-party pop-culture reference that bears no resemblance to the Defendant's current infringement.

[2] The "Night at the Roxberry" mark (Reg. No. 7,739,892) is a multi-word phrase with a specific cultural meaning.

3

directly support Plaintiff's claim.

**Third, the estoppel argument proves too much**. If Roxberry Naturals were correct, any trademark owner who ever emphasized a logo to overcome a specific, narrow citation would effectively forfeit their word mark rights against the entire world. No court has adopted such a "gotcha" rule of trademark prosecution, and this Court should not be the first.

## II. THE OVERWHELMING LIKELIHOOD OF CONFUSION REQUIRES INJUNCTIVE RELIEF.

**A. The Identicality of the Fanciful "ROXBERRY" Mark Entitles Plaintiff to the Broadest Scope of Protection.**

The "similarity of the marks is the 'first and most important factor.'" *Equitable*, 434 F. Supp. 3d at 1246. Roxberry Naturals attempts to avoid this factor by highlighting design flourishes, but this ignores two core principles of trademark law:

1. **Identity of the Dominant Element:** Both parties use the identical word "ROXBERRY" as their primary brand identifier. When the dominant word is the same, minor design differences are legally insufficient to prevent confusion.

2. **Breadth of Protection for Fanciful Marks:** "ROXBERRY" is a coined term with no dictionary meaning. As a "fanciful" mark, it sits at the highest level of strength and is entitled to the broadest possible protection. *Id.* at 1240.

Roxberry Naturals' design-based defense fails because no amount of "graphic design" can overcome the unauthorized use of Plaintiff's unique, coined name. The real-world failure of these design differences is already documented

- **Digital/AI:** Google's AI and Grok cannot distinguish the brands. (Case Decl. ¶ 7.)

- **Professional:** A 40-year industry veteran was fooled. (Romney Decl. ¶¶ 8–12.)

- **Consumer:** Customers requested "soda coupons" from Plaintiff. (Davis Decl. ¶ 27.)

- **Commercial:** NASCAR reps assumed the parties were the same entity. (Davis Decl. ¶ 29.)

This stands in stark contrast to *Mammoth Hockey*, where "Mammoth" was found to be a weak, suggestive term and the marks differed in pronunciation and orientation. *Uyte, LLC v. Mammoth Hockey, LLC,* No. 2:25-cv-00639, 2025 WL 3872248, at *5 (D. Utah Dec. 23, 2025). Yet here, the dominant, fanciful element is identical, making confusion inevitable regardless of the logo's color or font.

**B. Roxberry Naturals' Decision to Accelerate Expansion After Multiple Warnings Constitutes Culpable Conduct.**

Roxberry Naturals ran through three red lights: a trademark search, a USPTO refusal in May 2025, and a January 2026 cease-and-desist. (Answer ¶¶ 27, 35.) By abandoning its application and "accelerating" into 2,200 Walmarts anyway, Roxberry Naturals demonstrated a "culpable" indifference to the harm. *Equitable*, 434 F. Supp. 3d at 1248. Ignoring these red lights to secure a market advantage is bad faith in a reverse confusion context.[3]

**C. The Record Establishes Systematic, Rather than Isolated, Actual Confusion.**

---

[3] As held in *Equitable*, a party who "persisted in its plan to adopt a mark after being warned of too close resemblance" demonstrates "at a minimum ... indifferen[ce] toward the harm that would likely result." 434 F. Supp. 3d at 1248 (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 721 (3d Cir. 2004)).  The intent inquiry asks "whether defendant acted carelessly or otherwise culpably in selecting the allegedly infringing name." *Equitable*, 434 F. Supp. 3d at 1248 n.122 (quoting *Altira Group LLC v. Philip Morris Cos., Inc.*, 207 F. Supp. 2d 1193, 1200 (D. Colo. 2002).  In *Mammoth Hockey*, Judge Barlow acknowledged this standard but declined to apply it because the movant had not properly presented it.  2025 WL 3872248, at *6.  In contrast, the FAC in this case expressly pleads reverse confusion. Roxberry Naturals' pattern — USPTO refusal, abandonment, cease-and-desist, accelerated expansion — constitutes careless and culpable conduct. (Davis Decl. ¶ 44, Dkt. 17); (Answer ¶¶ 27, 28, 35, Dkt. 9.)

"[A]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir. 1999). The record documents confusion across four distinct levels of the marketplace:

| Category | Evidence | Citation |
|---|---|---|
| **Consumer** | Davina Morris wrote to Roxberry: "I like your soda for kids. It's a healthier alternative. Do you have coupons please." Roxberry does not sell sodas. | Davis Decl. ¶ 27, Dkt. 17. |
| **Digital/AI** | Consumers using Google's AI Mode attribute Roxberry Naturals' product to Roxberry's brand. Grok merges both companies. Amazon returns only Roxberry Naturals' products for "Roxberry." Paid influencers use #roxberryjuice — Roxberry's trade name — to promote Roxberry Naturals' beverages. | Case Decl. ¶¶ 7–9, 16, 25, Dkt. 18. |
| **Commercial** | A NASCAR representative contacted Roxberry's franchise partner assuming the franchise was the same company selling beverages nationwide through Walmart. | Davis Decl. ¶ 29, Dkt. 17. |
| **Professional** | A 40-year supply chain veteran saw a Roxberry Naturals ad and believed Roxberry had launched a national retail product | Romney Decl. ¶¶ 8–12, Dkt. 19. |

Unlike the "isolated" anecdotes in *Mammoth Hockey*, the confusion here is systematic. This is not a handful of social media posts; it is the algorithmic erasure of Plaintiff's brand. When sophisticated AI and 40-year industry veterans cannot distinguish these brands, confusion is a market reality. In this reverse confusion context, Roxberry Naturals' massive retail footprint is already subsuming Plaintiff's eighteen years of goodwill.

**D. The Parties' Low-Cost, Health-Conscious Beverages Are Closely Related in the**

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

**Minds of Consumers.**

Roxberry Naturals argues that the difference between made-to-order smoothies and canned carbonated beverages eliminates confusion. But products need not be identical; they need only be "related in the minds of consumers." *Equitable*, 434 F. Supp. 3d at 1250 n.14 0. In *Mammoth Hockey*, Judge Barlow found the products were dissimilar because the accused infringer sold professional hockey equipment/bags at significantly higher price points. 2025 WL 3872248, at *9. But here, both parties sell inexpensive beverages to the same demographic through converging channels. (Davis Decl. ¶ 35, Dkt. 17); (Romney Decl. ¶¶ 16–18, Dkt. 19.) It is logical—and the record shows—that a consumer seeing a "Roxberry" beverage in a Walmart aisle would believe it is the retail extension of the "Roxberry" smoothie shop down the street. In a reverse confusion case, this "natural expansion" belief is the hallmark of infringement.

**E. The Inexpensive, Impulse Nature of the Products Minimizes Purchaser Care and Increases the Likelihood of Confusion.**

"Items purchased on impulse are more likely to be confused than expensive items." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 975 (10th Cir. 2002). In *Mammoth Hockey*, this factor favored the defendant because "premium, high-end hockey bags are likely to be purchased by sophisticated consumers who exercise a high degree of care." 2025 WL 3872248, at *9. Yet in this case, both parties sell low-cost, everyday fruit-and-vegetable-based beverages to consumers interested in healthy drink options.

**F. Because "ROXBERRY" Is a Fanciful, Coined Term, It Is Entitled to the Maximum Scope of Trademark Protection.**

"ROXBERRY" is a fanciful, coined term with no dictionary meaning. (Davis Decl. ¶ 4.) Such marks are "inherently distinctive" and receive the "greatest protection against

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

infringement." *Equitable*, 434 F. Supp. 3d at 1240. Plaintiff's mark possesses immense conceptual and commercial strength, bolstered by eighteen years of continuous use, multiple "Best of State" awards, and an incontestable federal registration. (Davis Decl. ¶¶ 9, 12.)

This exclusivity is a far cry from the mark in *Mammoth Hockey*, where the court found "MAMMOTH" was a "weak" suggestive term subject to extensive third-party use. 2025 WL 3872248, at *9. Here, there is zero third-party use of "ROXBERRY." As a unique source identifier for Plaintiff's brand alone, the mark is entitled to the maximum scope of protection.

**G. The Reverse Confusion Framework Strengthens Every Factor.**

The FAC expressly alleges reverse confusion, making this case dissimilar from *Equitable*, 434 F. Supp. 3d at 1248 n.13 3.  Reverse confusion occurs when a larger junior user saturates the market with a similar mark, causing consumers to believe the senior user's goods are affiliated with the junior user. *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372 (10th Cir. 1977).

The "swamping" prerequisite is satisfied by Roxberry Naturals' own admissions. In *Mammoth Hockey*, Judge Barlow denied the PI because the movant "provided no market-share or sales data or unrebutted evidence to support its claim that defendants have 'saturated the market' of hockey-related goods with the Accused Marks." 2025 WL 3872248, at *6. This case is the opposite. Roxberry Naturals admits it operates in more than 3,000 retail locations nationwide, including 2,200+ Walmart stores across all 50 states. (Answer ¶¶ 3, 32.) The ratio of Roxberry Naturals' retail presence to Roxberry's is approximately 120 to 1. The swamping is not speculative — it is both admitted and documented.  Without an injunction, Plaintiff's identity will be subsumed by Roxberry Naturals' overwhelming—and infringing—market presence.

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

### III. ROXBERRY NATURALS CANNOT REBUT THE PRESUMPTION OF IRREPARABLE HARM

#### A. The Statutory Presumption Applies and Has Not Been Rebutted

Under the 2020 Trademark Modernization Act, Roxberry is entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits. 15 U.S.C. § 1116(a). This Court recently applied this statutory presumption in a franchise trademark dispute in this District, holding that a franchisor is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" of the Lanham Act. *Cornwell Quality Tools Co. v. Woods,* No. 2:24-cv-00138, 2024 WL 2818894, at *2 (D. Utah June 3, 2024). Roxberry Naturals offers no evidence sufficient to rebut that presumption here.

#### B. Roxberry Naturals' "FAC Proves No Urgency" Argument Fails

Roxberry Naturals' contention that the filing of the FAC demonstrates a lack of urgency is a procedural red herring. Plaintiff filed the FAC for the specific purpose of curing a technical pleading deficiency—namely, to expressly allege "reverse confusion" as suggested by the very case Roxberry Naturals relies upon, *Equitable*, 434 F. Supp. 3d at 1248 n.133.  Far from showing a lack of urgency, correcting a pleading to conform to the District's specific legal standards is evidence of diligent and careful prosecution. The FAC did not withdraw, contradict, or alter a single factual allegation underpinning the pending Motion. Roxberry Naturals' attempt to characterize a procedural refinement as a lack of substantive urgency is a transparent effort to evade the merits of the Motion. The underlying emergency—the daily "swamping" of Plaintiff's brand in 2,200 Walmart stores—remains unchanged and unabated.

#### C. The Evidence Independently Establishes Irreparable Harm

**Loss of control over brand reputation**. "Even if AXA regularly receives high reviews

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

from customers, Equitable could still be tarnished by negative reviews or press lodged at AXA." *Equitable*, 434 F. Supp. 3d at 1253–54. "These kinds of losses are difficult — if not impossible — to quantify." *Id.* at 1254. Roxberry has no ability to control the quality, safety, ingredients, or consumer experience of Roxberry Naturals' products, yet those products trade on Roxberry's name and nearly two decades of goodwill. (Davis Decl. ¶ 33, Dkt. 17.)

**Franchise system destruction**. The ROXBERRY mark is the *foundation* of the franchise system. Roxberry is currently funding an active, multi-state franchise expansion campaign through a Franchise Growth Solution Agreement with Excelsior Franchise Solutions. (Davis Decl. ¶¶ 37–39, Dkt. 17.)

**Blocked retail expansion.** Craig Romney attests that retail buyers will not stock products from two different companies using the same brand name and that once shelf space is allocated, it is extremely difficult to reclaim. (Romney Decl. ¶¶ 19–22, Dkt. 19.) Unlike *Mammoth Hockey*, the harm here is documented and ongoing.

**Compounding digital confusion**. Phil Case attests that confusion is compounding daily as algorithms increasingly associate the two brands. (Case Decl. ¶ 31, Dkt. 18.)

**D. Roxberry Naturals' Laches Defense Fails Because Roxberry Acted Promptly Once Infringement and Harm Crystallized.**

Roxberry Naturals' argument that Roxberry "waited" to act is incorrect:

- **Plaintiff Acted Within Weeks:** Plaintiff first learned of Roxberry Naturals' activities on January 13, 2026, sent a demand letter on January 21, 2026, and moved for an injunction just weeks later. (Davis Decl. ¶ 42.) This is well within the "reasonable" windows established by *Equitable* (more than two weeks) and *Mammoth Hockey* (three months).

- **The Harm Crystallized in January 2026:** A trademark owner is not required to seek an injunction against an unknown startup with limited distribution. The need for emergency relief only crystallized when Roxberry Naturals expanded into 2,200+ Walmarts. (Davis Decl. ¶ 41.) Under settled Tenth Circuit authority, the laches clock does not run against a trademark owner "justifiably ignorant of the facts creating his cause of action"; it begins only when the plaintiff has "acquired knowledge of the facts creating its cause of action." *Standard Oil Co. of Colorado v. Standard Oil Co.*, 72 F.2d 524, 527 (10th Cir. 1934). Roxberry acted with "reasonable promptness" once Roxberry Naturals' January 2026 national rollout made the threat to its business concrete. *Id.* This principle is commonly known in sister circuits as the doctrine of progressive encroachment. *See, e.g.*, *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002). Roxberry was not required to play "trademark whack-a-mole" with an unknown startup; it was entitled to wait until Roxberry Naturals' dramatic expansion into 2,200 Walmarts became a brand-threatening reality.

- **Unclean Hands:** Roxberry Naturals cannot claim "prejudicial delay" when it was Roxberry Naturals that ignored a USPTO refusal and abandoned its trademark application in November 2025—only to "dramatically expand" immediately thereafter. (Answer ¶¶ 27–28.) Any prejudice Roxberry Naturals faces is a self-inflicted consequence of its decision to double down on a rejected mark.

## IV. THE BALANCE OF EQUITIES FAVORS THE SENIOR USER AND THE PUBLIC INTEREST IS SERVED BY ENJOINING WILLFUL MARKET CONFUSION.

The Tenth Circuit gives substantial weight to the disparity between a senior user's long-term investment (eighteen years) and a junior user's short-term use (sixteen months). Any

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101



hardship Roxberry Naturals faces is self-inflicted; courts afford "little weight" to harms resulting from a "calculated gamble" made despite multiple warnings. *Equitable*, 434 F. Supp. 3d at 1255. As this Court recently held, "incidental costs to the [infringer] would not override the threatened injury to [the franchisor]." *Cornwell*, 2024 WL 2818894, at *2. Roxberry Naturals cannot use its own expansion costs to justify the ongoing destruction of Plaintiff's goodwill.

Further, preventing consumer confusion serves the public interest. *Equitable*, 434 F. Supp. 3d at 1242; *Cornwell*, 2024 WL 2818894, at *2. An injunction ensures consumers—and algorithms—distinguish between a local franchise and a national brand, and is the only way to preserve the status quo.

### CONCLUSION

Roxberry spent eighteen years building its franchise on a coined, fanciful mark. Roxberry Naturals adopted that identical word, ignored a USPTO refusal, and gambled on a national rollout—causing systematic confusion that erodes Roxberry's exclusivity daily. The law does not reward such calculated infringement. Roxberry respectfully requests the Court grant its Motion.

DATED this 17th day of April, 2026.

Respectfully submitted,

**KNH LLP**

*/s/ Thomas D. Briscoe*
Thomas D. Briscoe
Stephen Mouritsen
Chad Pehrson
*Attorneys for Roxberry*

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

Pursuant to DUCivR 7-1(a)(4)(C), the undersigned counsel certifies that this Roxberry's Reply Memorandum in Support of Motion for Preliminary Injunction complies with the word-count limit set forth in that rule. This memorandum contains 3064 words, excluding the caption, signature block, certificate of service, and any exhibits or attachments. The word count was performed by the word-processing software used to prepare the document.

DATED this 17th day of April, 2026.

Respectfully submitted,

**KNH LLP**

 */s/ Thomas D. Briscoe*
Thomas D. Briscoe
Stephen Mouritsen
Chad Pehrson

*Attorneys for Roxberry*

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

1

## CERTIFICATE OF SERVICE

I hereby certify that on April 17th, 2026, I caused to be filed a true and correct copy of

the foregoing **ROXBERRY'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY**

**INJUNCTION** via the Court's CM/ECF system, which also effectuated service on all counsel of

record. The following have been served via electronic mail as follows:

Aaron T. Brogdon abrogdon@fbtgibbons.com

Samantha M. Quimby squimby@fbtgibbons.com

Vance V. VanDrake vvandrake@fbtgibbons.com


/s/ Thomas D. Briscoe