# EXHIBIT A

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

# Response to Office Action

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 87470335 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 110 |
| **MARK SECTION** | |
| **MARK FILE NAME** | https://tmng-al.uspto.gov/resting2/api/img/87470335/large |
| **LITERAL ELEMENT** | ROXBERRY JUICE CO. |
| **STANDARD CHARACTERS** | NO |
| **USPTO-GENERATED IMAGE** | NO |
| **COLOR(S) CLAIMED** (If applicable) | Color is not claimed as a feature of the mark. |
| **DESCRIPTION OF THE MARK** (and Color Location, if applicable) | The mark consists of The stylized word "Roxberry" with a partial fleur de lis next to the "y" and the words "Juice Co." under "Roxberry". |
| **EVIDENCE SECTION** | |
|    **EVIDENCE FILE NAME(S)** | |
|    **ORIGINAL PDF FILE** | evi_73185213149-20171011120745473146_._Response_to_Office_Action__Roxberry__10-11-17.pdf |
|    **CONVERTED PDF FILE(S)** (6 pages) | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0002.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0003.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0004.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0005.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0006.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0007.JPG |
| **DESCRIPTION OF EVIDENCE FILE** | The evidence contains a rebuttal on the finding of likelihood of confusion. |
| **GOODS AND/OR SERVICES SECTION (current)** | |
| **INTERNATIONAL CLASS** | 032 |
| **DESCRIPTION** | |
| Fruit and vegetable juices, drinks and smoothies; non-alcoholic beverages containing fruit juices; smoothies; organic smoothies; smoothies containing grains and oats; healthy food and fruit bowls | |
| **FILING BASIS** | Section 1(a) |
|    **FIRST USE ANYWHERE DATE** | At least as early as 01/01/2006 |
|    **FIRST USE IN COMMERCE DATE** | At least as early as 07/01/2006 |
| **GOODS AND/OR SERVICES SECTION (proposed)** | |
| **INTERNATIONAL CLASS** | 032 |
| **TRACKED TEXT DESCRIPTION** | |

~~Fruit and vegetable juices, drinks and smoothies~~; Fruit and vegetable juices, drinks, namely fruit, vegetable and grass drinks and smoothies; non-alcoholic beverages containing fruit juices; ~~smoothies~~; organic smoothies; smoothies containing grains and oats; ~~healthy food and fruit bowls~~

| FINAL DESCRIPTION | |
|---|---|
| Fruit and vegetable juices, drinks, namely fruit, vegetable and grass drinks and smoothies; non-alcoholic beverages containing fruit juices; organic smoothies; smoothies containing grains and oats | |
| **FILING BASIS** | Section 1(a) |
| **FIRST USE ANYWHERE DATE** | At least as early as 01/01/2006 |
| **FIRST USE IN COMMERCE DATE** | At least as early as 07/01/2006 |
| **STATEMENT TYPE** | "**The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application"***[for an application based on Section 1(a), Use in Commerce]* OR "**The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce prior either to the filing of the Amendment to Allege Use or expiration of the filing deadline for filing a Statement of Use**" *[for an application based on Section 1(b) Intent-to-Use]. OR* **"The attached specimen is a true copy of the specimen that was originally submitted with the application, amendment to allege use, or statement of use"** [for an illegible specimen]. |
| **SPECIMEN FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | SPU0-73185213149-20171011120745473146_._Roxberry_Juice_Co._Specimen.pdf |
| **CONVERTED PDF FILE(S) (3 pages)** | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0008.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0009.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\874\703\87470335\xml5\ROA0010.JPG |
| **SPECIMEN DESCRIPTION** | Various screen shots from Applicant's website showing the mark in use in association with the goods |
| ADDITIONAL STATEMENTS SECTION | |
| **DISCLAIMER** | No claim is made to the exclusive right to use JUICE CO. apart from the mark as shown. |
| SIGNATURE SECTION | |
| **DECLARATION SIGNATURE** | /Kara K Martin/ |
| **SIGNATORY'S NAME** | Kara K Martin |
| **SIGNATORY'S POSITION** | Attorney of Record, Utah Bar Member |
| **SIGNATORY'S PHONE NUMBER** | 8015755001 |
| **DATE SIGNED** | 10/11/2017 |
| **RESPONSE SIGNATURE** | /Kara K Martin/ |
| **SIGNATORY'S NAME** | Kara K Martin |
| **SIGNATORY'S POSITION** | Attorney of Record, Utah Bar Member |
| **SIGNATORY'S PHONE NUMBER** | 8015755001 |
| **DATE SIGNED** | 10/11/2017 |
| **AUTHORIZED SIGNATORY** | YES |
| FILING INFORMATION SECTION | |
| **SUBMIT DATE** | Wed Oct 11 12:20:57 EDT 2017 |
| **TEAS STAMP** | USPTO/ROA-XX.XXX.XXX.XXX-20171011122057713984-8747 0335-510e47db541a256b8a36 |

| | 8b32ab6e81e6a82fff55aa402 235159eb21cb644fcc898-N/A -N/A-20171011120745473146 |
|---|---|

---

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

## Response to Office Action

## To the Commissioner for Trademarks:

Application serial no. **87470335** ROXBERRY JUICE CO. (Stylized and/or with Design, see https://tmng-al.uspto.gov/resting2/api/img/87470335/large) has been amended as follows:

**EVIDENCE**
Evidence in the nature of The evidence contains a rebuttal on the finding of likelihood of confusion. has been attached.
**Original PDF file:**
evi_73185213149-20171011120745473146_._Response_to_Office_Action__Roxberry__10-11-17.pdf
**Converted PDF file(s)** ( 6 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6

**CLASSIFICATION AND LISTING OF GOODS/SERVICES**
**Applicant proposes to amend the following class of goods/services in the application:**
**Current:** Class 032 for Fruit and vegetable juices, drinks and smoothies; non-alcoholic beverages containing fruit juices; smoothies; organic smoothies; smoothies containing grains and oats; healthy food and fruit bowls
Original Filing Basis:
**Filing Basis: Section 1(a), Use in Commerce:** The applicant is using the mark in commerce, or the applicant's related company or licensee is using the mark in commerce, on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended. The mark was first used at least as early as 01/01/2006 and first used in commerce at least as early as 07/01/2006 , and is now in use in such commerce.

**Proposed:**
**Tracked Text Description:** ~~Fruit and vegetable juices, drinks and smoothies~~; Fruit and vegetable juices, drinks, namely fruit, vegetable and grass drinks and smoothies; non-alcoholic beverages containing fruit juices; ~~smoothies~~; organic smoothies; smoothies containing grains and oats; ~~healthy food and fruit bowls~~

Class 032 for Fruit and vegetable juices, drinks, namely fruit, vegetable and grass drinks and smoothies; non-alcoholic beverages containing fruit juices; organic smoothies; smoothies containing grains and oats
**Filing Basis: Section 1(a), Use in Commerce:** The applicant is using the mark in commerce, or the applicant's related company or licensee is using the mark in commerce, on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended. The mark was first used at least as early as 01/01/2006 and first used in commerce at least as early as 07/01/2006 , and is now in use in such commerce. Applicant hereby submits one(or more) specimen(s) for Class 032 . The specimen(s) submitted consists of Various screen shots from Applicant's website showing the mark in use in association with the goods .
**"The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application"***[for an application based on Section 1(a), Use in Commerce] OR* **"The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce prior either to the filing of the Amendment to Allege Use or expiration of the filing deadline for filing a Statement of Use"** *[for an application based on Section 1(b) Intent-to-Use]. OR* **"The attached specimen is a true copy of the specimen that was originally submitted with the application, amendment to allege use, or statement of use"** [for an illegible specimen].
**Original PDF file:**
SPU0-73185213149-20171011120745473146_._Roxberry_Juice_Co._Specimen.pdf
**Converted PDF file(s)** ( 3 pages)
Specimen File1

Specimen File2
Specimen File3

**ADDITIONAL STATEMENTS**
**Disclaimer**
No claim is made to the exclusive right to use JUICE CO. apart from the mark as shown.

**SIGNATURE(S)**
**Declaration Signature**

**DECLARATION: The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that, if the applicant submitted the application or allegation of use (AOU) unsigned, all statements in the application or AOU and this submission based on the signatory's own knowledge are true, and all statements in the application or AOU and this submission made on information and belief are believed to be true.**

STATEMENTS FOR UNSIGNED SECTION 1(a) APPLICATION/AOU: If the applicant filed an unsigned application under 15 U.S.C. §1051(a) or AOU under 15 U.S.C. §1051(c), the signatory additionally believes that: the applicant is the owner of the mark sought to be registered; the mark is in use in commerce and was in use in commerce as of the filing date of the application or AOU on or in connection with the goods/services/collective membership organization in the application or AOU; the original specimen(s), if applicable, shows the mark in use in commerce as of the filing date of the application or AOU on or in connection with the goods/services/collective membership organization in the application or AOU; *for a collective trademark, collective service mark, collective membership mark application, or certification mark application,* the applicant is exercising legitimate control over the use of the mark in commerce and was exercising legitimate control over the use of the mark in commerce as of the filing date of the application or AOU; *for a certification mark application,* the applicant is not engaged in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant. **To the best of the signatory's knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive.**

STATEMENTS FOR UNSIGNED SECTION 1(b)/SECTION 44 APPLICATION AND FOR SECTION 66(a) COLLECTIVE/CERTIFICATION MARK APPLICATION: If the applicant filed an unsigned application under 15 U.S.C. §§ 1051(b), 1126(d), and/or 1126(e), or filed a collective/certification mark application under 15 U.S.C. §1141f(a), the signatory additionally believes that: *for a trademark or service mark application,* the applicant is entitled to use the mark in commerce on or in connection with the goods/services specified in the application; the applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date; *for a collective trademark, collective service mark, collective membership mark, or certification mark application,* the applicant has a bona fide intention, and is entitled, to exercise legitimate control over the use of the mark in commerce and had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce as of the application filing date; the signatory is properly authorized to execute the declaration on behalf of the applicant; *for a certification mark application,* the applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant. **To the best of the signatory's knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive.**

Signature: /Kara K Martin/      Date: 10/11/2017
Signatory's Name: Kara K Martin
Signatory's Position: Attorney of Record, Utah Bar Member
Signatory's Phone Number: 8015755001

**Response Signature**
Signature: /Kara K Martin/      Date: 10/11/2017
Signatory's Name: Kara K Martin
Signatory's Position: Attorney of Record, Utah Bar Member

Signatory's Phone Number: 8015755001

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the owner/holder in this matter: (1) the owner/holder has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the owner/holder has filed a power of attorney appointing him/her in this matter; or (4) the owner's/holder's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Serial Number: 87470335
Internet Transmission Date: Wed Oct 11 12:20:57 EDT 2017
TEAS Stamp: USPTO/ROA-XX.XXX.XXX.XXX-201710111220577
13984-87470335-510e47db541a256b8a368b32a
b6e81e6a82fff55aa402235159eb21cb644fcc89
8-N/A-N/A-20171011120745473146

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:          Roxberry Licensing, LLC

Serial No.          87/470335

Filed:              May 31, 2017

Mark:               *Roxberry* JUICE CO.

International Class:  032

Trademark Attorney:  Eliana Torres

### RESPONSE TO OFFICE ACTION

On August 29, 2017, the Examining Attorney issued an office action initially refusing registration of the present application Serial No. 87470335 for the design mark which includes the words "ROXBERRY JUICE CO." and accompanying design ("the Applicant's mark"), based on an alleged likelihood of confusion with the pending application filed with a 15 U.S.C. §1051(b) Intent-to-Use filing basis ("1B filing") in the word mark "Night at the Roxberry" filed by Edible Arrangements, LLC (Serial No. 87249606) (the "cited mark"). This is our response to the August 29, 2017 office action.

Through this response, Applicant respectfully disagrees with the Section 2(d) rejection of registration based on a finding of likelihood of confusion, and argues that there is no likelihood of confusion between Applicant's mark and the cited mark.

The Examining Attorney has the initial burden to bring forth evidence to establish a likelihood of confusion. *See, e.g., In re Giovanni Food Co.,* 97 USPTQ2d at 1991 (finding the Office had not met its burden of proving likelihood of confusion where the marks were JUMPIN' JACKS for barbeque sauce and JUMPIN JACK'S for catering services, because evidence indicating that some restaurants also provide catering services and sell barbeque sauce, was not sufficient to establish catering services alone are related to barbeque sauce); *In re White Rock Distilleries Inc.*, 92 USPQ2d 1282, 1285 (TTAB 2009) (finding the Office had failed to establish that wine and vodka infused with caffeine are related goods because there was no evidence that vodka and wine emanate from a single source under a single mark or that such goods are complementary products that would be bought and used together).

Applicant respectfully contends that the burden to establish a likelihood of confusion has not been met.

### The Cited Mark was Not Found to Be Confusingly Similar to Applicant's Prior Registration.

*Roxberry Juice Co. (design) -Serial No: 87/470335*
*Response to Office Action*
*Page 2 of 6*

Applicant held a prior federal trademark registration, Registration No. 3845603, in and to the stylized design identical to Applicant's current mark for goods in class 032 ("Prior Registration). The Prior Registration was awarded registration on September 7, 2010. At the time the cited mark was filed, the Prior Registration was still an active registration and yet, no likelihood of confusion was found by the cited mark's examiner. Both the cited mark and the Prior Registration were filed for goods and services in IC 032, namely beverages, fruit juices and smoothies. The Prior Registration was cancelled on April 14, 2017, but it was not for lack of use. The trademark used for both the Prior Registration and Applicant's mark has been in ongoing and continual use in providing goods and services in IC 032 since 2006.

Due to the fact that no likelihood of confusion was found to exist between the cited mark and the Prior Registration, it seems clear that no likelihood of confusion should now be found between Applicant's mark, which is the same mark, and the cited mark. The confusion should flow both ways if confusion were actually to be found and since it did not flow against the cited mark, it should not now flow against Applicant's mark.

## I.    The Two Marks Create Distinct and Different Commercial Impressions.

Applicant's mark and the cited mark are significantly different and clearly provide different commercial impressions. Applicant's mark includes the words "Roxberry Juice Co." with a fleur de lis design element creating a significant overall appearance and sound that is different from the cited mark, which contains "Night at the" prior to Roxberry and is a word mark without any stylized design elements (see <u>Exhibit A</u> with a side by side comparison of the two marks). In Applicant's mark, the dominant portion of the mark is a highly stylized design consisting of the word "Roxberry."

Additionally, Applicant's mark and the cited marks have very different words and terms used that form the basis of the mark and bring to mind and recall different elements, goods and services. The emphasis in Applicant's mark is the word "Roxberry," while the emphasis in the cited mark is the phrase "Night at the Roxberry" which is also the title of a popular and cult classic movie from 1998 and most consumers would recall the movie as opposed to a product when viewing the cited mark as a whole. Accordingly, the differences between the use of two of the same words becomes more pronounced in view of other differences in the marks including the highly stylized design element and the addition of the words "Juice Co."

Thus, Applicant's design mark containing ROXBERRY JUICE CO. is distinctive. The addition of different words together with the recalled impression of a movie with the same name as the cited mark significantly changes the overall commercial impression. Because the commercial impressions are significantly different, Applicant contends that no likelihood of confusion exists and the Section 2(d) refusal should be withdrawn.

## II.    Examination of the Du Pont Factors.

Through a proper comparison under the d*u Pont* factors, it becomes evident that the *du Pont* factors clearly weigh in Applicant's favor. Not all the *du Pont* factors are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending

*Roxberry Juice Co. (design)* -*Serial No: 87/470335*
*Response to Office Action*
*Page 3 of 6*

upon the evidence of record. *See, e.g., Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d at 1355, 98 USPQ2d at 1260; *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567. As will be shown in the arguments and evidence below, it seems impossible that the *du Pont* factors would tip the scale in favor of anything but registration.

Under the first *du Pont* factor, the Examining Attorney must ultimately show that the marks are sufficiently similar in their *overall* commercial impressions to create a likelihood of confusion among consumers. *Midwestern Pet Foods, Inc., v. Societe Des Produits Nestle S.A.*, 685 F.3d 1046, 1053, 103 U.S.P.Q.2d 1435, 1440 (Fed. Cir. 2012) ("the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but whether they are sufficiently similar in their overall commercial impression."); *see also United Global Media Group, Inc. v. Bonnie Tseng*, No. 91200786 (T.T.A.B. 2014) (citing *San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.*, 565 F.2d 683, 196 U.S.P.Q. 1, 3 (C.C.P.A. 1977) ("The test is … whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods or services offered under the respective marks is likely to result."). As thoroughly set forth above, the commercial impression between the two marks is very different weighing this *du Pont* factor in Applicant's favor.

While both Applicant's mark and the cited mark use the shared word "Roxberry," such use of the same word does not preclude registration and does not automatically mean that the public will be confused when confronted with both marks and their respective goods. Both marks must be considered in the overall impression. As discussed above, the very likely impression from the cited mark, which is entirely a word mark without any stylized elements, is a movie and would not lead consumers to believe that goods provided under a distinctively different Applicant's stylized design mark emanated from the same source. Despite the fact that the terms are different, even if they were considered a shared term, it is well established that two marks can have terms in common, and not be confusingly similar. *See, e.g., Citigroup Inc. v. Capital City Bank Group, Inc.,* 637 F.3d 1344, 1356, 98 U.S.P.Q.2d 1253, 1261 (Fed. Cir. 2011) (CAPITAL CITY BANK and CITIBANK not confusingly similar); *Shen Mfg. Co. v. Ritz Hotel Ltd.,* 393 F.3d 1238, 1245, 73 U.S.P.Q.2d 1350, 1356-57 (Fed. Cir. 2004) (THE RITZ KIDS and RITZ not confusingly similar); *Safer, Inc. v. OMS Invs., Inc.,* 94 U.S.P.Q.2d 1031, 1044-45 (TTAB 2010) (DEER-B-GON and DEER AWAY not confusingly similar); *In re Farm Fresh Catfish Co.,* 231 U.S.P.Q. 495, 495-96 (TTAB 1986) (CATFISH BOBBERS and BOBBERS not confusingly similar); *in re Shawnee Milling Co.*, 225 U.S.P.Q. 747, 749 (TTAB 1985) (GOLDEN CRUST and ADOLPH'S GOLDEN CRUST not confusingly similar).

Thus, keeping the overall commercial impression at the forefront of the comparison is essential because the outcome cannot be determined solely by a shared word. *See* T.M.E.P. § 1207.01(b)(iii).

Moreover, the one term that is similar between the two marks is not the dominant feature of both marks, which further reduces any potential for a likelihood of confusion. For example, in *Citigroup Inc. v. Capital City Bank Group, Inc.*, the Federal Circuit affirmed a TTAB decision that found the marks CITIBANK and CAPITAL CITY BANK not to be confusingly similar. 637

*Roxberry Juice Co. (design) -Serial No: 87/470335*
*Response to Office Action*
*Page 4 of 6*

F.3d 1344, 98 U.S.P.Q.2d 1253 (Fed. Cir. 2011). Citing the TTAB's decision, the court stated that the term "capital" was a dominant feature because it appeared first in the applicant's mark and gave it a distinct look and commercial impression from the registered mark CITIBANK. *Id.* at 1351, 98 U.S.P.Q.2d at 1259. Though the services in that case were "essentially identical," the court found the different commercial impressions of the marks to be dispositive. *Id.* at 1356, 98 U.S.P.Q.2d at 1263. The dominant feature in the cited mark is arguably "Night" or "Night at the" indicating that the goods or services emanating from the mark relate to night or nightclubs.

The T.T.A.B. has consistently followed the principle that marks with a word in common will still avoid a likelihood of confusion if they convey different commercial impressions. In *Purl NYC v. Rodgers*, the board found that the applicant's mark PURL DIVA was not confusingly similar to the registered mark PURL, though both were used on knitting/yarn stores. USPTO-91167331 (T.T.A.B. 2008) [non- precedential]. There, the board reasoned that adding "diva" in the applicant's mark gave it a very different commercial impression from the registered mark because the term is arbitrary when used for knitting and yarn stores. *Id.* at *31-32. Moreover, the board made its decision based entirely on a comparison of the marks, finding that the differences "outweigh[ed] the fact that opposer's and applicant's retail store services must be deemed to be legally identical, and to be rendered in the same channels of trade to the same classes of consumers." *Id.* at *33.

Applying the same principle, in *Consolidated Artists BV v. Camille Beckman Corp.*, the TTAB found that the registered mark MANGO was not confusingly similar to the applicant's mark MANGO BEACH. USPTO-91188863 (T.T.A.B. 2012) [non-precedential]. There, the board reasoned that the term "beach" made the applicant's mark sound like a location rather than a fruit, thereby taking the emphasis off of the shared term "mango." *Id.* at *14. As in *Purl NYC*, the conclusion in *Consolidated Artists* was reached even though the shared word was the first term in each mark.

Here, the marks being compared are: Roxberry Juice Co. (with stylized design component), and, the cited mark: Night at the Roxberry (word mark). It should first be noted that Applicant's mark is distinct in appearance from the cited mark in that it is part of a full design mark. The difference becomes more pronounced where the cited mark includes additional words, which together with the other differences clearly signals consumers that the marks are distinct and not affiliated.

The comparison of Applicant's mark with the cited mark is very analogous to the cases cited above. In appearance, Applicant's mark with a stylized design component differs from the cited mark which is a word mark without any stylized or design components and contains additional words. Importantly, the additional words in the cited marks appear <u>at the beginning</u>, and therefore form the dominant portion of the cited mark, and therefore draw dominant attention to that portion of the mark ("Night" and "Night at the"). The addition of these words is meant to draw consumers attention to the additional element making the marks more distinct. Applicant's mark contains additional words, but they are in a smaller font below the dominant portion of the mark and are not meant to draw dominant attention, but to clarify the services and goods offered through the mark.

*Roxberry Juice Co. (design) -Serial No: 87/470335*
*Response to Office Action*
*Page 5 of 6*

This distinction is emphasized by the fact that an overarching and dominant part of Applicant's mark is the use of stylized fonts and design elements.

Applicant's mark should not be "dissected" to compare individual parts to the cited mark in contravention of the "anti-dissection rule." It is the commercial impression that the mark as a whole makes on the average reasonable prudent buyer and not the parts thereof, that is important. *See, e.g., Estate of P.D. Beckwith, Inc. v. Commissioner of Patents*, 252 U.S. 538, 345-46 (1920). Moreover, because marks are to be compared in their entireties, even if the "dominant" parts of the conflicting marks are the identical words, the marks as a whole may not be confusingly similar. *See, e.g., King of the Mountain Sports, Inc. v. Chrysler Corp.,* 185 F.3d 1084 (10th Cir. 1999).

To take as example, and in light of the evidence and arguments presented in this response, I view the following *du Pont* factors as clearly weighted in Applicant's favor.

- There is dissimilarity of established, likely-to-continue trade channels.
- The conditions under which and buyers to whom sales are made are significantly different.
- The fame of the prior mark (the cited mark has not been put into actual use and so the fame element can only be examined based on Applicant's prior ongoing and continuous use since 2006).
- The nature and extent of any actual confusion. Due to the fact that the cited mark is a 1B filing, there is no evidence of any actual confusion.
- The potential confusion is clearly de minimis, if it exists at all.

Collectively, the *du Pont* factors do not favor a finding of likelihood of confusion and therefore the refusal should be reconsidered and withdrawn and Applicant's mark should move to publication.

**III.    Conclusion**

Based on the foregoing reasons, Applicant respectfully requests the Section 2(d) refusal be withdrawn at the present application be approved for publication.

Should you need additional information or to discuss the issues raised in this response, I invite you to please contact me at your convenience at 801-575-5001 or kmartin@fblglaw.com.

Sincerely,

*Kara K. Martin*
Kara K. Martin
Attorney for Applicant

*Roxberry Juice Co. (design) -Serial No: 87/470335*
*Response to Office Action*
*Page 6 of 6*

**Exhibit A**
**Applicant's Mark and the Cited Mark**

| Applicant's Mark: | Cited Mark: |
|---|---|
| | NIGHT AT THE ROXBERRY |