Thomas D. Briscoe (16788)
Stephen C. Mouritsen (16523)
Chad S. Pehrson (12622)
**KNH LLP**
50 W. Broadway, 9th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
tbriscoe@knh.law
smouritsen@knh.law
cpehrson@knh.law

*Attorneys for Plaintiff and Counter-Defendant Roxberry Licensing, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC, a Utah limited liability company, <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> ROXBERRY NATURALS, INC., a Delaware corporation, <br><br> Defendant and Counter-Claimant. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO QUASH PLAINTIFF'S SUBPOENA TO WALMART INC.** <br><br> Case No. 2:26-cv-00126-JNP-JCB <br><br> Chief Judge Jill N. Parrish <br><br> Magistrate Judge Jared C. Bennett |

### INTRODUCTION

Defendant moves to quash a subpoena that has not been served, to a non-party that has not objected, on grounds no court in this Circuit has adopted. The motion fails on four independent grounds, any one of which is dispositive.

**First**, Defendant lacks standing. The Subpoena seeks Walmart's records of Walmart's own conduct — Walmart's point-of-sale sell-through data, Walmart's internal planograms, Walmart's

1

vendor-onboarding trademark records, Walmart's internal deliberations regarding this litigation, and Walmart's personnel identifications. Defendant has no personal right or privilege in any of these records.

**Second**, no Rule 45 sequencing rule requires party discovery first. This Court has expressly held that no such rule exists, as has Magistrate Judge Oberg in two recent decisions in this District. The Tenth Circuit has likewise declined to read into Rule 45 procedural prerequisites the text does not contain.

**Third**, Defendant's showing is conclusory. Under this Court's framework in *Route App, Inc. v. Heuberger*, 2024 WL 309748 (D. Utah Jan. 26, 2024) (Bennett, M.J.), a movant's "lack of specificity is fatal to [a] motion to quash." *Id.* at *4. Defendant identifies no specific burden, supplies no declaration from Walmart, and concedes in footnote 1 of its motion that it "has not yet searched for or gathered responsive documents" — an admission that its possession-based arguments are speculative.

**Fourth**, the Subpoena is, on its face, narrowly tailored to Walmart-unique information. Plaintiff has expressly excluded categories obtainable from Defendant, has offered Walmart a declaration-in-lieu-of-deposition option, and has invited Walmart to propose further narrowing. The Subpoena's design reflects the practice this Court identified in *Good Clean Love, Inc. v. Epoch NE Corp.*, 2025 WL 55242 (D. Utah Jan. 9, 2025) (Bennett, M.J.), as the better practice in non-party discovery.

The motion should be denied.

## BACKGROUND

On May 5, 2026, Plaintiff served notice of its intent to issue a Rule 45 subpoena (the

"**Subpoena**") to Walmart Inc., a Utah-registered entity whose agent for service is located in Midvale, Utah. (Dkt. 39-1.) The Subpoena seeks documents in five categories and identifies seven deposition topics, with a return date of May 22, 2026 for documents and a deposition date of June 2, 2026. (*Id.* at 5.)

The Subpoena's design reflects deliberate effort to minimize burden on Walmart and to confine the requests to material Walmart alone possesses. Each Schedule A category is expressly limited to records Walmart "uniquely maintain[s]" or that Plaintiff "cannot reasonably obtain through party discovery from [Defendant]." (*Id.* at 6.) Plaintiff "intentionally excluded categories obtainable from Defendant (such as executed vendor agreements, vendor launch communications, and two-sided correspondence)." (*Id.*) The Subpoena also offers Walmart an alternative to the Rule 30(b)(6) deposition: a sworn declaration on the same topics, executed under 28 U.S.C. § 1746, using a template Plaintiff supplied as Schedule C. (*Id.* at 5–6.) The Subpoena expressly invites Walmart to "discuss the scope, timing, or logistics of compliance" with Plaintiff's counsel. (*Id.* at 7.)

Plaintiff has not yet served the Subpoena on Walmart. Walmart has not filed any objection. Walmart has not communicated with Plaintiff's counsel. *See* Briscoe Decl. ¶¶ 4–6.

On May 9, 2026, Defendant filed the present Motion to Quash. (Dkt. 39.) Defendant argues that (i) it has standing because the Subpoena seeks information about Defendant's products; (ii) Rule 45 requires party discovery first; and (iii) the Subpoena seeks information Defendant possesses. (Mot. at 5–11.) Defendant supplies no declaration from Walmart and no factual showing of burden. Defendant concedes in footnote 1 that it "has not yet searched for or gathered responsive documents." (*Id.* at 9 n.1.)

This case is on an accelerated discovery track. An evidentiary hearing on Plaintiff's Motion for Preliminary Injunction is set for June 5, 2026. (Dkt. 32.) Phase 1 discovery closes on June 13, 2026. (Dkt. 29 § 3(c).) The Subpoena was issued under the Scheduling Order's accelerated discovery framework. (Dkt. 39-1 at 6–7.)

**ARGUMENT**

## I.  DEFENDANT LACKS STANDING TO QUASH A SUBPOENA SEEKING WALMART'S RECORDS OF WALMART'S CONDUCT.

A party seeking to quash a Rule 45 subpoena directed to a non-party "a party generally does not have standing to object to a subpoena issued to a third party, unless the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena." *Origins Tech, Inc. v. Oak Equity Holdings II, LLC*, 2025 WL 1030146, at *1 (D. Utah Apr. 7, 2025) (Oberg, M.J.) (citation omitted); *accord Innovasis, Inc. v. Curiteva, Inc.*, 2024 WL 3759793, at *2 (D. Utah Aug. 9, 2024) (Pead, M.J.) ("Generally, a party does not have standing to object to a subpoena issued to a third party, unless the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena."); *Route App, Inc. v. Heuberger*, 2024 WL 309748, at *2 (D. Utah Jan. 26, 2024) (Bennett, M.J.) (same).

The "personal right or privilege" inquiry is exacting and category-specific. In every case Defendant cites, standing turned on the objecting party's interest in *its own records* held by a third-party custodian:

- In *Innovasis*, the defendant established standing to challenge subpoenas to its *customers* because the subpoenas sought *the defendant's own* "contracts, agreements, and/or purchase orders" and *the defendant's own* manufacturing process and communications. 2024 WL 3759793, at *1. The defendant's "privacy interest in [its] personal financial affairs" gave it standing. *Id.* at *2 (quoting *Ennis v. Alder Prot. Holdings, LLC*, 2022 WL 4290099, at *2 (D. Utah Sept. 16, 2022) (Pead, M.J.)).

4

- In *US Magnesium, LLC v. ATI Titanium LLC*, 2020 WL 12847147 (D. Utah May 22, 2020) (Warner, C.M.J.), the plaintiff and a non-party affiliate established standing to challenge subpoenas to *their banks and accountants* because the subpoenas sought "personal financial and business documents of Plaintiff and Renco[.]" *Id.* at *4. The records belonged to the objecting parties; the third parties were mere custodians.

- In *Stewart v. Mitchell Transport*, 2002 WL 1558210 (D. Kan. July 11, 2002) (Waxse, M.J.), the defendant established standing to challenge subpoenas to *its own insurers* because the subpoenas sought "client lists, routes of travel, and net worth" — proprietary information belonging to the defendant. *Id.* at *2. The driver-plaintiff likewise had standing to challenge subpoenas to *his former employers* because the subpoenas sought his "personnel files, job applications, and performance evaluations" — his own records. *Id.*

In each case, the dispositive fact was that the third-party recipient was a mere custodian of the objecting party's own records. None stands for the proposition Defendant urges here: that a party has standing to quash a subpoena directed to a third party simply because the subpoena concerns subject matter the party considers commercially sensitive. The standing inquiry asks whose records are sought, not what subject matter the records discuss.

That distinction is dispositive in this case. The Subpoena seeks five categories of material, all of which are Walmart's records of Walmart's own conduct:

- **Walmart's consumer-level point-of-sale data.** Schedule A ¶ 1 seeks "consumer sell-through data (units scanned at point-of-sale) and consumer-level returns" — data Walmart's registers generate, not data Defendant ever sees in this form.

- **Walmart's internal merchandising records.** Schedule A ¶¶ 9–10 seek "planograms, shelf-allocation documents, and internal category-assignment records" — Walmart-created internal documents reflecting Walmart's shelf-allocation decisions.

- **Walmart's internal trademark-clearance records.** Schedule A ¶ 5 seeks "Walmart's vendor-onboarding trademark and brand-clearance process," including any "trademark search, prior-existing-mark review, brand-clearance analysis, or risk assessment performed or considered" by Walmart — Walmart's internal due diligence on Defendant.

- **Walmart's internal deliberations about this case.** Schedule A ¶ 7 seeks "Walmart's internal response to, review of, or consideration of [this] action" —

5

Walmart's own deliberations as an institution.

- **Walmart's personnel identifications.** Schedule A ¶ 11 seeks an organizational chart of "Walmart employees … who approved the onboarding of Roxberry Naturals as a vendor" — Walmart's personnel records.

These are Walmart's documents reflecting Walmart's institutional conduct — not Defendant's records held by Walmart as custodian. Plaintiff has expressly excluded categories that *would* implicate Defendant's records, including "executed vendor agreements, vendor launch communications, and two-sided correspondence." Subpoena, Scope Limitation (Dkt. 39-1 at 6). What remains is the category *Innovasis*, *US Magnesium*, *Ennis*, and *Stewart* never reached: a third party's own institutional records.

Even were Defendant to claim standing, this Court has held that "[e]ven where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden and on the grounds of over[ ]br[eadth] and relevance." *Route App, Inc. v. Heuberger,* No. 2:22-CV-00291-TS-JCB, 2024 WL 309748, at *2 (D. Utah Jan. 26, 2024).* The objections Rule 45 reserves to the subpoena recipient — relevance, breadth, and burden on Walmart — are not Defendant's to raise. Walmart has filed no objection. The party with the personal right or privilege in these records has not invoked it.

Defendant therefore lacks standing, and the motion may be denied on that ground alone.

## II.  NO RULE 45 SEQUENCING REQUIREMENT MANDATES PARTY DISCOVERY FIRST.

Defendant's central argument is that "Plaintiff must first pursue party discovery before serving the Subpoena." (Mot. at 9.) That is not the law in this Circuit, and it is not the law in this District. Three recent decisions — two from this District and one from the Tenth Circuit — squarely reject the sequencing rule Defendant urges.

6

**A. This District has rejected the very argument Defendant raises here.**

In *Origins Tech, Inc. v. Oak Equity Holdings II, LLC*, the defendants moved to quash a non-party subpoena on the ground that the plaintiffs "could otherwise seek [the documents] directly from Defendants during discovery." 2025 WL 1030146, at *2 (D. Utah Apr. 7, 2025) (Oberg, M.J.). The magistrate judge denied the motion, holding: "[W]hile Defendants insist Plaintiffs seek information through the subpoena which they could seek directly from Defendants, there is no requirement that a party seek discovery from another party before serving a nonparty subpoena." *Id.* at *3 (citing *Env't Dimensions, Inc. v. Energysolutions Gov't Grp., Inc.*, 2019 WL 1406959, at *4 (D.N.M. Mar. 28, 2019) ("there is no absolute rule" prohibiting the practice)).

**B. This Court has reached the same conclusion.**

This Court reached the same result in *Good Clean Love, Inc. v. Epoch NE Corp.*, 2025 WL 55242 (D. Utah Jan. 9, 2025) (Bennett, M.J.). There, a Rule 45 subpoena recipient sought sanctions against the requesting party under Rule 45(d)(1) on the theory that the requesting party had failed to seek discovery from the litigating parties first. *Id.* at *3. This Court denied the motion, observing that the recipient "fail[ed] to cite, and th[e] court c[ould] not find, a single case sanctioning a party under Rule 45(d)(1) for issuing a subpoena before seeking discovery from other litigating parties." *Id.* at *4. The Court further observed that "courts around the nation have … found that subpoenaing non-parties before exhausting discovery from litigating parties is an acceptable practice." *Id.* at *3–4.

Plaintiff recognizes that this Court, in *Good Clean Love*, also observed that "the practice in civil discovery should be that parties to litigation first seek discovery from other parties before using Rule 45 subpoenas." *Id.* at *3. Plaintiff has heeded that guidance. As Section IV

demonstrates, Plaintiff drafted the Subpoena to address precisely the concern this Court articulated: each Schedule A category is expressly limited to material "uniquely maintained by Walmart" or material "Plaintiff cannot reasonably obtain through party discovery from [Defendant]." Subpoena, Scope Limitation (Dkt. 39-1 at 6). Plaintiff "intentionally excluded categories obtainable from Defendant (such as executed vendor agreements, vendor launch communications, and two-sided correspondence)." *Id.* And Plaintiff offered Walmart a declaration-in-lieu-of-deposition option — a measure designed to "minimize the burden on Walmart" consistent with Rule 45(d)(1)'s mandate that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); *see* Subpoena (Dkt. 39-1 at 5–6); *id.* Sched. C. The Subpoena's facial design reflects the better practice this Court identified — not the conduct Defendant characterizes.

### C. The Tenth Circuit has declined to read sequencing requirements into Rule 45.

The Tenth Circuit's approach to Rule 45 reinforces the holdings of *Origins Tech* and *Good Clean Love*. In *El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161 (10th Cir. 2016), Judge Gorsuch, writing for the panel, rejected an attempt to layer onto Rule 45 a procedural prerequisite the text does not contain. *Id.* at 1162–63. Though the specific argument in *El Encanto* concerned whether a non-party document subpoena must be accompanied by a deposition, *id.* at 1162, the Court's reasoning is general: Rule 45 "is supposed to be administered by courts and parties to ensure the speedy and inexpensive resolution of all cases" and the 1991 amendments to Rule 45 were specifically adopted to "spar[e] everyone the necessity of a needless deposition" by allowing document subpoenas to stand alone. *Id.* at 1163 (alterations in original) (quoting Fed. R. Civ. P.

45(a)(1) advisory committee's note to 1991 amendment). The Court declined to require "the pointless process" the opposing party demanded. *Id.* The same principle applies here: Rule 45 contains no sequencing requirement on its face, and the Tenth Circuit has not been hospitable to attempts to graft one on.

> **D. Defendant cites no Tenth Circuit or District of Utah authority for the rule it asks this Court to adopt, and the three out-of-circuit cases on which it does rely apply a framework that has no application here.**

Defendant's three cited cases are all out-of-circuit and out-of-District. *Echostar Commc'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391 (D. Colo. 1998); *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, 2005 WL 2045818 (W.D. Mich. Aug. 24, 2005); *Taro Pharms. U.S.A., Inc. v. Perrigo Israel Pharms. Ltd.*, 2015 WL 7737310 (D. Del. Dec. 1, 2015). None is binding here. More fundamentally, all three apply the same multi-step trade-secret framework under Rule 45(c)(3)(B) — a framework whose threshold trigger is absent from this case.

The framework operates as follows: a non-party recipient first carries the burden of establishing that the subpoenaed information constitutes a trade secret and that its disclosure would cause harm. *Taro Pharms.*, 2015 WL 7737310, at *2 ("In resisting the discovery of a trade secret, a party must first demonstrate that the information sought 'is a trade secret and that disclosure of the secret might be harmful.'" (citation omitted)); *Spartanburg*, 2005 WL 2045818, at *3 ("The burden of demonstrating that [the documents are confidential and disclosure would cause harm] rests with [the non-party recipient]."). Only if the non-party carries that initial burden does the framework shift to evaluate the requesting party's "substantial need" or "necessity," within which courts consider alternative sources of proof. *Taro Pharms.*, 2015 WL 7737310, at *3; *Spartanburg*, 2005 WL 2045818, at *5; *Echostar*, 180 F.R.D. at 394–95.

In each of Defendant's three cases, the *non-party recipient itself* moved to quash and successfully invoked trade-secret protection at step one. In *Echostar*, Cox Cable and GE Americom — the non-party recipients — moved to quash on the basis that the subpoenas would compel disclosure of their "trade secret information." 180 F.R.D. at 393. In *Spartanburg*, Steelcase — the non-party recipient — moved to quash on the basis that the subpoena sought "trade secrets" and "confidential commercial information." 2005 WL 2045818, at *2. In *Taro Pharms.*, Hill Dermaceuticals — the non-party recipient — moved to quash on the basis that disclosure would place "trade secrets and other highly confidential information in the hands of its direct competitor." 2015 WL 7737310, at *1. The language Defendant excerpts in each case is step-three need-balancing language that the courts reached only because the non-parties carried the threshold step-one trade-secret showing.

That threshold is absent here. Walmart — the party with whatever trade-secret or confidentiality interest might exist in its own records — has not invoked Rule 45(c)(3)(B). Walmart has not appeared. Walmart has not objected. Walmart has not claimed trade-secret status for any category sought. Defendant cannot invoke a framework whose precondition Defendant cannot satisfy. Defendant is not Walmart's trade-secret protector, and Defendant points to no Walmart record it identifies as a trade secret. The need-balancing language Defendant excerpts is simply inapplicable to a motion brought by a party who lacks both the standing to invoke Rule 45(c)(3)(B) and the factual predicate to invoke its framework.

The factual posture of each case also distinguishes it from ours. *Echostar* involved a satellite-television-contract plaintiff who had "barely commenced discovery" against the defendant when it served broad industry-information subpoenas on competitors. 180 F.R.D. at 395.

*Spartanburg* involved an antitrust defendant whose subpoena requested decades of competitor business-planning records and as to which the defendant had "made [no] attempt to obtain the requested information from any source other than [the competitor]." 2005 WL 2045818, at *5. *Taro Pharms.* involved a patent defendant who had "in its possession numerous [other] sources relevant to proving the same legal theory" — twenty-two prior art references — and sought to "supplement" with a non-party competitor's trade secrets. 2015 WL 7737310, at *3.

The Subpoena here bears no resemblance to those subpoenas. Plaintiff is not at the outset of discovery; the operative record includes the FAC, Defendant's Answer and Counterclaim, the PI Motion, three supporting declarations (Dkts. 17–19), and the Reply (Dkt. 30). The Scope Limitation excludes "executed vendor agreements, vendor launch communications, and two-sided correspondence" — precisely the categories *Spartanburg* and *Echostar* found should have been sought through party discovery first. (Dkt. 39-1 at 6.) And the Subpoena requests Walmart's *own institutional records* (sell-through scans, planograms, trademark-clearance documents, internal-deliberation materials, personnel identifications) — not duplicative material available "from members of the plaintiff class or from other individuals," *Spartanburg*, 2005 WL 2045818, at *5, and not supplemental material that simply backstops a theory already supported by twenty-two other sources, *Taro Pharms.*, 2015 WL 7737310, at *3.

Even if Defendant's out-of-circuit decisions were binding — they are not — they would not support Defendant's position.

The procedural framework confirms the point. The Federal Rules expressly authorize discovery after the Rule 26(f) conference, Fed. R. Civ. P. 26(d)(1), and this Court's Scheduling Order authorizes accelerated Phase 1 discovery in light of the June 5, 2026 evidentiary hearing on

Plaintiff's Motion for Preliminary Injunction. (Dkt. 29 § 3(c); Dkt. 32.) Nothing in the Federal Rules, the Local Rules, or this Court's Scheduling Order conditions Rule 45 discovery on prior exhaustion of party discovery. Defendant's party-first theory should be rejected.

## III. DEFENDANT'S CONCLUSORY SHOWING DOES NOT SATISFY ITS BURDEN.

Even if Defendant had standing and even if a party-first rule existed, Defendant's motion would still fail because Defendant has not carried its burden under Rule 45.

This Court's framework in *Route App, Inc. v. Heuberger* controls. There, the movant had standing — this Court so held — but the motion to quash was nevertheless denied because "Mr. Heuberger's lack of specificity is fatal to his motion to quash." 2024 WL 309748, at *4 (D. Utah Jan. 26, 2024) (Bennett, M.J.). The movant in *Route App* asserted that disclosure would cause "serious injury to [his] business prospects," would "pose an absolute threat to the privacy and security" of his apps, and would compromise "confidential and proprietary data." *Id.* This Court found those assertions "all conclusory and … insufficient to carry his burden[.]" *Id.* The movant's failure to provide a "clearly defined and serious injury that might result from disclosure" was fatal. *Id.*

Defendant's showing here is materially weaker than the showing this Court rejected in *Route App*. Defendant's Motion offers no declaration, no specific factual showing of burden, no description of any commercial relationship that would be impaired, and no identification of any specific document whose disclosure would cause harm. Instead, Defendant relies on three categories of assertion, each of which is conclusory:

**First**, Defendant asserts that the Subpoena "either intentionally or inadvertently" will "impose [an] undue burden" on Walmart and will "strain Defendant's retail relationships." (Mot.

at 5, 8.) The burden under Rule 45(d)(3)(A)(iv) protects the *subpoena recipient*, not the objecting party's commercial relationships. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *Route App*, 2024 WL 309748, at *2 ("[E]ven where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden …." (citation omitted)). Walmart has not invoked any burden objection. And Defendant identifies no facts — no declaration, no contract provision, no specific business consequence — supporting its assertion that responding to a subpoena requesting Walmart's institutional records would strain the parties' relationship.

**Second**, Defendant asserts that the responsive documents are "likely to be in Defendant's possession," accompanied by a request-by-request table speculating about why Defendant might possess each category. (Mot. at 9–11.) Defendant then concedes in footnote 1: "Plaintiff has not served documents requests on Defendant, and Defendant has not yet had the opportunity within the short objection window to undertake a search for such information. Accordingly, Defendant has not yet searched for or gathered responsive documents." (*Id.* at 9 n.1.) That concession is dispositive on this prong of the motion: Defendant cannot establish that documents are duplicative of materials it possesses when it has not looked for them. Defendant's possession-based arguments are speculation, not evidence.

**Third**, Defendant's own table contradicts itself in multiple rows. For RFP 1 (sell-through data and consumer returns), Defendant asserts it "possesses sales, shipment, and performance data regarding its products sold through Walmart." But "sell-through" data — units scanned at Walmart's point-of-sale registers — is data Walmart generates at the consumer-facing register; Defendant has, at most, its sales-into-Walmart shipment data, which is categorically different. For

RFPs 7–8 (Walmart's internal response to this litigation), Defendant simultaneously asserts that responsive communications "would fall within this category" and that "Walmart's internal communications" "have no clear relevance" — claims that cannot both be true. (Mot. at 10.) Internal contradictions in the movant's own showing fall short of the specificity *Route App* requires.

Under *Route App*, that is the end of the analysis. A movant who fails to make a "clearly defined and serious" showing of harm cannot satisfy its burden under Rule 45. Defendant's lack of specificity is fatal.

## IV.  THE SUBPOENA IS NARROWLY TAILORED TO WALMART-UNIQUE INFORMATION ON ITS FACE.

The Subpoena is expressly limited, in its own text, to material that is "uniquely maintained by Walmart" or that "Plaintiff cannot reasonably obtain through party discovery from Roxberry Naturals, Inc." (Dkt. 39-1 at 6.) That Scope Limitation paragraph then identifies the categories Plaintiff "intentionally excluded": "executed vendor agreements, vendor launch communications, and two-sided correspondence." (*Id.*) The Subpoena focuses on Walmart's "internal retail data, internal deliberations, customer interactions, and merchandising practices." (*Id.*) Each Schedule A section reinforces the limitation in its specific context. (*See, e.g., id.* Sched. A § I (consumer-facing retail data "uniquely maintained by Walmart and not reflected in vendor shipment records"); *id.* § III (limited to materials "uniquely in the possession of Walmart" and "not seek[ing] materials created or supplied by Roxberry Naturals, Inc.").) The Subpoena further invites Walmart to propose narrowing and offers a declaration-in-lieu-of-deposition option. (*Id.* at 6–7.)

The Walmart-unique character of the documents sought is evident on the face of each category:

| Subpoena Request | What Walmart Uniquely Has | Why Defendant Cannot Provide It |
|---|---|---|
| **Sell-through data (Sched. A ¶ 1)** | Consumer point-of-sale scans at Walmart registers; consumer-level returns | Defendant's records show shipments *into* Walmart; consumer-facing sell-through is generated at Walmart's registers, not Defendant's |
| **Planograms and shelf placement (Sched. A ¶¶ 9–10)** | Walmart-created internal merchandising documents; category-assignment labels Walmart applies (e.g., "kids' beverages" vs. "juice") | Defendant did not create these documents and does not control category assignment |
| **Walmart's trademark-clearance records (Sched. A ¶ 5)** | Walmart's internal vendor-onboarding due diligence on Defendant's mark | Defendant was never given Walmart's internal clearance analysis; only Walmart created it |
| **Walmart's internal litigation deliberations (Sched. A ¶ 7)** | Walmart's institutional review and risk assessment of this action | Defendant is not a participant in Walmart's internal deliberations |
| **Walmart's sponsored-search data (Sched. A ¶ 4)** | Walmart Connect platform data on keyword bids targeting "Roxberry" | Defendant does not maintain Walmart's advertising-platform records |

These are not categories Defendant can supply. They are categories Walmart alone holds. The Subpoena's Scope Limitation is not a litigation-paper assertion — it is a structural design choice reflected in every Schedule A category and reinforced by Schedule C's declaration-in-lieu option, which permits Walmart to respond by sworn declaration rather than deposition if it prefers.

Defendant's central rhetorical move — that the Subpoena seeks information about "Defendant's products" — is unresponsive. Almost every document a retailer holds about a vendor's product can be described as "about the vendor's product." If that framing controlled, no Rule 45 subpoena to a retailer could ever stand. The correct question is whether the *records*

*themselves* are the retailer's or the vendor's. The Subpoena's text answers that question on every page: Plaintiff seeks Walmart's records of Walmart's conduct, not Defendant's records held by Walmart.

The Subpoena's narrow tailoring is also confirmed by what it omits. Plaintiff has not requested Defendant's vendor agreement with Walmart. Plaintiff has not requested Defendant's product specifications. Plaintiff has not requested Defendant's promotional materials supplied to Walmart. Plaintiff has not requested the "two-sided correspondence" between Defendant and Walmart, which by definition Defendant possesses in equal measure. These categories were excluded precisely to address the better-practice concern this Court identified in *Good Clean Love*: that a Rule 45 subpoena should not be used to obtain through a non-party what a party can obtain through party discovery. The Subpoena's design respects that principle.

### CONCLUSION

Defendant's Motion to Quash should be denied. Defendant lacks standing, no Rule 45 sequencing requirement exists, Defendant's conclusory showing fails under *Route App*, and the Subpoena is narrowly tailored on its face to material Walmart alone holds. Any one of these grounds is dispositive. Together they require denial. A proposed order is lodged herewith.

DATED: May 26, 2026.

Respectfully submitted,

**KNH LLP**

*/s/ Thomas D. Briscoe*
Thomas D. Briscoe
Stephen C. Mouritsen
Chad S. Pehrson
*Attorneys for Plaintiff and Counter-Defendant*
*Roxberry Licensing, LLC*

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I caused to be filed a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO QUASH PLAINTIFF'S SUBPOENA TO WALMART INC.** via the Court's CM/ECF system, which also effectuated service on all counsel of record.

*/s/Thomas D. Briscoe*