David P. Johnson (USB No. 13260)
*djohnson@wnlaw.com*
Brittany Frandsen (USB No. 16051)
*bfrandsen@wnlaw.com*
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Aaron T. Brogdon
*abrogdon@fbtgibbons.com*
FBT GIBBONS LLP
10 W. Broad St., Ste 2300
Columbus, OH 43215
Telephone: (614) 559-7262

*Attorneys for Defendant Roxberry Naturals, Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>ROXBERRY NATURALS, INC.,<br><br>    Defendant and Counter-Claimant. | Case No. 2:26-cv-00126-JNP-JCB<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO QUASH PLAINTIFF'S SUBPOENA TO WALMART INC.**<br><br>Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

Defendant and Counterclaimant Roxberry Naturals, Inc. ("Defendant" or "Roxberry Naturals") submits this reply in support of its Motion to Quash Plaintiff's Subpoena to Walmart Inc. (the "Motion," ECF No. 39) and in response to Plaintiff's Opposition to Defendant's Motion to Quash Plaintiff's Subpoena to Walmart Inc. (the "Opposition," ECF No. 41).

## I.      INTRODUCTION

Plaintiff's Opposition fails to rebut the grounds supporting Defendant's motion to quash. First, Plaintiff misinterprets the governing law underlying its argument that Defendant lacks standing. Second, although Plaintiff cites authority showing there is no absolute rule requiring parties to seek discovery from litigants before non-parties, those cases ultimately recognize that courts disfavor that practice. Third, Plaintiff fails to meaningfully address Defendant's showing that the subpoena places an undue burden on Walmart. Fourth, Plaintiff relies on an incomplete characterization of the subpoena as seeking only Walmart-specific information, when Plaintiff's subpoena targets overlapping and readily available discovery that could otherwise be obtained from Defendant. For the reasons explained below, the Court should grant Defendant's Motion and quash the subpoena.

## II.      BACKGROUND

Plaintiff served Defendant with a Notice of Intent to Serve Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises and to Appear for Deposition (the "Subpoena") on May 5, 2026. *See* ECF No. 39-1. Walmart is a retailer of Defendant's products, and the Subpoena seeks information regarding the marketing and sales of Defendant's products. *See id*. The Subpoena outlines thirteen requests for documents and

requests that Walmart designate a Rule 30(b)(6) witness to testify concerning seven detailed topics with several sub-topics.

Defendant filed its Motion to Quash Plaintiff's Subpoena to Walmart on May 9, 2026 (ECF No. 39). At that point, Plaintiff had not served any document production requests on Defendant. Plaintiff served its first requests for production of documents on Defendant on May 13, 2026, with responses due from Defendant on June 12, 2026. Plaintiff filed its Opposition to Defendant's Motion to Quash the Subpoena on May 26, 2026 (ECF No. 41).

### III. ARGUMENT

#### a. Defendant Has Standing Because the Subpoena Seeks Its Sensitive Business and Commercial Information

A litigating party has standing to move to quash a third-party subpoena where the subpoena seeks the litigant's sensitive business and commercial information. *See Innovasis, Inc. v. Curiteva, Inc.*, 2024 WL 3759793, at *2 (D. Utah Aug. 9, 2024) (citations omitted); *Stewart v. Mitchell Transp.*, 2002 WL 1558210, at *1–2 (D. Kan. July 11, 2002); *Richards v. Convergys Corp.*, 2007 WL 474012, at *1 (D. Utah Feb. 7, 2007); *US Magnesium, LLC v. ATI Titanium LLC*, 2020 WL 12847147, at *4 (D. Utah May 22, 2020).

Plaintiff's Opposition does not dispute that standing exists where a third-party subpoena seeks a litigant's sensitive business information. *See* Opposition at 4–6. Plaintiff also does not dispute that the information sought by the Subpoena is commercially sensitive. *See id.* Plaintiff argues instead that no standing exists because the Subpoena is purportedly limited to Walmart's records—not Defendant's records held by Walmart. *See id.* In other words, Plaintiff baldly concludes that standing cannot exist if a subpoena is limited to third-party information.

Plaintiff's argument is problematic for multiple reasons. First, it puts the cart before the horse. Plaintiff does not know whether the Subpoena is limited to third-party information because it had not requested the information from Defendant prior to giving Defendant notice of the Subpoena. Second, Plaintiff does not offer any cases that support its position. Plaintiff argues that in every case Defendant cites, "the dispositive fact was that the third-party recipient was a mere custodian of the objecting party's own records." Opposition at 5. Plaintiff's reading is wrong. For example:

- In *Innovasis*, the defendant-manufacturer had standing to object to subpoenas to its customers even though the subpoena sought, in part, "documents relating to any improvements, changes, revisions, modifications, or alterations to the specifications and/or manufacturing process [the defendant] uses in manufacturing your spinal products." 2024 WL 3759793, at *1. Emails from defendant's customers requesting an alteration in the manufacturing process, for example, are responsive to this request and are not defendant's own record held by a third-party custodian.
- In *Stewart*, the defendant had standing to object to subpoenas to its insurance companies which sought, among other things, the insurance companies' "complete underwriting file." While the underwriting files contained documents submitted by the defendant such as its "client lists" and "routes of travel," *see* 2002 WL 1558210, at *2, underwriting files often include the *underwriter's* analysis of risk and interpretation of coverage—that is, documents created by the insurance company itself. The *Stewart* court also determined that the driver-plaintiff had standing to challenge subpoenas to his former employers seeking, among other records, "performance evaluations." *Id.* Performance evaluations are not documents owned by the employee and held by the employer.

Contrary to Plaintiff's reading, a party has standing to move to quash a third-party subpoena where, like here, the subpoena seeks the litigant's sensitive business and commercial information. There is no requirement that the third-party be a "mere custodian of the objecting party's own records," for the objecting party to have standing to object. Third, the Subpoena is not, in fact, limited to third-party information because it expressly requests overlapping information Defendant necessarily would have, to the extent it exists. For example, the Subpoena

requests "[a]ll Communications between Walmart . . . and Roxberry Naturals, Inc. . . . that specifically discuss: (i) any trademark or brand-clearance issue concerning the ROXBERRY name. . . ." ECF No. 39-1 at PageID 1019. Communications between Walmart and Defendant would necessarily involve Defendant and be within Defendant's possession, custody, or control.

The Subpoena seeks Defendant's sensitive business information and Defendant therefore has standing.

### b. Party Discovery Should Come Before Third-Party Discovery

Plaintiff cites three decisions to support its argument that discovery can be requested from third parties before requesting discovery from the litigant. *See* Opposition at 6–9. At best, these cases show that "case law on this issue is inconsistent," and that the "better practice" is to seek party discovery before third party discovery. *Good Clean Love, Inc. v. Epoch NE Corp.*, 2025 WL 55242, at *3–4 (D. Utah Jan. 9, 2025) (quote cleaned up) (internal citations omitted).

First, Plaintiff offers *Origins Tech, Inc. v. Oak Equity Holdings II, LLC*, where the court denied a motion to quash a third-party subpoena seeking defendant's financial records and "contracts and records solely between third parties." *See* 2025 WL 1030146, at *3 (D. Utah Apr. 7, 2025). The court found that the defendant lacked standing as to the contracts or records between third parties and that the subpoena "contain[ed] two document requests, both of which are sufficiently narrow and proportional." *Id.* at 3. As Plaintiff notes, the Court also stated that "there is no requirement that a party seek discovery from another party before serving a nonparty subpoena." *Id.* at *2–3. However, in *Origins Tech*, the subpoenaing party *did* first engage in party discovery before issuing a third-party subpoena, and the litigant responded to the discovery, denying the existence of responsive documents. *See id.* In contrast, the Subpoena

5

contains thirteen document requests, and Plaintiff served its notice of the Subpoena before serving document requests on Defendant.

Second, Plaintiff offers *Good Clean Love, Inc. v. Epoch NE Corp.*, where this Court considered a subpoenaed third party's motion for reimbursement of costs. 2025 WL 55242 (D. Utah Jan. 9, 2025) (Bennett, M.J.). Not only is this case factually unhelpful, but Plaintiff misrepresents the main thrust of this case by modifying a quote of this Court to say "courts around the nation have . . . found that subpoenaing non-parties before exhausting discovery from litigating parties is an acceptable practice." Opposition at 7. Contrary to Plaintiff's quote, the *Good Clean Love* Court expressly views with disfavor the very practice Plaintiff's quote appeared to bless—that is, seeking discovery from non-parties before seeking discovery from litigating parties. For example, the unaltered sentence Plaintiff quotes reads, "[h]owever, the case law on this issue is inconsistent, and courts around the nation have, ***unfortunately***, found that subpoenaing non-parties before exhausting discovery from litigating parties is an acceptable practice." 2025 WL 55242, at *4 (emphasis added). While concluding that the case law does not support sanctioning a party under Rule 45 for issuing a subpoena to a third party before seeking discovery for other litigating parties, the court also states that it "agrees with [the third party] that the practice in civil discovery *should be* that parties to litigation first seek discovery from other parties *before* using Rule 45 subpoenas." *Id.* (emphasis in original).

Confusingly, Plaintiff's Opposition acknowledges that the Court favors seeking party discovery before issuing third-party subpoenas, and states that "Plaintiff has heeded that guidance," but Plaintiff fails to say how, to what extent, or when it sought discovery first from

Defendant. Opposition at 7. Plaintiff has yet to depose Defendant or notice a deposition, and Plaintiff did not serve document requests on Defendant until after it filed the Motion.

Third, Plaintiff offers *El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161 (10th Cir. 2016) to support its position that "Rule 45 contains no sequencing requirement on its face, and the Tenth Circuit has not been hospitable to attempts to graft one on." *See* Opposition at 8–9. This case does little, if anything, to help Plaintiff. *El Encanto* addressed whether parties must adhere to a perceived procedural formality—that is, noticing a third-party deposition as a prerequisite to requesting documents. *See* 825 F.3d at 1162, 1167. The issue here, by contrast, is not a meaningless procedural formality. Seeking discovery from parties before subpoenaing non-parties goes to the heart of efficient discovery management and reducing burdens on non-parties to the litigation. This is why courts in this District have acknowledged that it is the "better practice." *Good Clean Love*, 2025 WL 55242 at *3 (quote cleaned up).

Plaintiff's mention of an accelerated discovery schedule and the pending preliminary injunction are not tied to any reason why discovery from Walmart is needed now, before discovery is obtained from Defendant. Plaintiff must still demonstrate proportionality and that its Subpoena seeks information from the least burdensome source. It has not.

### C. Defendant Satisfies Its Burden Under Rule 45

In its Opposition, Plaintiff argues that Defendant fails to carry its burden under Federal Rule of Civil Procedure 45. However, Plaintiff fails to specify which Rule 45 subsection Defendant allegedly fails to satisfy, citing only the Court's analysis of Rule 45(d)(3)(B)(i) in *Route App, Inc. v. Heuberger*, 2024 WL 309748 (D. Utah Jan. 26, 2024). Plaintiff fails to discuss the other applicable subsection—Rule 45(d)(3)(A)(iv). *See Iwasaki v. Breeze Aviation Grp. Inc.*,

2025 WL 1948159, at *4 (D. Utah July 16, 2025). Under both subsections, Defendant satisfies its Rule 45 burden.

### i.   Rule 45(d)(3)(A)(iv)

"Pursuant to Rule 45, a court *must* quash or modify a subpoena if the subpoena '(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.'" *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv)).

This subpoena subjects Walmart to an undue burden under Rule 45(d)(3)(A)(iv). If any relevant documents responsive to Plaintiff's request exist, they are likely to be in Defendant's possession. *See* Motion at 7–9. Given Walmart's non-party status and Defendant's willingness to produce those documents pursuant to a request for production, forcing Walmart to respond subjects Walmart to an unfair and undue burden. *See id.* at 6–7.

### ii.   Rule 45(d)(3)(B)(i)

Plaintiff asserts that Defendant has not satisfied its burden under Rule 45 and makes three separate arguments in support. Defendant addresses each in turn.

Plaintiff first asserts that the "burden under Rule 45(d)(3)(A)(iv) protects the *subpoena recipient*, not the objecting party's commercial relationships," and argues that Defendant identifies no facts supporting its assertion that the Subpoena would strain the parties' relationship. Opposition at 13. In its Motion, Defendant outlined the Subpoena's thirteen requests for production. *See* Motion at 8–9. Defendant also explained that if any relevant documents within these categories exist, they are likely to be in Defendant's possession. *See id.*

at 7. By imposing these requests on Walmart before seeking the same information from Defendant—who is able to produce many of the documents Plaintiff seeks—the Subpoena necessarily places an undue burden on Walmart. This burden has practical consequences for Defendant. *See id.* Requiring one of Defendant's key commercial partners to expend significant resources to respond to requests Defendant could answer creates an unnecessary risk of strain on the parties' ongoing business relationship.

Plaintiff then argues that "Defendant's possession-based arguments are speculation, not evidence" because Defendant has not yet searched for or gathered responsive documents. Opposition at 13. Plaintiff misses the point. Defendant has never contended that it conclusively established possession of every responsive document. To the contrary, Defendant expressly acknowledged that it had not yet conducted a document search and explained that Plaintiff had not yet served requests for production on Defendant. But that doesn't render Defendant's assertions speculative. Certain categories of documents sought by the Subpoena—such as trademark-related communications between Walmart and Defendant—would necessarily be in possession of Defendant if they exist. At least with respect to those categories, the Subpoena seeks information that is plainly duplicative of discovery available from Defendant.

Plaintiff lastly argues that Defendant's table contradicts itself, and that those "[i]nternal contradictions in the movant's own showing fall short of the specificity *Route App* requires." Opposition at 13–14. As an initial matter, *Route App* never discusses how "internal contradictions" in the movant's showing bears on the specificity required under Rule 45. More importantly, Plaintiff's argument rests on its own assumptions regarding the location and nature of responsive information. For example, Plaintiff concludes that sell-through data is data

9

Walmart generates, and that "Defendant has, at most, its sales-into-Walmart shipment data." Opposition at 13. But Plaintiff offers no factual basis for that assertion. The point of Defendant's table was not to affirmatively establish that Defendant possesses every responsive document, but rather to show that several categories of information sought from Walmart would likely overlap with information Plaintiff could obtain from Defendant. And as for RFPs 7–8, it is logically consistent for a communication to be responsive to a request and yet irrelevant to the claims or defenses at issue. Plaintiff's attempt at manufacturing contradictions does not undermine Defendant's showing that the Subpoena seeks broad categories of information that are either likely held by Defendant or irrelevant.

### D.  The Subpoena is Not Only Limited to Walmart-Specific Information

Plaintiff may have included some language that purports to narrow its requests to material that is "uniquely maintained by Walmart" or that "Plaintiff cannot reasonably obtain through party discovery from Roxberry Naturals, Inc.," Opposition at 14. However, even with attempts at exclusions, there is still overlap because (1) Walmart does not know what information Defendant has in its possession and therefore cannot fully comply with the Subpoena, Motion at 4; and (2) numerous requests incorporate documents that involve Defendant, as outlined in the Motion. Motion at 8–9.

### IV.    CONCLUSION

Plaintiff's Subpoena is premature and improper without any justification for sidestepping party discovery. The Court should not allow Plaintiff to place an unnecessary burden on Walmart when responses to document requests recently served on Defendant are not yet due. Defendant requests that the Court squash the subpoena.

10

DATED this 9th day of June, 2026.

WORKMAN NYDEGGER

By: /s/ *Brittany Frandsen*
    David P. Johnson
    Brittany Frandsen

Aaron T. Brogdon
FBT GIBBONS LLP

*Attorneys for Roxberry Naturals, Inc.*