David P. Johnson (USB No. 13260)
*djohnson@wnlaw.com*
Brittany Frandsen (USB No. 16051)
*bfrandsen@wnlaw.com*
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Aaron T. Brogdon
*abrogdon@fbtgibbons.com*
FBT GIBBONS LLP
10 W. Broad St., Ste 2300
Columbus, Ohio 43215
Telephone: (614) 559-7262

*Attorneys for Defendant Roxberry Naturals, Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROXBERRY LICENSING, LLC,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>ROXBERRY NATURALS, INC.,<br><br>    Defendant and Counter-Claimant. | Case No. 2:26-cv-00126-JNP<br><br>**DEFENDANT ROXBERRY NATURALS, INC.'S OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION TO CONFIRM AND ENFORCE THE STIPULATED PRELIMINARY INJUNCTION**<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

## <u>INTRODUCTION</u>

Plaintiff Roxberry Licensing, LLC's ("Plaintiff") latest filing asks the Court to impose a severe penalty and hardship on Defendant Roxberry Naturals, Inc. ("Defendant") merely for engaging in good faith settlement discussions – ***initiated by Plaintiff*** – that caused a delay in the rebranding timeline the parties had agreed to.  Basically, after two months of discussions that ***required*** Defendant to put its rebranding activities on hold and saw the passage and waiver of several interim deadlines, Plaintiff now asks the Court to reinstate those lapsed deadlines and

1

penalize Defendant for its claimed failure to meet them, as if the parties' discussions never happened.  For both legal and equitable reasons, Plaintiff's request should be denied.

The timeline of events relevant to Plaintiff's motion began in mid-June.  Within two weeks of signing the Stipulated Preliminary Injunction ("SPI") (ECF No. 45), which established a timeline for Defendant to discontinue use of its ROXBERRY mark and rebrand, Plaintiff's President, Brad Davis, initiated and engaged Defendant's CEO, Andy Sauer in settlement negotiations that placed that timetable on hold.  Plaintiff made clear that high on its list of preferred settlement options was the execution of a coexistence agreement, under which Defendant would continue to use the ROXBERRY mark in exchange for stock consideration.[1] Not surprisingly (given that coexistence could only work and remain in play if Defendant continued using its mark), the parties agreed and understood as part of these discussions that Defendant did not need to take the initial rebranding steps outlined in the SPI. Indeed, as recently as August 4, 2026—two days before Plaintiff filed the present Motion—Mr. Davis and Mr. Sauer were continuing to discuss a potential coexistence-based settlement.

Despite the fact that those coexistence discussions effectively remained open, on August 6, 2026, Plaintiff filed an Expedited[2] Motion to Confirm and Enforce the Stipulated Preliminary

---

[1] While Defendant acknowledges that the details of settlement communications such as these would ordinarily be kept confidential and not disclosed or described in court filings, doing so here is unavoidable and necessary to place Plaintiff's requested relief in context.  In short, it was Plaintiff's initiation of settlement talks based on coexistence – and its continuation of those talks until as recently as August 4 – that caused the clock to run out on Defendant's rebranding deadlines and obligations.  As such, the settlement details discussed herein are not presented to prove or disprove the validity or amount of any disputed claim, but rather for the purpose of filling in the rest of the story behind Plaintiff's Motion and, in a sense, "negating a contention of undue delay" (albeit not in filing a claim, but in meeting stipulated deadlines). *See* Fed. R. Ev. 408(b).

[2] Plaintiff does not identify a local rule authorizing the expedited briefing schedule it requests. DUCivR 37 allows for expedited briefing, but this is not a Rule 37 discovery motion. As Plaintiff acknowledges, *see*

Injunction pursuant to Federal Rule of Civil Procedure 65, ECF No. 63 ("Motion").  Plaintiff's Motion seeks (1) confirmation and enforcement of the parties' SPI, and if further action is necessary, for the Court to issue a Rule 65(d) order; (2) an order that Defendant, through a proposed preliminary injunction, perform roughly two months' worth of rebranding activities within **three business days** and then certify their completion; (3) confirmation that other rebranding deadlines found in the parties' SPI remain in force (notwithstanding the intervening discussions that put such activities on hold); (4) determination that a bond is not required; and (5) an order expedited briefing on the Motion. *See id.* at 1–2.  Filed concurrently with Plaintiff's Motion is a proposed "Order Confirming and Enforcing the Stipulated Preliminary Injunction" that would – as noted above – require Defendant to complete all outstanding rebranding activities listed in the SPI "[w]ithin three business days after entry of this Order." *See* ECF No. 63-9 at 2–3.

Plaintiff's Motion should be denied for at least two reasons.  First, even though the Court never entered a preliminary injunction, the Motion asks the Court to now enforce the SPI by ordering a preliminary injunction and imposing a three-business-day deadline. Plaintiff provides no authority to support the notion that the extraordinary relief of a Rule 65 injunction is the appropriate relief for alleged nonperformance of an unentered stipulation, let alone that such relief is appropriate given the unique circumstances of this case. That is because it is not appropriate. Injunctions are heavily guarded, both by Rule 65 and in practice, and an injunction cannot be handed out just because a litigant believes the opposing party has breached a stipulation.

---

Motion at 9, DUCivR 7-1(a)(4)(C)(iii)–(iv) permits fourteen days for an opposition to a motion pursuant to FRCP 65 and another fourteen days for a reply.

Second, the Motion completely ignores the existence, impact, and nature of the parties' intervening settlement negotiations.  By way of its post-SPI behavior and communications, Plaintiff waived its ability to enforce strict compliance with the SPI's deadlines – many of which passed while the parties were discussing an alternative resolution.  If the Court sees fit to grant Plaintiff any relief on its Motion, that relief must account for the parties' mutual understanding and agreement that Defendant did not need to take the initial rebranding steps while the parties discussed coexistence. Both parties understood that potential coexistence required that Defendant *not* rebrand. Regardless of how the SPI is characterized, Plaintiff's post-SPI representations bear on the nature and timing of any equitable relief the Court may consider appropriate.

Finally, notwithstanding the above issues and regardless of Plaintiff's overtures or the resolution of this Motion, Defendant has now elected to rebrand and intends to cease and discontinue all uses of the ROXBERRY mark. Thus, the substantive relief Plaintiff seeks is essentially moot, though given the logistical challenges of a company-wide rebrand, and Plaintiff's post-SPI representations (which put a halt to the process), Plaintiff's proposed three-business-day implementation deadline is unreasonable and cannot be proposed or demanded in good faith.  Now that Plaintiff has indicated (by the filing of its Motion) that the coexistence concept it had proposed is no longer under consideration, Defendant should be given the same time period previously agreed upon to complete its rebranding process.

If the Court finds that equitable relief is appropriate, Defendant therefore requests **no less** than the same implementation periods and deadlines provided for each rebrand obligation set forth in the SPI (i.e., *at least* twenty eight (28) days to phase out Defendant's "getroxberry.com" domain; twenty eight (28) days to notify in writing its retail distributors that its products under the

ROXBERRY mark are being discontinued and that after 59 days, they are no longer authorized to distribute, offer for sale, or sell such products; 73 days to discontinue all use of the ROXBERRY mark; and 120 days to sell through the rest of its current remaining inventory).

**BACKGROUND**

As a result of prior discussions regarding potential resolution, on June 3, 2026, the parties filed the SPI and agreed that Defendant would be provided time to rebrand over a period of several months, with the following rebranding deadlines: (1) notify its distributors by July 1, 2026 that its products bearing the ROXBERRY name are being discontinued, and that they will no longer be authorized to distribute, offer for sale, or sell such products after August 1, 2026; (2) by August 15, 2026, Defendant would cease all uses of the ROXBERRY mark, and sell through its remaining current inventory by October 1, 2026; and (3) disable and discontinue its use of the "getroxberry.com" domain by July 1, 2026. *See* ECF No. 45. The SPI included a signature line for the Court to sign. *See id.* at 2. That same day, the Court issued text orders finding as moot Plaintiff's motion for preliminary injunction and Plaintiff's motion for leave to file a supplemental declaration in support of its motion for preliminary injunction. *See* ECF No. 46; ECF No. 47. The Court then vacated the scheduled evidentiary hearing on Plaintiff's motion for preliminary injunction. ECF No. 48. The Court never signed the parties' SPI or issued any separate order granting Plaintiff a preliminary injunction.

Nine days later, on June 12, 2026, Plaintiff's President, Mr. Davis, initiated discussions with Defendant's CEO, Mr. Sauer, to explore possible settlement options. Sauer Decl. ¶ 4. At that point in time, Defendant had already taken steps to initiate the rebranding process, including the identification and vetting of a replacement for its Roxberry mark. *Id.* ¶ 6. In the course of their

ensuing discussions, however, Mr. Davis and Mr. Sauer actively explored a potential coexistence agreement under which Defendant would continue to use its ROXBERRY mark while granting Plaintiff some of Defendant's stock. *Id.* ¶ 5. The parties agreed and understood that while they negotiated, Defendant would not take the rebranding steps of phasing out its "getroxberry.com" domain or providing notification to retail distributors, given that phasing out the ROXBERRY mark would have taken coexistence off the table by essentially rendering the concept moot. *Id.* ¶ 7. Based on that understanding, Defendant did not pursue the rebranding process while discussions about a potential coexistence agreement continued, as taking such steps as notifying retailers and changing online media would have rendered such an agreement impossible. *Id.* ¶ 8. Mr. Sauer and Mr. Davis went on to have several settlement discussions during the month of July, during which time coexistence remained a topic of discussion and potential form of resolution. *Id.* ¶ 9.

Following a lull in the discussions, on August 3, 2026, Mr. Davis again called Mr. Sauer to raise the concept of a coexistence-based settlement and to solicit a counteroffer from Defendant. *Id.* ¶ 10. Mr. Davis and Mr. Sauer then spoke again on August 4, 2026. *Id.* Though the parties did not reach an agreement, they also never agreed to end settlement discussions, and it was Mr. Sauer's understanding that settlement discussions had been still alive and ongoing as of the time Plaintiff filed its Motion on August 6, 2026. *Id.* At no point during their August 3 and 4 discussions did Mr. Davis express any intention of demanding a rebrand or indicate that Plaintiff intended to seek judicial enforcement of the stipulation—which makes sense because such actions would have foreclosed any chance of a coexistence-based settlement. *Id.*

**ARGUMENT**

Plaintiff's Motion glosses over two significant and meaningful deficiencies in Plaintiff's position and ignores the reality of how the parties arrived at this point.

First, the Court never entered a Rule 65(d) order, so any "nonperformance" on Defendant's part is nonperformance of a stipulation, not a court-ordered preliminary injunction. While a stipulation may be a binding agreement between the parties, Plaintiff provides no support for the proposition that the appropriate judicial relief for the alleged nonperformance of an unentered stipulation is a Rule 65 injunction. Moreover, the proposed preliminary injunction requested by Plaintiff does not comport with the SPI and is not what the parties agreed to. Plaintiff's request for preliminary injunction imposing a three-business-day implementation turnaround, compared to the SPI's many-months-long implementation turnaround, is not the same substantive obligation and unwarranted relief, even if the Court were to enforce the terms of the SPI at this stage.

Second, Plaintiff's Motion ignores the occurrence, scope, and understood impact of the parties' intervening settlement discussions and proposes unreasonable relief as a result. Any resolution centered around coexistence—which, again, is a settlement option Mr. Davis proposed and discussed with Mr. Sauer as recently as August 3—would implicitly involve (and require) Defendant's continued use the ROXBERRY mark, and taking such steps as notifying retail partners and renaming online media would obviously kill any chance of such an agreement being reached and implemented. It is for that reason that Mr. Davis and Mr. Sauer agreed and understood that Defendant would not initiate the rebranding process and/or take the initial rebranding steps outlined in the parties' SPI on the dates previously agreed upon. Through its post-SPI actions, Plaintiff has waived its ability to request strict compliance with Defendant's contractual duties. At

a minimum, the Court should fashion any relief in light of Plaintiff's post-SPI actions and communications, on which Defendant relied in foregoing the agreed-upon rebranding steps.

## I.   The Court Has Not Entered or Ordered an Injunction

The Tenth Circuit requires strict compliance with Rule 65 before a court action qualifies as a Rule 65(d) preliminary injunction. *See Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1168 (10th Cir. 2009); *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370–71 (10th Cir. 1996). "Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the acts or acts restrained or required." Fed. R. Civ. P. 65(d)(1). In *Consumers Gas*, the Court refused to enforce by contempt a certain provision of the parties' agreement which was omitted from the district court's injunction because that provision was "nothing more than a contract" and lacked the "imprimatur of an injunction." 84 F.3d at 370–71. The Tenth Circuit's "strict approach" carefully limits what qualifies as an injunction under Rule 65(d). *Hatten-Gonzales*, 579 F.3d at 1168.

The filings and docket here do not meet that standard. There is no order stating the reasons why an injunction issued, stating the injunction's terms, or describing in detail the act or acts restrained or required. The Court's text entries vacating the preliminary injunction hearing and finding as moot the motion for preliminary injunction and related motions certainly do not meet the standard. *See* ECF No. 46; ECF No. 47; ECF No. 48. While never explicitly stating it, Plaintiff's Motion acknowledges the possibility that "further entry is necessary" to memorialize a Rule 65(d) order in this case. *See* Motion at 6 ("Plaintiff does not ask the Court to create new

substantive obligations; it asks the Court to enforce the binding filed stipulation through a Rule 65(d)-compliant order . . . ."); ECF No. 63-9 (proposed order granting preliminary injunction).

### a. Issuance of an Injunction Would Not Be Appropriate Relief

Plaintiff contends that because Defendant allegedly failed to perform the terms of the SPI, Plaintiff is entitled to a preliminary injunction with much shorter deadlines than those listed in the SPI. *See* Motion at 1–3. As the movant, Plaintiff bears the burden of showing that it is entitled to the relief that it seeks. *See generally Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) ("Perhaps the broadest and most accepted idea is that the person who seeks court action should justify the request.") (*quoting* C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d ed. 2003)). The party who "seeks to change the present state of affairs . . . naturally should be expected to bear the risk of failure of proof or persuasion." *Id.* (quoting 2 J. Strong, McCormick on Evidence § 337, p. 412 (5th ed. 1999)). Plaintiff has not met that burden.

Plaintiff cites no case law or statute to justify the issuance of an injunction for alleged breach of the SPI. Plaintiff cites several ***agreement*** cases standing for the proposition that the court can enforce agreements between the parties as litigation is ongoing and that stipulations (which is another name for an agreement[3]) voluntarily entered by counsel bind the parties and cannot be cast off at will (*see* Motion at 5–6). But those cases do not speak to whether a court can issue an ***injunction*** for alleged breach of a stipulation. In fact, as stated previously, the Court cannot issue

---

[3] *See generally United States v. Gardner,* 940 F.2d 587, 591 (10th Cir. 1991) ("The essence of a stipulation is an agreement."); *In re Chuza Oil Co.*, 2021 WL 559155, at *6 (Bankr. D.N.M. Feb. 12, 2021) ("Litigation stipulations can be understood as the analogue of terms binding parties to a contract.") (internal citations omitted); *Consumers Gas*, 84 F.3d at 370 ("Standing alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt.").

an injunction without meeting the requirements of Fed. R. Civ. P. 65(d)(1). Enforcing an agreement is a far cry from issuing an injunction.

### b. Plaintiff's Proposed Injunction Would Impose Undue Burden and Hardship that Are Not in Keeping with the Terms and Purpose of the SPI

Plaintiff suggests that its proposed order submitted concurrently with its Motion does not propose "new relief" or "create new substantive obligations." *See* Motion at 5, 6. Defendant disagrees with that characterization. The SPI provided Defendant nearly a month (twenty eight days) to phase out its "getroxberry.com" domain name and notify its distributors that its products bearing the ROXBERRY mark were being discontinued, and that in about two months (59 days), they were no longer authorized to distribute, offer for sale, or sell such products. *See* ECF No. 45 ¶¶ 1, 3. The SPI also provided Defendant over two months (73 days) to discontinue all use of the ROXBERRY mark in the advertising, promotion, distribution, and/or sale of its goods and services, as well as over three months (120 days) to sell through its remaining current inventory. *See id.* ¶ 2.  Those agreed-upon timelines were already extremely tight, though practicable.

In contrast, Plaintiff's proposed order would give Defendant only three business days to phase out its "getroxberry.com" domain name and notify its distributors that its products bearing the ROXBERRY mark are being discontinued, following roughly two months of being led to believe by Plaintiff that it would not have to do so. *See* ECF No. 63-9 at 2–3; *see also* Sauer Decl. ¶¶ 8-10. And, depending on when the Court resolves this Motion, Plaintiff's request could require Defendant to discontinue all uses of the ROXBERRY mark almost immediately and require it to sell through its current remaining inventory in less than two months. A preliminary injunction providing only a three-business-day implementation period for some of its terms imposes materially different compliance obligations than the timetable negotiated by the parties and

10

ultimately included in the SPI.[4]  But worse, such an order would impose a severe hardship and penalty on Defendant merely for entertaining and engaging in settlement discussions.

It would be disingenuous and incorrect for Plaintiff to suggest that imposing such tight deadlines on Defendant would be a just consequence of Defendant's own nonperformance under the SPI.  Indeed, to make that argument would be to ignore Plaintiff's own settlement efforts and messages over the last two months – specifically, its pursuit of a coexistence agreement (*as recently as August 3*) that would have required Defendant *not* to rebrand.  While it is true that the SPI was not contingent on settlement, a settlement centered on a coexistence agreement was not even on the table or under consideration until after June 12, 2026—the date ***Mr. Davis first contacted Mr. Sauer*** to explore settlement options. *See* Sauer Decl. ¶ 4.  It was Plaintiff's initiation of those discussions (through Mr. Davis) that gave rise to the continuing discussions around coexistence and set aside all of the agreed-upon rebranding deadlines as they came due.

Thus, to assert that Defendant brought these tight deadlines upon itself would disregard Plaintiff's behavior and allow it an impermissible "gotcha." Plaintiff cannot be permitted to pursue coexistence-based settlement for nearly two months and then pull the rug out from under Defendant and pretend the negotiations never occurred. *Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, ¶ 17–18, 422 P.3d 809, 812 ("[W]aiver

---

[4] These differences matter under the consent decree case law Plaintiff cites. *See* Motion at 6 (citing *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986) and *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)). A court is able to "either approve or deny the issuance of a consent decree," but it is generally "not entitled to change the terms of the agreement stipulated to by the parties." *Colorado*, 937 F.2d at 509. The time allotted to Defendant to implement the obligations of the SPI was an express term of the parties' SPI. Thus, even assuming the consent decree case framework applies, *Colorado* and *Local No. 93* do not support the proposition that a court may issue an order materially changing the express terms relating to timing as negotiated by the parties.

prevents a 'waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required' and then enforcing its contractual rights upon default.") (quoting 13 Williston on Contracts § 39:15 (4th ed. 2018)).  To suggest that Defendant should or could have continued pursuing the rebranding process during the parties' ongoing coexistence discussions would defy simple logic and ignore the factual circumstances in play.

Any claimed nonperformance on Defendant's part was nonperformance of a stipulation, and Plaintiff has failed to establish that the appropriate remedy for nonperformance of a stipulation is a preliminary injunction. The Court should deny Plaintiff's Motion on this ground alone.

## II.      The Parties' Settlement Discussions Provide Essential Context that Should Inform the Resolution of this Motion

Utah law prevents a contracting party from hindering the other side's performance and then relying on the resulting nonperformance to invoke a deadline. *Markham v. Bradley*, 2007 UT App 379, ¶ 37, 173 P.3d 865, 876 (holding that sellers were barred from enforcing deadline where "it would be inequitable to allow [Sellers] to take advantage of their own obstructive and misleading conduct"); *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 941 (Utah 1993) (waiver can be established from the "totality of the circumstances"); *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, ¶ 29, 245 P.3d 184, 193–94 ("Waiver of a contractual right occurs when a party to a contract intentionally acts in a manner inconsistent with its contractual rights, and, as a result, prejudice accrues to the opposing party or parties to the contract.") (citations omitted).  That is, however, precisely what Plaintiff seeks to do here. Plaintiff initiated and continued negotiations for a coexistence arrangement and the parties understood Defendant would not take irreversible rebranding steps during that time. Plaintiff cannot encourage Defendant to defer the very performance at issue and, when Plaintiff doesn't get its way and after the original

12

deadlines have passed, obtain an emergency order based on Defendant's failure to perform by those deadlines.

While a stipulation is generally binding on the parties that made it, a showing of "special circumstances, such as a change of conditions, [may] justify[] relief from the stipulation to prevent manifest injustice." *Vallejos v. C. E. Glass Co.*, 583 F.2d 507, 511 (10th Cir. 1978). "The district court has broad discretion to determine whether a party should be held to a stipulation or whether justice requires the stipulation be set aside." *Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc.*, 782 F. Supp. 2d 1205, 1211 (D. Colo. 2011) (quoting *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1075 (10th Cir. 2008)).

Courts similarly have broad discretion in fashioning the scope and timing of equitable relief. *See generally U.S. v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001) ("[W]hen district courts are properly acting as courts of equity, they have discretion [to fashion injunctive relief] unless a statute clearly provides otherwise."); *Sisneros v. Stancil*, 2024 WL 6816101, at *8 (D. Colo. Aug. 29, 2024) ("While Plaintiff's requested relief is overly broad, the Court maintains its discretionary power to fashion appropriate injunctive relief as necessary."). Equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" and should be "carefully addressed to the circumstances of the case." *Hospice of New Mexico, LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1294–95 (D.N.M. 2010), aff'd, 435 F. App'x 749 (10th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) and *Virginia Society for Human Life, Inc. v. Federal Election Commission*, 263 F.3d 379, 393 (4th Cir. 2001)). Courts have invoked their discretion to modify the length of time required for compliance based on the specific facts of a case. *See Fed. Trade Comm'n v. Superior Prods. Int'l II, Inc.*, 2022 WL 4378715, at *9–

13

10 (D. Kan. Sept. 22, 2022) (modifying length of compliance period sufficient to adequately address the issues presented in the case).

Thus, if it were to determine that some relief is warranted here, the Court would maintain significant discretion in its ability to fashion that relief. In doing so, the Court should consider the parties' settlement discussions and the temporal disadvantage Defendant would face under Plaintiff's proposed order. *See generally Hong Kong TV Video Program, Inc. v. Vietnam & Hong Kong Int'l Food & Gift Corp.*, 1986 WL 1793, at *1 (D. Minn. Feb. 6, 1986) (considering defendants' explanation and factual circumstances surrounding nonperformance of a stipulated preliminary injunction in determining whether the requested relief was warranted); *Superior Prods.*, 2022 WL 4378715, at *4, 9 (altering the scope of plaintiff's proposed injunctive relief in light of defendants' explanation of their conduct "in an exercise of [the Court's] discretion based on the facts of this case"). Defendant therefore requests that any order give Defendant no less than the same length of time for each rebrand obligation provided within the SPI (i.e., at least twenty eight (28) days to phase out Defendant's "getroxberry.com" domain; twenty eight (28) days to notify in writing its retail distributors that its products under the ROXBERRY mark are being discontinued and that after 59 days, it is no longer authorized to distribute, offer for sale, or sell such products; 73 days to discontinue all use of the ROXBERRY mark; and 120 days to sell through the rest of its current remaining inventory).

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiff's Motion. Plaintiff has not established a legal basis for its request for a preliminary injunction, and even if the Court were to determine that some relief might be warranted, Defendant respectfully requests that the Court take

into account the parties' settlement discussions and previously agreed-upon terms in fashioning a remedy that aligns with the deadlines contained in the SPI, and that the Court adopt and implement at least the same timeframe(s) in the terms of any Rule 65(d) order.

DATED this 14th day of August, 2026.

FBT GIBBONS

*/ s Aaron T. Brogdon*_____
Aaron T. Brogdon
FBT GIBBONS LLP


WORKMAN NYDEGGER

David P. Johnson
Brittany Frandsen

*Attorneys for Roxberry Naturals, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, 2026, I electronically filed the foregoing

DEFENDANT ROXBERRY NATURALS, INC.'S OPPOSITION TO PLAINTIFF'S

EXPEDITED MOTION TO CONFIRM AND ENFORCE THE STIPULATED PRELIMINARY

INJUNCTION with the Clerk of the Court using the CM/ECF System, which will send notification

of such filing to the following:

Thomas D. Briscoe (USB No. 16788)
Stephen Mouritsen (USB No. 16523)
Chad Pehrson (USB No. 12622)
KNH LLP
50 W. Broadway 9th Floor
Salt Lake City, Utah 84101
*tbriscoe@knh.law*
*smouritsen@knh.law*
*cpehrson@knh.law*

*Counsel for Plaintiff*
*and Counterclaim Defendant*

*/s/ Aaron T. Brogdon*

16