Thomas D. Briscoe (16788)
Chad S. Pehrson (12622)
Stephen C. Mouritsen (16523)
**KNH LLP**
50 W. Broadway, Suite 900
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
*tbriscoe@knh.law*
*cpehrson@knh.law*
*smouritsen@knh.law*

*Attorneys for Plaintiff and Counter-Defendant*
*Roxberry Licensing, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ROXBERRY LICENSING, LLC,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>ROXBERRY NATURALS, INC.,<br><br>Defendant and Counter-Plaintiff. | **PLAINTIFF'S REPLY IN SUPPORT OF EXPEDITED MOTION TO CONFIRM AND ENFORCE THE STIPULATED PRELIMINARY INJUNCTION (DKT. 45) AND, IF NECESSARY, FOR ENTRY OF A CONFORMING ORDER**<br><br>Case No. 2:26-cv-00126-JNP-JCB<br>Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

## REPLY

The Opposition confirms the facts that matter. Roxberry Naturals executed the June 3, 2026 Stipulated Preliminary Injunction and proposed Order (Dkt. 45) (the "**Stipulated PI/Order**"); the Court, citing that filing, found the preliminary-injunction motion and a related motion moot and vacated the evidentiary hearing (Dkts. 46–48); the July 1 obligations were not performed; the August 15 cessation date has now passed; and Defendant only now "has . . . decided to proceed with the rebrand." Opp. 4–6, 14; Sauer Decl. ¶¶ 3, 7–8, 11. What remains is legal: whether the

Court may enter the parties' own stipulated injunction as a Rule 65(d) order, and whether Defendant's asserted "understanding" excuses nonperformance and entitles it to restart every implementation period from a future order.[1]

Both defenses fail on Defendant's own papers. The Rule 65 argument attacks contempt relief Plaintiff never requested and ignores the Court's undisputed authority to approve and enter relief the parties jointly submitted. The waiver theory rests on a single passive-voice averment—"it was agreed and understood," Sauer Decl. ¶ 7—that identifies no statement by anyone at Roxberry Licensing: no words, no speaker, no date, no duration, and no event ending the supposed suspension. Utah law requires a distinct, intentional relinquishment of a known right; a party's private inference from the subject matter of a negotiation is not one. And the contemporaneous writings—Defendant's own July 1 email acknowledging "today's deadlines," the single documented one-week accommodation, Plaintiff's July 22 and July 31 letters, and Defendant's counsel's July 30 letter—foreclose the inference.

Even credited wholesale, the asserted understanding reaches only the paragraph 1 retailer notices and the paragraph 3 domain obligation. Sauer says nothing about the paragraph 2 cessation date, yet Defendant asks the Court to discard every agreed date and substitute new 28-, 59-, 73-, and 120-day periods—on a declaration that assigns no duration, vendor quote, or lead time to any task and that concedes Defendant had already identified and vetted a replacement mark by June

[1] Defendant's Opposition and the Sauer Declaration describe the parties' settlement communications at length. Plaintiff does not concede that those communications are admissible under Federal Rule of Evidence 408 or that Defendant's characterizations of them are accurate. The Court need not reach either question, because Defendant's account fails as a matter of law even taken on its own terms. Plaintiff addresses the communications below only to that extent and expressly reserves all objections.

12. The Court should grant the Motion and enter the revised proposed order.

## I. THE COURT MAY APPROVE THE PARTIES' STIPULATED INJUNCTION AND ENTER IT AS A RULE 65(d) ORDER.

### A. The Court Has Authority to Enter Jointly Submitted Injunctive Relief; Rule 65(d) Supplies the Form of the Order, Not a Barrier to It.

Rule 65 and DUCivR 83-4 empower the Court to approve the parties' stipulation and enter the relief they jointly submitted. A court may enter agreed injunctive relief where it resolves a dispute within the court's subject-matter jurisdiction, comes within the general scope of the case made by the pleadings, and furthers the objectives of the governing law. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). And while a court "is not entitled to change the terms of the agreement stipulated to by the parties," it may "approve or deny" entry. *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991) (cited by Defendant, Opp. 11 n.4). Dkt. 45 expressly invokes Rule 65, identifies the pending injunction motion it resolves, states three specific obligations with dates certain, includes a signature block for the Court, and jointly asks the Court to order that relief. Approving and entering the parties' own submission is the ordinary exercise of that authority, not the "extraordinary" act the Opposition describes.

Defendant's authorities confirm the point rather than defeat it. *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.* holds that "the imprimatur of an injunction is required" to make a party agreement enforceable through contempt. 84 F.3d 367, 370–71 (10th Cir. 1996) (quoted at Opp. 9 n.3). That imprimatur is precisely what the Motion requests. *Hatten-Gonzales v. Hyde* applies Rule 65(d) strictly in deciding what already qualifies as an enforceable injunction, 579 F.3d 1159, 1168 (10th Cir. 2009), and confirms that a later four-corners order may supply the required specificity prospectively without altering the parties' underlying substantive obligations, *id.* at 1170 & n.6.

Neither case—and nothing Defendant cites—holds that a court may not, on motion, enter an injunction the parties themselves stipulated to, signed, and filed. Plaintiff seeks no contempt finding, coercive sanction, or compensatory award for the pre-entry period; it asks the Court to give the parties' agreed injunction the form Rule 65(d)(1) requires so that it is enforceable going forward.

The Opposition's remaining premise—that Dkt. 45 is "nothing more than a contract"—changes nothing. Federal courts may summarily enforce agreements reached while litigation is pending. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). A filed stipulation binds the parties and cannot be discarded at will. *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097–99 (10th Cir. 1991). And later negotiations do not rescind or "obliterate" a binding agreement. *Miller v. Basic Research, LLC*, No. 2:07-CV-871-TS, 2013 WL 1194721, at *5–7 (D. Utah Mar. 22, 2013). Defendant does not dispute Dkt. 45's execution, terms, or authenticity. Whether the Court proceeds by enforcing the agreement, by approving and entering the stipulated injunction, or both, the result is the same conforming order.

**B. Judicial Estoppel Bars Defendant from Pocketing Dkt. 45's Benefits and Then Denying Its Force.**

Defendant obtained concrete benefits from the joint filing: the Court found the fully briefed preliminary-injunction motion (Dkt. 16) and Plaintiff's related motion for leave (Dkt. 42) moot expressly because of Dkt. 45, and vacated the June 5 evidentiary hearing. Dkts. 46–48. Defendant thereby avoided an imminent evidentiary hearing and a merits ruling on preliminary relief. Its Opposition now insists that the same filing has no operative force because the Court "never signed" it. Opp. 5; see also Opp. 3, 7–8. Judicial estoppel forecloses that reversal: the two positions are clearly inconsistent; the Court accepted the earlier position in its mootness and vacatur rulings;

and Defendant would derive an unfair advantage—two months of nonperformance followed by a demand to restart every implementation period—if permitted to disown the stipulation now. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013). At a minimum, these equities weigh decisively in favor of entry.

## II. DEFENDANT'S OWN EVIDENCE DEFEATS WAIVER, PREVENTION, AND "MANIFEST INJUSTICE."

### A. The Sauer Declaration Fails as a Matter of Law Under Defendant's Own Authorities.

Under Utah law—Defendant's chosen law—waiver is "the intentional relinquishment of a known right," and implied waiver requires conduct by the right-holder that is intentionally inconsistent with that right. *Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, ¶ 17, 422 P.3d 809; *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, ¶ 29, 245 P.3d 184 (cited at Opp. 12). The intent must be distinct, and courts do not lightly infer it. *Neeshan v. Ravonsheed*, 2024 UT App 175, ¶¶ 12–15, 23–24, 561 P.3d 708.

Measured against that standard, Defendant's operative averment fails on its face. Mr. Sauer states that "it was agreed and understood" that Defendant did not need to phase out the domain or send the retailer notices. Sauer Decl. ¶ 7. The passive voice does all the work. The declaration identifies no statement by Mr. Davis or anyone at Roxberry Licensing—no words spoken or written, no date of any agreement, no agreed duration, no substitute deadline, and no event that would end the supposed suspension. What it actually describes is an inference Defendant drew from the subject matter of the negotiations: because coexistence was under discussion, the rebranding deadlines must not matter. A counterparty's private inference is not the right-holder's distinct, intentional relinquishment, and treating it as one would convert every settlement

discussion into an open-ended suspension of every deadline touching the discussion's subject. The Court can resolve waiver against Defendant on the face of Sauer's declaration alone. *See also* Davis Decl. ¶¶ 3–7 (no agreement, oral or written, to waive, suspend, or modify; no agreement to refrain from enforcement; no agreement to restart any period).

**B. The Contemporaneous Written Record Forecloses Any Implied Waiver—and Defendant's Own Conduct Contradicts the One It Now Infers.**

The documents tell one consistent story. On July 1—the day the paragraph 1 and paragraph 3 obligations came due—Defendant's counsel wrote to Plaintiff's counsel about "today's deadlines under the stipulated rebranding order" and promised an update on them. Briscoe Decl. ¶ 2 & Ex. A. A party that believed those deadlines had been set aside by the principals' June discussions does not call them "today's deadlines," and does not promise an update on compliance with them. On July 2, Plaintiff communicated a limited, one-week accommodation—the only accommodation ever given. Briscoe Decl. ¶ 3; Davis Decl. ¶ 5. The parties' only filed deadline relief that week was a stipulated motion to continue a discovery-motion hearing. Dkt. 55. The parties thus knew how to stipulate to deadline relief and file it when they intended it—and nothing they filed suspended or extended any stipulation deadline.

Plaintiff then said the opposite of waiver, in writing, twice. On July 22, Plaintiff's counsel wrote that the accommodation "has run its course" and that "Roxberry Licensing is not in a position to extend the accommodation further," and demanded confirmation of the retailer notices and the domain step. Briscoe Decl. ¶¶ 4–5 & Ex. B. On July 31, Plaintiff's counsel wrote that "settlement discussions do not suspend the stipulation, and compliance with it is not a bargaining chip," and that the two "can and should proceed on separate tracks, as they have to date." *Id.* ¶ 5 & Ex. C. Defendant answered neither demand with performance. *Id.* ¶¶ 6–7. A party making written

demands for performance is not "intentionally act[ing] in a manner inconsistent with its contractual rights," *ASC Utah*, 2010 UT 65, ¶ 29—it is insisting on them. No indefinite, unwritten suspension survives those letters, and any reliance on one in their face was unreasonable as a matter of law.

Defendant's own counsel confirmed the same understanding. On July 30—seven days before the Motion—Defendant's counsel wrote that Plaintiff's coexistence overtures were "inconsistent with what the parties agreed to under the stipulation," and referred to "the short extension you have referenced in your correspondence." Suppl. Briscoe Decl. ¶ 2 & Ex. D (July 30, 2026 letter). A party that believed the stipulated deadlines stood mutually suspended for the duration of settlement talks does not describe the stipulation as the operative agreement and does not acknowledge only a "short extension" of a deadline it believes has been waived. Defendant's institutional position through July 30 refutes the "understanding" its declarant now infers.

The prevention cases fail for the same reason. *Markham v. Bradley* bars a party from "tak[ing] advantage of [its] own obstructive and misleading conduct." 2007 UT App 379, ¶ 37, 173 P.3d 865 (cited at Opp. 12). Granting a documented one-week accommodation and then twice confirming in writing that compliance remained required is the opposite of obstruction; the discussions left Defendant free to comply unless and until a different agreement was reached, and none was. Davis Decl. ¶¶ 6–8. Nor is there "manifest injustice" warranting relief from the stipulation under *Vallejos v. C. E. Glass Co.*, 583 F.2d 507, 511 (10th Cir. 1978) (cited at Opp. 13). Defendant does not seek relief from Dkt. 45's substantive terms—it says it will now comply, Sauer Decl. ¶ 11—and the only changed condition it identifies is a negotiation that produced no agreement. Unilaterally stopping compliance activities, Sauer Decl. ¶ 8, and then citing the resulting time pressure is a self-inflicted circumstance, not injustice. *Wheeler*, 935 F.2d at 1097–

99.

**C. Even Credited, the Asserted Understanding Does Not Reach Paragraph 2—So Defendant's Requested Relief Exceeds Its Own Theory.**

Sauer's paragraph 7 speaks only to "phasing out its 'getroxberry.com' domain" and "providing notification to retail distributors"—the paragraph 1 and paragraph 3 obligations. It says nothing about the paragraph 2 obligation to cease all use of the ROXBERRY mark by August 15, and nothing about the October 1 sell-through date. Yet Defendant asks the Court to restart all four implementation periods, including 73 days for cessation and 120 days for sell-through, measured from a future order. Opp. 4–5, 14. Relief broader than the movant's own factual theory should be rejected on that ground alone—and the mismatch confirms that the request is not about reliance at all, but about acquiring more time than the parties' agreement ever provided.

**III. A STATED INTENTION TO REBRAND IS NOT PERFORMANCE AND DOES NOT MOOT THE MOTION.**

Sauer states that Defendant "has now decided to proceed with the rebrand" and lists work it expects to perform. Sauer Decl. ¶¶ 11–12. He does not declare that any paragraph 1 notice was sent, that commercial use of getroxberry.com was disabled, that use of the ROXBERRY mark has ceased, or that Defendant has bound itself to any completion date. The record shows the opposite. On August 14—the day Defendant filed its Opposition—getroxberry.com remained publicly accessible, displayed the ROXBERRY name and design mark and "AVAILABLE IN STORES NATIONWIDE," and permitted a product to be added to a shopping cart at a stated price with an active Checkout control. Suppl. Gardner Decl. ¶¶ 2–3, 8 & Exs. C-1–C-3. No page displayed any discontinuation notice, rebrand announcement, or reference to a successor brand. *Id.* ¶ 4. As of the morning of August 18, the site remained publicly accessible and commercial in character, again

with no discontinuation notice or rebrand announcement. *Id.* ¶¶ 5–7 & Exs. C-4–C-6. The full-page August 18 capture shows the ROXBERRY mark in use from the navigation bar through the footer, 24-can multipacks offered at $32.99, and a "© Roxberry 2026" notice. *Id.* ¶ 6 & Ex. C-4.

A declaration of future intent does not moot a request for injunctive relief. A defendant's voluntary change moots a claim only when it is "absolutely clear" the challenged conduct cannot reasonably be expected to recur—a "formidable burden" that rests on the defendant. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Defendant identifies no completed act and no binding commitment, and its own alternative request—new court-ordered periods of up to 120 days—presumes continued use of the mark for months. The requested order remains live and necessary: it fixes operative dates, requires certification, and makes the parties' agreed relief enforceable.

## IV. THE REQUESTED RELIEF ENFORCES MATURED OBLIGATIONS; DEFENDANT'S FULL RESTART IS UNSUPPORTED AND WOULD REWRITE THE PARTIES' AGREEMENT.

The Opposition repeatedly asserts that Plaintiff demands "roughly two months' worth of rebranding activities" within three business days. Opp. 3, 10–11. That is not the relief requested. The three-business-day provision concerns only the paragraph 1 retailer notices and the paragraph 3 domain step—discrete acts that came due July 1 (as accommodated, July 8)—plus certification. As to paragraph 2, the August 15 date has now passed: the revised proposed order confirms and enforces a matured obligation in the stipulation's own words; it accelerates nothing; and it preserves the October 1 sell-through exactly as stipulated. Nothing in the order requires packaging redesign, marketing redesign, or any other implementation task to be completed within three business days. Sauer's hardship account, Sauer Decl. ¶ 12, attacks relief no one requested.

Defendant's alternative—new 28-, 59-, 73-, and 120-day periods running from a future order—fails three times over. First, it exceeds Defendant's own waiver theory. *Supra* § II.C. Second, it is unsupported. Sauer lists six tasks and attaches no duration, vendor quotation, or lead time to any of them; he does not say what any step requires or why. The party "who seeks court action should justify the request," *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoted at Opp. 9)—a burden that applies with equal force to Defendant's request for new periods. His own declaration concedes the clock already ran in part: by June 12, Defendant "had already begun taking steps" to rebrand, "including the identification and vetting of a replacement" for its mark. Sauer Decl. ¶ 6. And the Opposition concedes the stipulated timelines were "practicable." Opp. 10. Third, restarting every period would do exactly what Defendant says courts may not do: "change the terms of the agreement stipulated to by the parties." *Colorado*, 937 F.2d at 509 (Opp. 11 n.4). Plaintiff asks the Court to enter the parties' terms; Defendant asks the Court to replace agreed dates certain with new, longer periods as the reward for nonperformance—and it has filed no motion seeking that affirmative relief. DUCivR 7-1(a)(3).

Finally, security remains unnecessary. The amount of any Rule 65(c) security—including none—is committed to the Court's discretion. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009); *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003); *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964). Defendant stipulated to this precise relief, requested no security in Dkt. 45, and requests none in its Opposition. It identifies no cognizable harm from being held to its own agreement; the compliance costs it accepted in Dkt. 45 are not damages from a wrongful injunction.

## CONCLUSION

The Court should grant the Motion, approve Dkt. 45, enter the revised proposed order, require performance and certification on the schedule stated there, preserve the October 1, 2026 sell-through date, and require no security.

DATED this 19th day of August, 2026.

**KNH LLP**

*/s/ Thomas D. Briscoe*
Thomas D. Briscoe
Chad S. Pehrson
Stephen C. Mouritsen

*Attorneys for Plaintiff and Counter-Defendant Roxberry Licensing, LLC*

**CERTIFICATION OF COMPLIANCE WITH WORD LIMIT**

Pursuant to DUCivR 7-1(a)(4)(C), the undersigned counsel certifies that this Plaintiff's Reply in Support of Expedited Motion to Confirm and Enforce the Stipulated Preliminary Injunction (Dkt. 45) complies with the word-count limit set forth in that rule. This memorandum contains 2989 words, excluding the caption, signature block, certificate of service, and any exhibits or attachments. The word count was performed by the word-processing software used to prepare the document.

DATED this 19th day of August 2026.

Respectfully submitted,

**KNH LLP**

*/s/ Thomas D. Briscoe*
Thomas D. Briscoe
Chad S. Pehrson
Stephen C. Mouritsen

*Attorneys for Plaintiff and Counter-Defendant Roxberry Licensing, LLC*

**CERTIFICATE OF SERVICE**

I certify that on the 19th day of August, 2026, I caused the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF EXPEDITED MOTION TO CONFIRM AND ENFORCE THE STIPULATED PRELIMINARY INJUNCTION (DKT. 45) AND, IF NECESSARY, FOR ENTRY OF A CONFORMING ORDER** to be filed using the Court's CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Thomas D. Briscoe*
Thomas D. Briscoe