Thomas D. Briscoe (USB No. 16788), tbriscoe@knh.law
Stephen Mouritsen (USB No. 16523), smouritsen@knh.law
Chad Pehrson (USB No. 12622), cpehrson@knh.law
**KNH LLP**
50 W. Broadway, Suite 900
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
*Attorneys for Plaintiff and Counterclaim Defendant Roxberry Licensing, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ROXBERRY LICENSING, LLC,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>ROXBERRY NATURALS, INC.,<br><br>Defendant and Counterclaimant. | **PLAINTIFF'S SUPPLEMENTAL BRIEF ON STANDING, RELEVANCE, AND PROPORTIONALITY RE: DEFENDANT'S MOTION TO QUASH (ECF NO. 39)**<br><br>Case No. 2:26-cv-00126-JNP-JCB<br><br>Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

Pursuant to the Court's August 24, 2026 Docket Text Order (ECF No. 72), Plaintiff Roxberry Licensing, LLC ("**Roxberry Licensing**") submits this supplemental brief on standing, relevance, and proportionality regarding Defendant Roxberry Naturals, Inc.'s ("**Roxberry Naturals**") motion to quash.

**Standing**: A party generally "does not have standing to object to a subpoena issued to a third party, unless the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena." *Route App, Inc. v. Heuberger*, No. 2:22-cv-00291, 2024 WL 309748, at *2 (D. Utah Jan. 26, 2024) (Bennett, M.J.). Even with such a right or privilege, a party cannot assert the nonparty's undue-burden, overbreadth, or relevance objections. *Id.* The Court may independently police relevance and proportionality under Rule 26,

but Roxberry Naturals moved only to quash, not for a Rule 26(c) protective order. *Id.* at *3–4 & n.37. *Route App* denied a party's motion to quash subpoenas that—as here—had been noticed but not yet served. *Id.* at *1–2.

Standing is request-specific. *Origins Tech, Inc. v. Oak Equity Holdings II, LLC*, No. 2:23-cv-00326, 2025 WL 1030146, at *3–4 (D. Utah Apr. 7, 2025), held that the movants had standing only "to the extent [the subpoena] seeks their own financial records" and lacked standing as to "contracts and records solely between third parties." Eleven of Schedule A's thirteen paragraphs seek Walmart's institutional records—sell-through and item-catalog data, Walmart-created advertising, onboarding diligence and internal deliberations, planograms and category assignments, and search-protocol disclosures. (ECF No. 39-1, Sched. A.) Roxberry Naturals asserts a personal right in its own sales and marketing information (ECF No. 39 § III.A.1), but Walmart's independently created retail records are not Roxberry Naturals' own. Local decisions recognize personal rights in a movant's own bank records and the like, but require a specific personal or confidential interest. *First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, No. 2:15-cv-00229, 2015 WL 6872333, at *3–4 (D. Utah Nov. 9, 2015).

Whatever the breadth of Roxberry Naturals' assertion, it can succeed at most as to Request 6, a defined set of Walmart–Roxberry Naturals trademark communications sought as "an independent authentication and completeness safeguard." (ECF No. 39-1, Sched. A ¶¶ 6, 8.) Standing as to Request 6 cannot quash the whole subpoena: Rule 45(d)(3) authorizes the Court to "quash *or modify*" a subpoena (emphasis added), and *Origins Tech* denied quashal where standing failed for "most" requests. 2025 WL 1030146, at *4. Nor does *Innovasis, Inc. v. Curiteva, Inc.*, No. 2:23-cv-00228, 2024 WL 3759793, at *2–3 (D. Utah Aug. 9, 2024), establish

broader standing: standing there was uncontested, and the court still ordered the third-party contracts produced under the protective order.

**Relevance**: Rule 45 subpoenas are bounded by Rule 26(b)(1): discovery must be relevant to a claim or defense and proportional to the needs of the case. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785, 2018 WL 3620766, at *2 (D. Kan. July 30, 2018). First, Walmart's shelf placement, planograms, category assignments, and advertising show market presence, retail proximity, and consumer exposure central to Roxberry Licensing's reverse-confusion claims. (*See* ECF No. 28 ¶¶ 23, 30–34.) Second, Walmart's onboarding, clearance, advertising, and rollout records bear on willfulness and equitable relief. Roxberry Naturals admits that the USPTO refused registration of its ROXBERRY word mark on May 21, 2025 under Section 2(d) for likelihood of confusion with Roxberry Licensing's registration, and that the application was abandoned. (ECF No. 28 ¶¶ 27–28; ECF No. 33 ¶¶ 27–28.) It admits expanding anyway: sales through Walmart since January 2026, approximately 450 Kroger, 273 Meijer, and 262 Harris Teeter locations, and nationwide online availability. (ECF No. 33 ¶¶ 3, 32–33.) The scale of that rollout is disputed: Roxberry Licensing alleges approximately 2,200 stores in all fifty states, and Roxberry Naturals denies it. (ECF No. 28 ¶ 31; ECF No. 33 ¶ 31.) Walmart's records resolve it. Third, Walmart's sales records bear directly on profits under 15 U.S.C. § 1117(a), which requires Roxberry Licensing to prove Roxberry Naturals' sales. Roxberry Naturals identifies September 23, 2024 as its first use (ECF No. 52-2, Resp. to Interrog. No. 1); the Subpoena's period begins September 1, 2024 and captures the entire accused-use period. (ECF No. 33 ¶ 3.) Aggregate revenue cannot show where, when, or in what retail context consumers encountered Roxberry Naturals' mark. These records

also anchor survey design: the Tenth Circuit upheld rejection of a survey using an overinclusive universe, non-marketplace presentation, and an unsupported side-by-side display. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1145–47 (10th Cir. 2013). Walmart's planograms, category assignments, displays, and sell-through records supply the survey universe, stimuli, and purchase context.

**Proportionality**: Roxberry Naturals' own filings establish necessity. It represents that it "does not track or possess any additional Walmart SKU and/or UPC sales data beyond what has been produced," and that a significant portion of its retail sales run through third-party distributors "for which Defendant does not record such data." (ECF No. 61 § II; *see also* ECF No. 58 ¶ 1.) The Court denied as moot Roxberry Licensing's motion to compel discovery of sales and volume data (Interrogatory No. 4; RFPs 1–10). (ECF No. 70.) The Walmart-level record is thus unavailable from Roxberry Naturals and must come from Walmart. *Origins Tech* upheld nonparty discovery where defendants "denied the existence of responsive documents," 2025 WL 1030146, at *3; *accord Hernandez v. Kolkman*, 347 F.R.D. 551, 556–57 (D. Utah 2024).

The Rule 26(b)(1) factors favor production: the information bears directly on accounting and confusion; the stakes span an admitted nationwide retail and online rollout; and Roxberry Naturals represents that it lacks the requested Walmart-level data. The burden objection is Walmart's to raise, *Route App*, 2024 WL 309748, at *2, and Walmart has raised none. Such objections fail absent evidentiary proof. *Hernandez*, 347 F.R.D. at 557; *EpiPen*, 2018 WL 3620766, at *3. *EpiPen* also rejects unsupported duplication assertions. *Id.* Aggregate revenue therefore does not make Walmart's store-level records cumulative. As to confidentiality, *Route*

*App* requires a "clearly defined and serious injury" and confirms that the Standard Protective Order applies "even to Rule 45 subpoenas." 2024 WL 309748, at *3–4 & n.32.

The Subpoena also avoids the defects in *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) and *First Am. Title*, 2015 WL 6872333, at *3–4, which involved sweeping, unqualified "all documents"-style requests. Here, the thirteen requests are limited to defined Walmart subjects and a defined period, with a Scope Limitation, a declaration option, search transparency, and an invitation to narrow. (ECF No. 39-1.) Nor is sequencing an obstacle: "there is no requirement that a party seek discovery from another party before serving a nonparty subpoena." *Hernandez*, 347 F.R.D. at 557; *Origins Tech*, 2025 WL 1030146, at *3. This Court has said that "the practice in civil discovery *should be* that parties to litigation first seek discovery from other parties *before using* Rule 45 subpoenas." *Good Clean Love, Inc. v. Epoch NE Corp.*, No. 2:24-mc-00738, 2025 WL 55242, at *4 (D. Utah Jan. 9, 2025) (Bennett, M.J.) (emphasis in original). Roxberry Licensing did exactly that: the Walmart Subpoena was noticed May 5, 2026, held unserved, and party discovery pursued first. *Genus Lifesciences Inc. v. Lannett Co.*, No. 18-cv-07603, 2019 WL 7313047, at *4–5 (N.D. Cal. Dec. 30, 2019), is the opposite: the requester never sought the documents from the party, and the nonparty had nothing outside the party's custody.

Roxberry Naturals' motion to quash should be denied.

DATED this 28th day of August, 2026.

**KNH LLP**

<u>*/s/ Thomas D. Briscoe*</u>
Thomas D. Briscoe

*Attorneys for Plaintiff and Counterclaim Defendant*
*Roxberry Licensing, LLC*

**CERTIFICATE OF SERVICE**

I certify that on the 28th day of August 2026, I caused the foregoing **PLAINTIFF'S SUPPLEMENTAL BRIEF ON STANDING, RELEVANCE, AND PROPORTIONALITY RE: DEFENDANT'S MOTION TO QUASH (ECF NO. 39)** to be filed using the Court's CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Thomas D. Briscoe*